# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TIMEC SERVICES COMPANY, INC.; FERROVIAL SERVICES
INFRASTRUCTURE, INC.; VALERO REFINING COMPANY – CALIFORNIA;
DISA GLOBAL SOLUTIONS; and and DOES 1 THROUGH 50, INCLUSIVE,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Marvonte Wilson and Domonique Daniels, individually and on behalf of
all others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Solano County Superior Court | CASE NUMBER:<br>*(Número del Caso)* **FCS059129** |
|---|---|

580 Texas St.
Fairfield, CA 94533

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lawrence A. Organ, 332 San Anselmo Ave., San Anselmo, CA 94960, Tel. (415) 453-4740

| DATE:<br>*(Fecha)* **OCT 3 1 2022** | Clerk, by<br>*(Secretario)* K. Fuentes | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)

          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

FILED/ENDORSED
Clerk of the Superior Court

OCT 3 1 2022

By _____
DEPUTY CLERK

ASSIGNED TO
JUDGE ALESIA JONES
FOR ALL PURPOSES
$4435-QMFF426180

1  Lawrence A. Organ (SBN 175503)
   Julianne K. Stanford (SBN 290001)
2  Zarrina Ozari (SBN 334443)
   CALIFORNIA CIVIL RIGHTS LAW GROUP
3  332 San Anselmo Avenue
   San Anselmo, CA 94960
4  Tel. (415) 453-4740
   Fax (415) 785-7352
5  Email: larry@civilrightsca.com
6        julianne@civilrightsca.com
         zarrina@civilrightsca.com
7
   Vernon C. Goins II (SBN 195461)
8  William W. Castillo Guardado (SBN 294159)
   LAW OFFICES OF VERNON C. GOINS
9  1970 Broadway, Ste. 450
   Oakland, CA 94612
10 Tel. 510-663-3700
   Fax 510-663-3710
11 Email: vgoins@goinslawfirm.com
12       wcastillo@goinslawfirm.com

13 Attorneys for Plaintiffs MARVONTE WILSON,
   DOMONIQUE DANIELS, and the Putative Class

14

15         SUPERIOR COURT OF THE STATE OF CALIFONRIA

16            IN AND FOR THE COUNTY OF SOLANO

17 MARVONTE WILSON and DOMONIQUE        Case No.  **F C S 0 5 9 1 2 9**
   DANIELS, individually and on behalf of all others
18 similarly situated,                   CLASS ACTION COMPLAINT

19                    Plaintiffs,         1. Race Discrimination in Violation of 42
                                             U.S.C. § 2000e, *et seq.*-Disparate Impact;
20      v.                                2. Race Discrimination in Violation of Gov.
                                             Code § 12940, *et seq.*-Disparate Impact
21                                        3. Race Discrimination in Violation of 42
   TIMEC SERVICES COMPANY, INC.;            U.S.C. § 2000e, *et seq.*-Disparate Treatment
22 FERROVIAL SERVICES INFRASTRUCTURE,     4. Race Discrimination in Violation of Gov.
   INC.; VALERO REFINING COMPANY –          Code § 12940, *et seq.*-Disparate Treatment
23 CALIFORNIA; DISA GLOBAL SOLUTIONS;     5. Race Discrimination in Violation of 42
   and DOES 1 THROUGH 50, INCLUSIVE,        U.S.C. § 1981
24                                        6. Discrimination Based on Perceived
                                             Disability in Violation of 42 U.S.C. §
25                    Defendants.            12112
                                          7. Negligence
26
                                          JURY TRIAL DEMANDED
27

28

                          CLASS ACTION COMPLAINT

## I. NATURE OF THE ACTION

1.     Plaintiff Marvonte Wilson and Plaintiff Domonique Daniels bring this action pursuant to Code of Civil Procedure § 382 against Defendants Timec Company, Inc., Broadspectrum Downstream Services, Inc., Ferrovial Oil and Gas Services, Inc., and T.R.S.C., Inc. (collectively "Timec/Ferrovial"); Defendant Valero Refining Company-California ("Valero"); Defendant DISA Global Solutions ("DISA"); and Does 1-50, inclusive (collectively "Defendants"), alleging that Defendants discriminated against Plaintiffs and other Black employees by taking adverse employment action against them based on false positive hair tests that disproportionately affect people with melanin-rich hair, which is common in Black people. Moreover, Defendant Timec/Ferrovial and Defendant Valero ratified Defendant DISA's negligent collection, maintenance, and storage of Black people's hair samples upon notice of the false positives. Based on information and belief, Defendant DISA continues to collect hair samples, and Defendant Timec/Ferrovial and Defendant Valero continue to use hair samples to take adverse employment action against employees, despite a lack of business necessity for the practice. Defendants' actions are in violation of 42 U.S.C. § 2000 et seq.; California Government Code §§ 12940 et seq.; 12926(w); 42 U.S.C. § 1981; and 42 U.S.C. § 12112(a).

2.     Plaintiff Wilson and Plaintiff Daniels seek to represent a class of Black employees who commonly have melanin-rich hair against whom Defendants have taken adverse action based on false positive hair tests, at any time from 2019 to the final disposition of this action ("Class Period"). These employees share a community of interest and are similarly situated under California Code of Civil Procedure § 382.

3.     During the class period, Plaintiffs and the putative Class Members suffered racial discrimination and discrimination based on perceived disability at the hands of all Defendants, and negligence at the hands of Defendant DISA, because they are Black, and thus received false positive hair drug tests, an increased risk for people with melanin-rich hair, which is common in Black people. Despite Plaintiffs' and Class Members' notice to Defendants regarding the false positives, based on information and belief, Defendant DISA continues to collect hair samples, and Defendant Timec/Ferrovial and Defendant Valero continue to use hair samples to take

1   adverse employment action against employees, despite a lack of business necessity for the
2   practice. Plaintiffs are seeking on behalf of themselves and the Class they seek to represent,
3   declaratory and injunctive relief; back pay; front pay; compensatory and punitive damages; and
4   attorneys' fees, costs and expenses to redress Defendants' pervasive, discriminatory employment
5   policies, practices and/or procedures.

6   **II. JURISDICTION AND VENUE**

7       4.    This Court has jurisdiction in that the amount in controversy exceeds the
8   jurisdictional limits of this Court according to proof at trial, and pursuant to California
9   Government Code § 12965(b).

10      5.    Venue is proper in Solano County, California, pursuant to California Government
11  Code § 12965(b), because the unlawful practices and acts alleged herein were committed within
12  this county.

13  **III. PARTIES**

14      6.    Plaintiff Marvonte Wilson was directly employed by Defendant Timec Company,
15  Inc., Broadspectrum Downstream Services, Inc., Ferrovial Oil and Gas Services, Inc., and
16  T.R.S.C., Inc. (collectively "Timec/Ferrovial") from in or around 2016 to about Feb. 5, 2019. He
17  was jointly employed by Defendant Valero Refining Company-California ("Valero") and was
18  indirectly employed by Defendant DISA Global Solutions ("DISA") in or around January and
19  February 2019 in Solano County, California. Plaintiff Wilson is, and was at all relevant times
20  herein, an adult, Black, resident of California with melanin-rich hair.

21      7.    Plaintiff Domonique Daniels has been directly employed by Defendant Timec
22  Company, Inc., Broadspectrum Downstream Services, Inc., Ferrovial Oil and Gas Services, Inc.,
23  and T.R.S.C., Inc. (collectively "Timec/Ferrovial") from in or around 2001. He was jointly
24  employed by Defendant Valero Refining Company-California ("Valero") and was indirectly
25  employed by Defendant DISA Global Solutions ("DISA") in or around January 2019 in Solano
26  County, California. Plaintiff Daniels is, and was at all relevant times herein, an adult, Black,
27  resident of California with melanin-rich hair.

28

8.    Defendant Timec Company, Inc., Broadspectrum Downstream Services, Inc., Ferrovial Oil and Gas Services, Inc., and T.R.S.C., Inc. (collectively "Timec/Ferrovial") was a Respondent during the Equal Employment Opportunity Commission (EEOC) investigation that arose from Plaintiffs' charges of discrimination. Based on information and belief, Timec Company, Inc. merged into Timec Services Company, Inc., incorporated in Delaware, with its principal place of business in Austin, Texas. Based on information and belief, T.R.S.C. is a part of the Timec brand, and is incorporated in Delaware, with its principal place of business in Vallejo, California, where it shares a location with Timec. Based on information and belief, at all relevant times herein, Ferrovial Oil & Gas Services, Inc. was under the umbrella of Ferrovial Services Infrastructure, Inc., which is incorporated in Delaware, with its principal place of business in Austin, Texas. Based on information and belief, at all relevant times herein, Ferrovial Services Infrastructure, Inc., owned Timec until a later sale in or around 2021. Likewise, based on information and belief, Ferrovial owned Broadspectrum at all relevant times herein until a later sale in or around 2020. Defendant Timec/Ferrovial provides various services in the refinery industry, including within Solano County, California. Plaintiffs were directly employed by Defendant Timec/Ferrovial.

9.    Defendant Valero Refining Company-California ("Valero") is incorporated in Delaware, with its principal place of business in San Antonio, Texas. Valero provides various services within the refining industry, including within Solano County, California. Plaintiffs were jointly employed by Defendant Valero.

10.    Defendant DISA Global Solutions ("DISA") is incorporated in Delaware, with its principal place of business in Houston, Texas. DISA provides drug testing services, such as hair drug tests, to companies including Defendant Timec/Ferrovial, in various locations, including within Solano County, California. Plaintiffs were indirectly employed by Defendant DISA, as Defendant DISA interfered with Plaintiffs' employment opportunities with Defendant Timec/Ferrovial and Defendant Valero, as alleged below.

11.    In addition to Defendant Timec/Ferrovial, Defendant Valero, and Defendant DISA Plaintiffs sue fictitious defendants Does 1-50, inclusive, because their names, capacities,

1  status, or facts showing them to be liable are not presently known. Plaintiffs are informed and
2  believe, and thereon allege, that each of the fictitiously named Defendants is responsible in some
3  manner for the occurrences herein alleged, and such Defendants caused Plaintiffs' damages as
4  herein alleged. Plaintiffs will amend this complaint to show their true names and capacities,
5  together with appropriate charging language, when such information has been ascertained.

6      12.    Plaintiffs are informed, believe, and thereon allege that each of the Defendants
7  herein was at all times relevant to this action the agent, employee, representative partner, and/or
8  joint venture of the remaining Defendants and was acting within the course and scope of the
9  relationship. Plaintiffs are further informed, believe, and thereon allege that each of the
10  Defendants herein gave consent to, ratified, and authorized the acts alleged herein to the
11  remaining Defendants.

12  **IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13      13.    On August 9, 2019, Plaintiff Daniels timely filed a charge of discrimination with
14  the Equal Employment Opportunity Commission (EEOC) against Defendants Timec/Ferrovial
15  and Defendant Valero. On August 30, 2019, Plaintiff Wilson timely filed a charge of
16  discrimination with the EEOC against Defendants Timec/Ferrovial and Defendant Valero. On
17  November 14, 2019, Plaintiff Wilson timely filed a charge of discrimination with the EEOC
18  against Defendant DISA. On October 30, 2019, Plaintiff Daniels timely filed a charge of
19  discrimination with the EEOC against Defendant DISA. On August 1, 2022, The EEOC issued
20  Plaintiff Wilson and Plaintiff Daniels right-to-sue notices against Defendant Timec/Ferrovial,
21  Defendant Valero, and Defendant DISA.

22  **V.  FACTUAL ALLEGATIONS**

23      14.    Research has shown that hair drug tests disproportionately result in false positives
24  when processing the type of hair common to many Black people. This is due to the chemical and
25  physical characteristic of melanin-rich hair, commonly found in Black people. . Hair tests can
26  detect lower levels of drugs in melanin-rich hair than is possible when testing melanin-sparse
27  hair, and false positives occur when drugs bind to melanin-rich hair in such a way that drug test

28

collectors cannot distinguish whether the drug's presence is due to ingestion or external contamination.

15.    Hair tests cannot detect drug usage that occurred anywhere from the approximately 5 to 7 days before the test, rendering hair testing much less useful for ensuring workplace safety regarding current drug users than is urine testing, which can detect drug usage much sooner.

16.    Further calling the efficacy of hair testing into question, entities that conduct hair testing make widely varying claims about how far back hair testing can reach. Defendant DISA claims on its website that hair testing can extend back 90 days, while Psychemetics, another company that conducts hair drug testing, claims on its website that in 1985, the company's founder confirmed early 19th century poet John Keats' increasing opium use before his death through testing a 167-year-old sample of his hair.

17.    Defendants Timec/Ferrovial and Defendant Valero use hair testing, even though they also use urine and saliva testing. Even if an employee's urine and/or saliva test come back negative, Defendants rely on "positive" hair test results to suspend employees.

**Plaintiff Wilson**

18.    Plaintiff Wilson is a Black man. He worked for Defendant Timec/Ferrovial as a laborer and safety attendant from in or around 2016 to about Feb. 5, 2019.

19.    In or around late January 2019, Defendant Timec/Ferrovial notified Plaintiff Wilson that he was being assigned to work at Defendant Valero's site in Benicia, California, beginning in February.

20.    Defendant Timec/Ferrovial ordered Plaintiff Wilson to undergo urine and hair drug tests on January 31, 2019, at Defendant DISA, as Defendant Valero specifically required workers on its site to pass these tests through Defendant DISA. This was Plaintiff Wilson's first drug test at Defendant DISA. During his time at Defendant Timec/Ferrovial, Plaintiff Wilson had undergone previous urine tests at Occupational Safety Councils of America (OSCA) in Martinez for his dispatch assignments to other refineries, all of which came back negative. Plaintiff Wilson

1  had also undergone hair tests at OSCA while he was with a previous employer, all of which
2  came back negative.

3      21.    Plaintiff Wilson noticed the procedures Defendant DISA used to administer his
4  hair drug test were unsanitary and could lead to external contamination: the scissors Defendant
5  DISA's collector used to cut the hair sample from Plaintiff Wilson's head were not individually
6  wrapped, and the collector placed the hair directly on a table without disinfecting before finally
7  placing the hair in a sheet of tin foil and then into a bag.

8      22.    Pending the results of his drug tests, Defendant Valero gave Plaintiff Wilson his
9  badge, clearing him to work at its Benicia site. Plaintiff Wilson worked the night shift at
10  Defendant Valero from February 4 to the morning of February 5.

11      23.    After his shift on February 5, a representative from Defendant DISA, who
12  identified himself as a doctor, informed Plaintiff Wilson that while his urine test came back
13  negative for all drugs, his hair test came back positive for cocaine. Plaintiff Wilson has never
14  used cocaine in his life.

15      24.    Shocked and distressed about the false positive hair test, Plaintiff Wilson asked
16  Defendant DISA's representative if he had any options, and even offered to immediately undergo
17  a retest. But Defendant DISA's representative refused. To Plaintiff Wilson's dismay, he was
18  given only two options. The first was to pay a $175 fee for a retest of another portion of the
19  same hair sample. This was concerning given that his sample might have falsely tested positive
20  again, and did not eliminate the possibility that the hair sample used for his test had been
21  contaminated or belonged to another individual. The second option was pay between $600 and
22  $800 for a substance abuse course. This was unacceptable to Plaintiff Wilson given that he had
23  never used cocaine in his life. Plaintiff Wilson opted for the first option—the retest—since he
24  has never used cocaine. Upon its receipt of Plaintiff Wilson's initial hair test results, Defendant
25  Timec/Ferrovial informed him that he was not to return to work until he completed the substance
26  abuse course. Defendant Timec/Ferrovial claimed it could not do anything for Plaintiff Wilson
27  and that it was up to him to resolve the issue with Defendant DISA.
28

25.    In the days following his false positive hair test from Defendant DISA, Plaintiff Wilson met with Willie Hicks, the then-President of his union, Laborers Local 324, to report the false positive hair test. The union President informed Plaintiff Wilson that he knew of at least two additional instances in which Black employees received false positive hair tests from Defendant DISA.

26.    In the meantime, on February 7, 2019, Plaintiff Wilson underwent a hair drug test at ARCpoint Labs of Martinez. The collector there used electronic scissors to cut hair from Plaintiff Wilson's leg. The collector held a piece of foil directly below, so the hair fell right on it without touching any unsanitary surfaces. That hair test came back negative on February 12, 2019.

27.    But the Defendant DISA retest came back positive on or about February 14, 2019. Plaintiff Wilson informed a Human Resources representative at Defendant Timec/Ferrovial, Heather (last name unknown), about his negative hair drug test at ARCpoint Labs of Martinez, but Heather dismissed Plaintiff Wilson, telling him that Defendant Timec/Ferrovial did not accept independent drug tests.

28.    Defendant Timec/Ferrovial placed Plaintiff Wilson on inactive status until he completed a substance abuse class, thus suspending him from work based on a false negative drug test that adversely impacts Black people. In essence, Defendant TIMEC/Ferrovial Services suspended Plaintiff Wilson because of his race. Because Plaintiff Wilson felt that taking the class would be the same as admitting he used cocaine, he declined the class and did not return to work for Defendants.

29.    Plaintiff Wilson subsequently obtained a copy of his hair drug test records from Defendant DISA, which read, "Extremely curly or very unaligned hair submitted. This type of hair cannot be properly aligned and/or cut which may affect the time frame represented by the analysis." Plaintiff Wilson was concerned that DISA's negligent collection procedures had resulted in a false positive test.

CLASS ACTION COMPLAINT

30.    Based on information and belief, Defendants continue to use hair testing, despite receipt of Plaintiff Wilson's EEOC charge of discrimination in or around August and October 2019, which provide notice that such hair testing disparately impacts Black people.

31.    Plaintiff Wilson was out of work for about two months before he secured new employment, although the new positions have not been comparable in terms of job stability, salary, and benefits.

32.    Plaintiff Wilson has suffered from mental and emotional distress, including symptoms of depression, because of the discrimination he experienced at the hands of Defendants.

### Plaintiff Daniels

33.    Plaintiff Daniels is a Black man. He worked for Defendant Timec/Ferrovial as a laborer from in or around 2001 until in or around 2015 or 2016 when he was promoted to the position of Safety Supervisor. Plaintiff Daniels was not assigned to jobs with Defendant Timec/Ferrovial for over a year after a false positive hair drug test in 2019, as alleged below, and returned briefly for a dispatch job from in or around June 2022 to in or around August 2022. But the dispatch job in 2022 was to Chevron, which only required a urine test.

34.    In or around early January 2019, Defendant Timec/Ferrovial notified Plaintiff Daniels that he was being assigned to work at Defendant Valero's site in Benicia, California.

35.    Defendant Timec/Ferrovial personnel informed Plaintiff Daniels that Defendant Valero required urine, saliva, and hair drug tests from him to work at its site. Plaintiff Daniels underwent these tests at Defendant DISA on January 4, 2019.

36.    During the hair drug test, Defendant DISA's collector decided to collect the sample from Plaintiff Daniels' underarm as he did not have much hair on his head or arms. Because Plaintiff Daniels was wearing deodorant, he told Defendant DISA's collector that he should wash his underarm before the collection as he had done during a hair drug test he underwent, and passed, with a previous employer. Defendant DISA's collector ignored him and clipped a sample of his hair, claiming it would be washed later. The hair landed on a piece of paper that Defendant DISA's collector then placed in a plastic bag for testing.

37.    Defendant DISA contacted Plaintiff Daniels on January 13, and notified him that his hair sample came back positive for methamphetamines. Plaintiff Daniels has never used methamphetamines. Defendant DISA offered a $175 retest, or a substance abuse course that cost about $850. At first, Plaintiff Daniels believed a retest would be futile, as the only way the original test came back positive would be if it was contaminated or if the result came from a sample that belonged to someone else.. He did not want to take the substance abuse course either, as he does not use methamphetamines, and Defendant Timec/Ferrovial informed him that completion of the course would not shorten his six-month suspension.

38.    Plaintiff Daniels informed Defendant Timec/Ferrovial that the hair test was a false positive, but its representative claimed Plaintiff Daniels was responsible for resolving the issue with Defendant DISA.

39.    Plaintiff Daniels then decided to get his sample retested, but he had to leave numerous messages with Defendant DISA. By the time Defendant DISA got back to him, it informed him that the deadline for retesting had passed. In the desperation that came from missing out on multiple jobs because of the suspension, Plaintiff Daniels ultimately enrolled in and completed the substance abuse course. Even so, he continued to lose out on jobs for over a year. Overall, he lost approximately three to four jobs.

40.    Plaintiff Daniels felt blackballed because of the false negative hair test, so he focused on finding work through his union. But, even when he found work, it was in lower-ranking positions at a lower pay grade.

41.    Plaintiff Daniels has suffered from mental and emotional distress, including symptoms of depression, stress and embarrassment at having the stain of a positive drug test, even though it was a false positive.

**VI. CLASS ALLEGATIONS**

**A.    Class Definition**

42.    Plaintiff Wilson and Plaintiff Daniels bring this action pursuant to California Code of Civil Procedure § 382 on behalf of themselves and on behalf of a class of all Black people who commonly have melanin-rich hair and who were directly employed by Defendant

1  Timec/Ferrovial, jointly employed by Defendant Valero, and indirectly employed by Defendant

2  DISA who received falsely positive hair drug tests at any time from 2019 to present.

3      43.    This action is brought, and may properly be maintained, as a class action under §

4  382 because there is a well-defined community of interest in the litigation, and the proposed

5  class is easily ascertainable.

6      44.    This action is brought, and may properly be maintained, as a class action under §

7  382 because there is a well-defined community of interest in the litigation, and the proposed

8  class is easily ascertainable.

9      **B.    Numerosity and Impracticability of Joinder**

10     45.    The proposed Class Members are sufficiently numerous that joinder of all

11 members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the

12 proposed class consists of more than 100 Black people with melanin-rich hair.

13     **C.    Community of Interest**

14     46.    There is a well-defined community of interest because common questions of law

15 and fact exist as to all members of the Class and predominate over any questions solely affecting

16 individual members of the Class.

17     47.    The common questions of law include, *inter alia:* (a) whether hair drug testing

18 has a disparate impact on people with melanin-rich hair common in Black people; (b) whether

19 Defendants subjected Plaintiffs to disparate treatment based on their race; (c) whether

20 Defendants discriminated against Plaintiffs based on perceived disability; and (d) whether

21 Defendant DISA was negligent in its collection, maintenance, and storage of Plaintiffs' hair

22 samples.

23     48.    The common questions of fact would include, *inter alia:* (a) whether Plaintiffs

24 received false positive hair tests from Defendant DISA; (b) whether Plaintiffs put Defendants on

25 notice of their false positive hair tests; (c) whether there is a drug testing procedure that would

26 lead to less of a disparate impact on employees with melanin-rich hair common in Black people;

27 and (d) whether hair drug testing is a business necessity for Defendants.

28

49.     The claims of Plaintiff Wilson and Plaintiff Daniels are typical of the claims of the proposed class. The relief sought by the Plaintiffs for race discrimination, discrimination based on perceived disability, and negligence complained of herein is also typical of the relief sought on behalf of the proposed class.

50.     Plaintiffs are, like the members of the proposed class, Black with melanin-rich hair and were directly employed by Defendant TIMEC/Ferrovial, jointly employed by Defendant Valero, and indirectly employed by Defendant DISA during the Class Period.

51.     Plaintiffs and members of the class put Defendants on notice, including by way of reporting the false positive hair tests to Defendant DISA and Defendant Timec/Ferrovial and by way of their EEOC charges to all Defendants, of discrimination based on race and perceived disability. Yet, Defendant DISA continues to conduct hair tests, and Defendant Timec/Ferrovial and Defendant Valero continue to rely on samples that are negligently collected, stored, and maintained by Defendant DISA in taking adverse employment action against employees with melanin-rich hair common in Black people. Defendant DISA's choice to continue to collect hair samples, and Defendant Timec/Ferrovial and Defendant Valero's choice to continue relying on hair samples collected by Defendant DISA is not based on business necessity, as Defendant DISA could continue to conduct urine tests, and Defendant Timec/Ferrovial and Defendant Valero could simply rely on these urine samples, which can detect drug use sooner than can hair samples. In terms of detecting drug use over a longer period, Defendant Timec/Ferrovial and Defendant Valero could simply order their employees to undergo urine tests at Defendant DISA on a more frequent basis.

52.     Consequently, the claims alleged by the Plaintiffs are typical of the claims of the class. Plaintiffs were directly employed by Defendant TIMEC/Ferrovial, jointly employed by Defendant Valero, and indirectly employed by Defendant DISA during the Class Period and were subjected to the discriminatory and negligent policies or practices alleged herein. The relief sought by the Plaintiff for race discrimination, discrimination based on perceived disability, and negligence is also typical of the relief which is sought on behalf of the proposed class.

### D.    Typicality of Claims and Relief Sought

53.    The claims of Plaintiff Wilson and Plaintiff Daniels are typical of the claims of the proposed class. The relief sought by the Plaintiffs for race discrimination, discrimination based on perceived disability, and negligence complained of herein is also typical of the relief sought on behalf of the proposed class.

54.    Plaintiffs are, like the members of the proposed class, Black with melanin-rich hair and were directly employed by Defendant Timec/Ferrovial, jointly employed by Defendant Valero, and indirectly employed by Defendant DISA during the Class Period.

55.    Plaintiffs and members of the class put Defendants on notice, including by way of reporting the false positive hair tests to Defendant DISA and Defendant Timec/Ferrovial and by way of their EEOC charges to all Defendants, of discrimination based on race and perceived disability. Yet, Defendant DISA continues to conduct hair tests, and Defendant Timec/Ferrovial and Defendant Valero continue to rely on samples that are negligently collected, stored, and maintained by Defendant DISA in taking adverse employment action against Black people who commonly have melanin-rich hair. Defendant DISA's choice to continue to collect hair samples, and Defendant Timec/Ferrovial and Defendant Valero's choice to continue relying on hair samples collected by Defendant DISA is not based on business necessity, as Defendant DISA could continue to conduct urine tests, and Defendant Timec/Ferrovial and Defendant Valero could simply rely on these urine samples, which can detect drug use sooner than can hair samples. In terms of detecting drug use over a longer period, Defendant Timec/Ferrovial and Defendant Valero could simply order their employees to undergo urine tests at Defendant DISA on a more frequent basis.

56.    Consequently, the claims alleged by the Plaintiffs are typical of the claims of the class. Plaintiffs were directly employed by Defendant Timec/Ferrovial, jointly employed by Defendant Valero, and indirectly employed by Defendant DISA during the Class Period and were subjected to the discriminatory and negligent policies or practices alleged herein. The relief sought by the Plaintiff for race discrimination, discrimination based on perceived disability, and negligence is also typical of the relief which is sought on behalf of the proposed class.

CLASS ACTION COMPLAINT

E.    **Adequacy of Representation**

57.    Plaintiff Wilson's and Plaintiff Daniels' interests are co-extensive with those of the members of the proposed class they seek to represent, and Plaintiffs will fairly and adequately represent and protect the interests of the class, with no interests that conflict with those of the Class Members. Plaintiffs seek to remedy Defendants' discriminatory employment policies, practices and/or procedures so that people with melanin-rich hair common in Black people directly employed by Defendant Timec/Ferrovial, jointly employed by Defendant Valero, and indirectly employed by Defendant DISA will not be subjected to discrimination based on race and perceived disability, and negligence. Plaintiffs are willing and able to represent the proposed class fairly and vigorously and has retained counsel experienced in class and race discrimination litigation.

F.    **Efficiency of Class Prosecution of Common Claims**

58.    Certification of a class of Black employees who commonly have melanin-rich hair similarly situated to Plaintiffs is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of Plaintiffs and the proposed class. The individual claims of Plaintiffs require the resolution of the common question of whether Defendants engaged in a systemic pattern and/or practice of race discrimination, discrimination based on perceived disability, and, on the part of Defendant DISA, negligence, against Black employees who commonly have melanin-rich hair. Plaintiff seeks remedies to eliminate the adverse effects of such discrimination in his own life, career and working conditions, and in the life, career and working conditions of the proposed Class Members, and to prevent continued race discrimination, discrimination based on perceived disability, and negligence in the future. Plaintiffs have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on Black people with melanin-rich hair directly employed by Defendant Timec/Ferrovial, jointly employed by Defendant Valero, and indirectly employed by Defendant DISA in general. To gain such relief for themselves, as well as for the proposed Class Members, Plaintiffs will first establish the existence of systemic race discrimination, discrimination based on disability, and negligence as the premise for the relief they seek.

Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits. Certification of the proposed class of Black people who commonly have melanin-rich hair and who have been affected by these common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the proposed class and Defendants. Additionally, individual employees may lack the financial resources to vigorously prosecute separate lawsuits in court against large corporate defendants, and fear retaliation and blackballing in their industry.

      **G.**     **Nature of Notice to the Proposed Class**

     59.    Plaintiffs intend to send notice to all Class Members to the extent required by California Code of Civil Procedure § 382. Plaintiffs are informed and believe that Defendant Timec/Ferrovial's records contain a last known address for Class Members. Plaintiffs contemplate that individual notice be given to Class Members at such last known address by first class mail, informing them of the following:

      (a) The pendency of the class action, and the issues common to the class;

      (b) The nature of the action;

      (c) Their right to "opt out" of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

      (d) Their right, if they do not "opt out," to be represented by their own counsel and enter an appearance in the case; otherwise, they will be represented by Plaintiffs and their counsel; and

      (e) Their right, if they do not "opt out," to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues, adverse to the class.

**VII.**    **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Race Discrimination in Violation of 42 U.S.C. § 2000e, et seq.-Disparate Impact;**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

     60.    Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed

1  class, allege and incorporate by reference the allegations in the preceding paragraphs.

2      61.    It is unlawful under 42 U.S.C. § 2000e-2(a)(1) "to discriminate against any

3  individual with respect to his compensation, terms, conditions, or privileges of employment,

4  because of such individual's race."

5      62.    Discrimination may exist where an employment practice has a disproportionate

6  adverse effect—i.e., disparate impact—based on race.

7      63.    Hair drug tests have a disparate impact on Black people because hair tests can

8  detect lower levels of drugs in melanin-rich hair, which is more common in Black people, than is

9  possible when testing melanin-sparse hair, and false positives occur when drugs bind to the

10 melanin in melanin-rich hair in such a way that drug test collectors cannot distinguish whether

11 the drug's presence is due to ingestion or external contamination.

12     64.    Plaintiffs, who are Black, as well as other Black employees received false positive

13 results on their hair drug tests with Defendant DISA—Plaintiffs' indirect employer.

14     65.    Thus, by conducting hair testing on Plaintiffs and other Black employees as an

15 indirect employer, Defendant DISA caused a disparate impact on Plaintiffs by adversely

16 affecting their access to the job market in the refinery industry in comparison to non-Black

17 employees with melanin-sparse hair, who are not as susceptible to false positive hair drug tests.

18     66.    By adopting Plaintiffs' false positive hair test results from Defendant DISA to

19 take adverse employment action such as removing Plaintiffs from jobs sites and placing them on

20 inactive status, thus robbing them of other job opportunities, Plaintiffs' direct employer,

21 Defendant Timec/Ferrovial, and Plaintiffs' joint employer, Defendant Valero, likewise caused a

22 disparate impact on Plaintiffs based on their race.

23     67.    Hair drug tests are not a business necessity for Defendant Timec/Ferrovial or

24 Defendant Valero because these employers could simply use urine and/or saliva tests, which can

25 detect recent drug use more quickly than hair tests can anyway. Even though hair testing can

26 detect drug use that is more distant in time, Defendant Timec/Ferrovial and Defendant Valero

27 could simply conduct more frequent urine and/or saliva tests, maintaining their ability to detect

28 drug use throughout employment while eliminating the disparate impact hair testing causes.

1  Moreover, some of Plaintiffs' refinery assignments did not require hair tests even when they
2  worked for Defendant Timec/Ferrovial, further undermining any claim on the part of Defendant
3  Timec/Ferrovial or Defendant Valero that hair testing is a business necessity.

4      68.    Likewise, hair testing is not a business necessity for Defendant DISA, which
5  could simply conduct urine and/or saliva testing on behalf of other employers such as Defendant
6  Timec/Ferrovial and Defendant Valero while eliminating the disparate impact hair testing causes
7  for Black employees.

8      69.    Based on information and belief, to date, Defendant Timec/Ferrovial and
9  Defendant Valero continue to use the results of hair tests to determine whether to take adverse
10 action against employees, and Defendant DISA continues to conduct hair testing.

11     70.    Defendants' violations of 42 U.S.C. § 2000e-2(a)(1) caused Plaintiffs harm as set
12 forth above.

13     71.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set
14 forth herein.

15     72.    By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily
16 retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable
17 attorney's fees and litigation expenses, including expert witness fees and costs, incurred in
18 bringing this action.

19 **SECOND CAUSE OF ACTION**
**Race Discrimination in Violation of Gov. Code § 12940, et seq.-Disparate Impact**
20 **(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

21     73.    Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed
22 class, allege and incorporate by reference the allegations in the preceding paragraphs.

23     74.    It is unlawful under Government Code § 12940(a) for an employer to discriminate
24 against an employee based on the employee's race.

25     75.    Pursuant to Government Code § 12926(w), "'Race' is inclusive of traits
26 historically associated with race, including, but not limited to, hair texture and protective
27 hairstyles.

28

76.     Discrimination may exist where an employment practice has a disproportionate adverse effect—i.e., disparate impact—based on race.

77.     As alleged above, Black people are more susceptible than are other races to false positive hair drug tests due to higher levels of melanin in their hair. Plaintiffs, who are Black, received false positive hair tests from Defendant DISA, which Defendant Timec/Ferrovial and Defendant Valero adopted to take adverse employment action against Plaintiffs, despite Plaintiffs putting Defendant Timec/Ferrovial on notice through informing them that the hair tests were false almost immediately after receiving the faulty results, and putting Defendant Timec/Ferrovial and Defendant Valero on notice through their EEOC charges of discrimination.

78.     As also alleged above, hair testing is not a business necessity for any of the Defendants for the reasons described above, yet, based on information and belief, Defendant DISA continues to conduct hair tests and Defendant Timec/Ferrovial and Defendant Valero continue to rely on the results of hair tests to take adverse employment action against employees.

79.     Defendants' violations of Government Code §§ 12940(a); 12926(w) caused Plaintiffs harm as set forth above.

80.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

81.     By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

82.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

### THIRD CAUSE OF ACTION
**Race Discrimination in Violation of 42 U.S.C. § 2000e, et seq.-Disparate Treatment;**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

83.     Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed class, allege and incorporate by reference the allegations in the preceding paragraphs.

84.    It is unlawful under 42 U.S.C. § 2000e-2(a)(1) "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."

85.    Defendant DISA, Plaintiffs' indirect employer, is negligent in the collection, storage, and maintenance of Black employees' hair samples it uses for hair drug tests. Defendant DISA's negligence risks external contamination, which is already a heightened risk for Black individuals, as hair tests can detect lower levels of drugs in melanin-rich hair, such as that of Black people, but are not able to distinguish whether the positive result came from ingestion or external contamination. Likewise, Defendant DISA's negligence poses a risk of switching samples and conveying results to the wrong person.

86.    During its collection of Plaintiff Wilson's hair, which came back falsely positive for cocaine, the scissors Defendant DISA's collector used to cut the hair sample from Plaintiff Wilson's head were not individually wrapped, and the collector placed the hair on a table Plaintiff Wilson did not see the collector disinfect before finally placing the hair in a sheet of tin foil and then into a bag. Defendant DISA also wrote of Plaintiff Wilson's supposed sample, "Extremely curly or very unaligned hair submitted. This type of hair cannot be properly aligned and/or cut which may affect the time frame represented by the analysis." Plaintiff Wilson suspects the sample may have come back falsely positive based on Defendant DISA's negligent procedures in collecting Black people's hair.

87.    During its collection of Plaintiff Daniels' hair, which came back falsely positive for methamphetamines, Defendant DISA's collector decided to collect the sample from Plaintiff Daniels' underarm as he did not have much hair on his head or arms. Because Plaintiff Daniels was wearing deodorant, he told Defendant DISA's collector that he should wash his underarm before the collection as he had done during a hair drug test he underwent, and passed, with a previous employer. Defendant DISA's collector ignored him and clipped a sample of his hair, claiming it would be washed later. The hair landed on a piece of paper which Defendant DISA's collector then placed in a plastic bag for testing.

88.     Defendant DISA and Defendant Timec/Ferrovial were on notice of Black employees' false positive hair tests at least as of January 2019, if not sooner, when Plaintiff Daniels informed them that his hair test was a false positive. Plaintiff Wilson provided further notice in February 2019 when he reported to Defendant DISA and Defendant Timec/Ferrovial that his hair test was a false positive. Defendant Valero has been on notice of Black employees' false positive hair tests at least as of August of 2019, if not sooner, when Plaintiff Wilson and Plaintiff Daniels filed their EEOC charges against it and Defendant Timec/Ferrovial. Plaintiff Wilson's EEOC charge from August 2019 also included Defendant DISA, while Plaintiff Daniels filed his EEOC charge against Defendant DISA in October 2019. Thus, Plaintiffs' EEOC charges provided notice to all Defendants of Black employees' false positive hair tests.

89.     Despite notice that Plaintiffs' positive hair tests were false, Defendant Timec/Ferrovial and Defendant Valero took adverse employment action against Plaintiffs based on the false positive tests, thus ratifying Defendant DISA's discriminatory treatment of Plaintiffs.

90.     Defendants' violations of 42 U.S.C. § 2000e-2(a)(1) caused Plaintiffs harm as set forth above.

91.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

92.     By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

93.     Defendants engaged in the acts alleged herein maliciously, fraudulently; and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FOURTH CAUSE OF ACTION
**Race Discrimination in Violation of Gov. Code § 12940, et seq.-Disparate Treatment**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

94.     Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed

1  class, allege and incorporate by reference the allegations in the preceding paragraphs.

2      95.    It is unlawful under Government Code § 12940(a) for an employer to discriminate

3  against an employee based on the employee's race.

4      96.    Pursuant to Government Code § 12926(w), "'Race' is inclusive of traits

5  historically associated with race, including, but not limited to, hair texture and protective

6  hairstyles.

7      97.    As alleged above, Defendant DISA is negligent in the collection, storage, and

8  maintenance of Black employees' hair samples it uses for hair drug tests, including those of

9  Plaintiffs, as described above.

10     98.    As also alleged above, Defendant Timec/Ferrovial and Defendant Valero ratified

11  Defendant DISA's discriminatory conduct by taking adverse employment action against

12  Plaintiffs even after Plaintiffs put them on notice that the positive hair test results were false.

13     99.    Defendants' violations of Government Code §§ 12940(a); 12926(w) caused

14  Plaintiffs harm as set forth above.

15     100.   As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set

16  forth herein.

17     101.   By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily

18  retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable

19  attorney's fees and litigation expenses, including expert witness fees and costs, incurred in

20  bringing this action.

21     102.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and

22  oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to

23  recover punitive damages from Defendants in an amount according to proof.

24                          **FIFTH CAUSE OF ACTION**
                    **Race Discrimination in Violation of 42 U.S.C. § 1981**

25  **(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

26     103.   Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed

27  class, allege and incorporate by reference the allegations in the preceding paragraphs.

28

                                    20

104.   Plaintiffs are Black and are thus in a protected category based on their race pursuant to 42 U.S.C. § 1981. At all relevant times herein, Plaintiffs were in a contractual relationship pursuant to 42 U.S.C. § 1981 with Defendant DISA as an indirect employer, Defendant Timec/Ferrovial as a direct employer, and Defendant Valero as a joint employer.

105.   During Plaintiffs' employment, Defendant DISA, Defendant Timec/Ferrovial, and Defendant Valero violated Plaintiff's rights under 42 U.S.C. § 1981 by depriving Plaintiffs of their right to enjoy all benefits, privileges, terms, and conditions of Plaintiffs' employment contracts "as is enjoyed by white citizens."

106.   Defendants' violations of Plaintiffs' rights under 42 U.S.C. § 1981 were intentional. Defendant DISA, Plaintiffs' indirect employer, is negligent in the collection, storage, and maintenance of Black employees' hair samples it uses for hair drug tests. Defendant Timec/Ferrovial, Plaintiffs' direct employer, and Defendant Valero, Plaintiffs' joint employer, ratified Defendant DISA's discriminatory conduct by taking adverse employment action against Plaintiffs even after Plaintiffs put them on notice that the positive hair test results were false.

107.   Defendants' violations of 42 U.S.C. § 1981 caused Plaintiffs harm as set forth above.

108.   As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

109.   By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

110.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

### SIXTH CAUSE OF ACTION
**Discrimination Based on Perceived Disability in Violation of 42 U.S.C. § 12112(a)**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

111.   Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed

21
CLASS ACTION COMPLAINT

1  class, allege and incorporate by reference the allegations in the preceding paragraphs.

2      112.    It is unlawful under 42 U.S.C. § 12112(a) for an employer to discriminate against

3  an employee based on the employee's disabilities. Pursuant to 42 U.S.C. § 12102(I)(a); (c),

4  "disability" can include "being regarded as having" a disability "that substantially limits one or

5  more major life activities."

6      113.    Here, Defendants erroneously regarded Plaintiff Wilson as having a cocaine

7  addiction, and Plaintiff Daniels as having a methamphetamine addiction.

8      114.    Based on their erroneous belief that Plaintiff Wilson had cocaine addiction, and

9  Plaintiff Daniels had a methamphetamine addiction, Defendants took adverse employment action

10 against Plaintiffs, as alleged above.

11     115.    Defendants' violations of 42 U.S.C. § 12112(a) caused Plaintiffs harm as set forth

12 above.

13     116.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set

14 forth herein.

15     117.    By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily

16 retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable

17 attorney's fees and litigation expenses, including expert witness fees and costs, incurred in

18 bringing this action.

19     118.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and

20 oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to

21 recover punitive damages from Defendants in an amount according to proof.

22              **SEVENTH CAUSE OF ACTION**
                        Negligence
23 **(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

24     119.    Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed

25 class, allege and incorporate by reference the allegations in the preceding paragraphs.

26     120.    Plaintiffs incorporate the foregoing paragraphs by reference, as though fully

27 reproduced herein.

28

---
                        22
                 CLASS ACTION COMPLAINT

121.    Defendant DISA has a duty to properly collect, store, and maintain hair samples from employees undergoing hair drug tests.

122.    Defendant DISA breached its duty by failing to properly collect, store, and maintain hair samples from Black employees as alleged above, risking external contamination, a heightened risk for melanin-rich hair, which is more commonly found in Black people, or switching samples and conveying results to the wrong employee.

123.    Defendant DISA's breach of its duty to properly collect, store, and maintain hair samples from Black employees directly and proximately caused Plaintiffs to lose their assignments at Defendant Valero and be placed on inactive status at Defendant Timec/Ferrovial.

124.    As a direct and consequential result of Defendant DISA's actions, Plaintiffs have suffered damages, including but not limited to economic damages and emotional distress.

125.    By reason of Defendant DISA's conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

126.    Defendant DISA engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendant DISA in an amount according to proof.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, request judgment and the following specific relief against Defendants:

A.    Certification of the Class as a class action under Code of Civil Procedure § 382, and designation of Plaintiff Marvonte Wilson and Plaintiff Domonique Daniels as representatives of the Class and their counsel of record as Class Counsel;

B.    All damages which the Plaintiffs and the Class have sustained as a result of Defendants' conduct, including general damages for pain, suffering, emotional distress, and

special damages for lost compensation, including back, front pay and job benefits that they would have received but for the discriminatory practices of Defendants;

C.     For an award of exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future conduct;

D.     A preliminary and permanent injunction against Defendants and its directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from relying on hair tests to take adverse employment action against employees.

E.     Declaratory relief against Defendants finding their employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of Plaintiff and members of the Class under 42 U.S.C. § 2000 et seq.; California Government Code §§ 12940 et seq.; 12926(w); 42 U.S.C. § 1981; and 42 U.S.C. § 12112(a).

F.     For an award of reasonable attorneys' fees, expert witness fees, litigation expenses and costs incurred in the filing and prosecution of this action, pursuant to California Government Code § 12965(b);

G.     For pre-judgment and post-judgment interest as provided by law; and

H.     For such other and further relief, in law or in equity, as this Court may deem proper and just.

## IX. DEMAND FOR JURY TRIAL

Pursuant to Code of Civil Procedure section 631, Plaintiff Wilson and Plaintiff Daniels, individually, and on behalf of others similarly situated, demand a trial by jury.

Dated: October 28, 2022

CALIFORNIA CIVIL RIGHTS LAW GROUP
LAW OFFICES OF VERNON C. GOINS

By:  Julianne K. Stanford

Attorneys for MARVONTE WILSON and
DOMONIQUE DANIELS and the Putative Class

24
CLASS ACTION COMPLAINT



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SOLANO**

**CIVIL DIVISION**

☑ OLD SOLANO COURTHOUSE
580 Texas Street
Fairfield, CA 94533
(707) 207-7330

☐ HALL OF JUSTICE
600 Union Avenue
Fairfield, CA 94533
(707) 207-7330

---

Plaintiff(s):    WILSON, MARVONTE, ET AL

Defendant(s): TIMEC SERVICE COMPANY,INC, ET AL

Case No.  FCS059129

**NOTICE OF CASE MANAGEMENT
CONFERENCE ONE
AND
NOTICE OF ASSIGNMENT OF
JUDGE FOR ALL PURPOSES**

---

**PURSUANT TO LOCAL RULES AND BY ORDER OF THIS COURT, THIS MATTER HAS BEEN
CALENDARED FOR CASE MANAGEMENT CONFERENCE ONE:**

   **Date:**  03/06/2023                    **Time:**  9:30 a.m.

**THIS MATTER HAS BEEN ASSIGNED FOR ALL PURPOSES TO:**

   Judge Alesia F. Jones, Department 22

**ALL HEARINGS WILL BE HELD AT:**  580 Texas Street, Fairfield, California 94533

---

The obligations of counsel, or any party not represented by an attorney, in regard to Case Management
Conference One and any Case Management Conference Two set by the court are as follows:

1.     Service of the complaint must be within sixty (60) calendar days of the date of filing.

2.     Service and filing of any responsive pleadings must be within thirty (30) days after service of the
complaint. The time for filing responsive pleadings may not be extended except as authorized by law.
Appearance at the Case Management Conference does not excuse a litigant from the requirement of filing and
serving a responsive pleading within this deadline.

3.     Plaintiff shall serve a copy of this *Notice of Case Management Conference One and Notice of Assignment
of Judge for All Purposes ("Notice of CMC One")* on all defendants with the complaint.

4.     Any party serving a cross-complaint shall serve a copy of this *Notice of CMC One* on each cross-
defendant with the cross-complaint.

5.     Any cross-complaint served after Case Management Conference One has been held shall have a *Notice
of Case Management Conference Two* served with it.

6.     At least thirty days before the date set for Case Management Conference One, all counsel and self-
represented parties shall comply with the meet and confer obligations of California Rules of Court, rule 3.724.

7.     A *Case Management Statement* (Judicial Council form CM-110) shall be filed with the court and served on
all parties by each counsel by the 15th calendar day before the date set for Case Management Conference
One.

8.     At least one party demanding a jury on each side of a civil case must pay a nonrefundable fee of $150.00
on or before the initial case management conference or as otherwise provided by statute.

---

**NOTICE OF CMC ONE AND NOTICE OF ASSIGNMENT OF JUDGE**

9.   At Case Management Conference One the court shall inform counsel and self-represented parties of the date, time and place for Case Management Conference Two and shall make any orders regarding what is expected that counsel and self-represented parties will accomplish in regard to the case before the filing of the Case Management Statement for Case Management Conference Two.

10.   Each counsel shall complete, file, and serve on all parties a completed Case Management Statement by the 15th calendar day before the date set for Case Management Conference Two.

11.   At any Case Management Conference, counsel shall be completely aware of all procedural, factual, and legal aspects of the case, and have full authority to discuss and resolve any issues that arise at the conference, including settlement of the case. This applies equally to both attorneys of record and specially-appearing counsel.

12.   The court may impose sanctions pursuant to Solano County Local Rules, rule 4.6, in the event that a Case Management Statement is not timely filed and/or served, or is not fully completed, or the requirements of Rule 4.6 are not met.

> COUNSEL AND SELF-REPRESENTED PARTIES ARE OBLIGATED TO REVIEW AND COMPLY WITH LOCAL AND STATEWIDE RULES REGARDING CIVIL LITIGATION. They are available at:
> *http://www.courts.ca.gov/rules.htm*
> *http://www.solano.courts.ca.gov/LocalRulesofCourt.html*

### AFFIDAVIT OF SERVICE

I, the undersigned, declare under penalty of perjury that I am employed as a deputy clerk of the above-entitled court and not a party to the within-entitled action, and that I served this notice as follows:

☐   I personally served the person named below on (*date*):_____ at

(*time*)_____.

Name: _____

☐ Party      ☐ Attorney of Record      ☐ Representative

I,_____, acknowledge receipt of a copy of this *Notice of Case Management Conference One and Notice of Assignment of Judge for All Purposes.*

Date: _____      _____
                              Signature

☑   I caused to be placed a true copy of this notice in an envelope which was then sealed and postage fully prepaid on the date shown below; that I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service; that the above stated document will be deposited in the Superior Court of California, County of Solano's outgoing mailbox for collection by county mail carriers on the date indicated. Said envelope was addressed to the attorneys for the parties, or the parties, as shown below:

JULIANNE K STANFORD
332 SAN ANSELMO AVENUE
SAN ANSELMO, CA 94960

☑ See attached for additional service addresses

Date:  11/04/2023

Clerk of the Court
Superior Court of California, County of Solano

By: _____*KFuentes*_____
                    Deputy Clerk