Lawrence A. Organ (SBN 175503)
Julianne K. Stanford (SBN 290001)
CALIFORNIA CIVIL RIGHTS LAW GROUP
332 San Anselmo Avenue
San Anselmo, CA 94960
Tel. (415) 453-4740
Fax (415) 785-7352
Email: larry@civilrightsca.com
         julianne@civilrightsca.com

Vernon C. Goins II (SBN 195461)
William W. Castillo Guardado (SBN 294159)
LAW OFFICES OF VERNON C. GOINS
1970 Broadway, Ste. 450
Oakland, CA 94612
Tel. 510-663-3700
Fax 510-663-3710
Email: vgoins@goinslawfirm.com
         wcastillo@goinslawfirm.com

Attorneys for Plaintiffs MARVONTE WILSON,
DOMONIQUE DANIELS, and the Putative Class

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVONTE WILSON and DOMONIQUE DANIELS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>TIMEC SERVICES COMPANY, INC.; FERROVIAL SERVICES INFRASTRUCTURE, INC.; VALERO REFINING COMPANY – CALIFORNIA; DISA GLOBAL SOLUTIONS; and DOES 1 THROUGH 50, INCLUSIVE,<br><br>        Defendants. | Case No. 2:23-cv-00172-WBS-KJN<br><br>AMENDED CLASS ACTION COMPLAINT<br><br>1.  Race Discrimination in Violation of 42 U.S.C. § 2000e, *et seq.*-Disparate Impact;<br>2.  Race Discrimination in Violation of Gov. Code § 12940, *et seq.*-Disparate Impact<br>3.  Race Discrimination in Violation of 42 U.S.C. § 2000e, *et seq.*-Disparate Treatment<br>4.  Race Discrimination in Violation of Gov. Code § 12940, *et seq.*-Disparate Treatment<br>5.  Race Discrimination in Violation of 42 U.S.C. § 1981<br>6.  Discrimination Based on Perceived Disability in Violation of 42 U.S.C. § 12112<br>7.  Negligence<br><br>JURY TRIAL DEMANDED |

## I. NATURE OF THE ACTION

1.      Plaintiff Marvonte Wilson and Plaintiff Domonique Daniels bring this action against Defendants Timec Company, Inc. and Ferrovial Oil and Gas Services, Inc. (collectively "Timec/Ferrovial"); Defendant Valero Refining Company-California ("Valero"); Defendant DISA Global Solutions ("DISA"); and Does 1-50, inclusive (collectively "Defendants"), alleging that Defendants discriminated against Plaintiffs and other Black employees by taking adverse employment action against them based on known false positive hair tests that disproportionately affect people with melanin-rich hair, which is common in Black people. Based on information and belief, Defendant DISA continues to drug test using hair samples, and Defendants Timec/Ferrovial and Valero continue to use false results to take adverse employment action against employees, despite a lack of business necessity for the practice. Defendants' actions are in violation of 42 U.S.C. § 2000 et seq.; California Government Code §§ 12940 et seq.; 12926(w); 42 U.S.C. § 1981; and 42 U.S.C. § 12112(a). Moreover, Defendant DISA was negligent in its collection, maintenance, and storage of hair samples.

2.      Plaintiffs Wilson and Daniels seek to represent a class of Black employees, who commonly have melanin-rich hair, against whom Defendants have taken adverse action based on false positive hair tests, at any time from 2019 to the final disposition of this action ("Class Period"). These employees share a community of interest and are similarly situated under Federal Rule of Civil Procedure 23.

3.      During the class period, Plaintiffs and the putative Class Members suffered racial discrimination because they are Black and discrimination based on perceived disability at the hands of all Defendants, and negligence at the hands of Defendant DISA. They received false positive hair drug tests, an increased risk for people with melanin-rich hair, which is common in Black people. Despite Plaintiffs' and Class Members' notice to Defendants regarding the false positives, based on information and belief, Defendant DISA continues to drug test using hair samples, and Defendants Timec/Ferrovial and Valero continue to use false positives from hair samples to take adverse employment action against employees, despite a lack of business necessity for the practice. Plaintiffs are seeking on behalf of themselves and the Class they seek

to represent, declaratory and injunctive relief; back pay; front pay; compensatory and punitive damages; and attorneys' fees, costs, and expenses to redress Defendants' pervasive, discriminatory employment policies, practices and/or procedures.

## II. JURISDICTION AND VENUE

4.     This Court has jurisdiction over Plaintiffs' claims arising under federal law pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as "a substantial part of the events or omissions giving rise to the claim occurred" in Solano County, California.

## III. PARTIES

6.     Plaintiff Marvonte Wilson was directly employed by Defendant Timec Company, Inc. and Ferrovial Oil and Gas Services, Inc. (collectively "Timec/Ferrovial") from in or around 2016 to about Feb. 5, 2019. He was jointly employed by Defendant Valero Refining Company-California ("Valero") and was indirectly employed by Defendant DISA Global Solutions ("DISA") in or around January and February 2019 in Solano County, California. Plaintiff Wilson is, and was at all relevant times herein, an adult, Black, resident of California with melanin-rich hair.

7.     Plaintiff Domonique Daniels has been directly employed by Defendant Timec Company, Inc. and Ferrovial Oil and Gas Services, Inc. (collectively "Timec/Ferrovial") from in or around 2001. He was jointly employed by Defendant Valero Refining Company-California ("Valero") and was indirectly employed by Defendant DISA Global Solutions ("DISA") in or around January 2019 in Solano County, California. Plaintiff Daniels is, and was at all relevant times herein, an adult, Black, resident of California with melanin-rich hair.

8.     Defendants Timec Company, Inc. and Ferrovial Oil and Gas Services, Inc. (collectively "Timec/Ferrovial") was a Respondent during the Equal Employment Opportunity Commission (EEOC) investigation that arose from Plaintiffs' charges of discrimination. Based on information and belief, Timec Company, Inc. merged into Timec Services Company, Inc., incorporated in Delaware, with its principal place of business in Austin, Texas. Based on

information and belief, at all relevant times herein, Ferrovial Oil & Gas Services, Inc. was under the umbrella of Ferrovial Services Infrastructure, Inc., which is incorporated in Delaware, with its principal place of business in Austin, Texas. Based on information and belief, at all relevant times herein, Ferrovial Services Infrastructure, Inc., owned Timec until a later sale in or around 2021. Defendant Timec/Ferrovial provides various services in the refinery industry, including within Solano County, California. Plaintiffs were directly employed by Defendant Timec/Ferrovial.

9.     Defendant Valero Refining Company-California ("Valero") is incorporated in Delaware, with its principal place of business in San Antonio, Texas. Valero provides various services within the refining industry, including within Solano County, California. Plaintiffs were jointly employed by Defendant Valero. Defendant Valero set terms and conditions of Plaintiffs' employment and had the authority and control to terminate Plaintiffs' employment at Valero.

10.     Defendant DISA Global Solutions ("DISA") is incorporated in Delaware, with its principal place of business in Houston, Texas. DISA provides drug testing services, such as hair drug tests, to companies including Defendant Timec/Ferrovial, in various locations, including within Solano County, California. Plaintiffs were indirectly employed by Defendant DISA, as Defendant DISA interfered with Plaintiffs' employment opportunities with Defendant Timec/Ferrovial and Defendant Valero, among other employers, as alleged below.

11.     In addition to Defendant Timec/Ferrovial, Defendant Valero, and Defendant DISA Plaintiffs sue fictitious defendants Does 1-50, inclusive, because their names, capacities, status, or facts showing them to be liable are not presently known. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and such Defendants caused Plaintiffs' damages as herein alleged. Plaintiffs will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

12.     Plaintiffs are informed, believe, and thereon allege that each of the Defendants herein was at all times relevant to this action the agent, employee, representative partner, and/or joint venture of the remaining Defendants and was acting within the course and scope of the

relationship. Plaintiffs are further informed, believe, and thereon allege that each of the Defendants herein gave consent to, ratified, and authorized the acts alleged herein to the remaining Defendants.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     On August 9, 2019, Plaintiff Daniels timely dual filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the California Department of Fair Employment and Housing (DFEH), now the California Civil Rights Department (CRD), against Defendants Timec/Ferrovial and Defendant Valero. On August 30, 2019, Plaintiff Wilson timely dual filed a charge of discrimination with the EEOC and DFEH against Defendants Timec/Ferrovial and Defendant Valero. On November 14, 2019, Plaintiff Wilson timely dual filed a charge of discrimination with the EEOC and the DFEH against Defendant DISA. On October 30, 2019, Plaintiff Daniels timely dual filed a charge of discrimination with the EEOC and the DFEH against Defendant DISA. On August 1, 2022, the EEOC issued Plaintiff Wilson and Plaintiff Daniels right-to-sue notices against Defendant Timec/Ferrovial, Defendant Valero, and Defendant DISA.

## V. FACTUAL ALLEGATIONS

14.     Research has shown that hair drug tests disproportionately result in false positives when processing the type of hair common in Black people. This is due to the chemical and physical characteristics of melanin-rich hair, commonly found in Black people. Hair tests can detect lower levels of drugs in melanin-rich hair than is possible when testing melanin-sparse hair, and false positives occur when drugs bind to melanin-rich hair in such a way that drug test collectors cannot distinguish whether the drug's presence is due to ingestion or external contamination. Thus, in the context of employee drug testing, Black people with melanin-rich hair disproportionately face adverse employment actions based on false positive hair drug tests.

15.     Hair tests cannot detect drug usage that occurred anywhere from the approximately 5 to 7 days before the test, rendering hair testing much less useful for ensuring workplace safety regarding recent drug use than is urine testing, which can detect drug usage much sooner.

16.     Further calling the efficacy of hair testing into question, entities that conduct hair testing make widely varying claims about how far back hair testing can reach. Defendant DISA claims on its website, without citing its sources, that hair testing "is regarded by many as the best indicator of repeat drug use since it can detect *repeat drug use up to* a 90-day window,"  while Psychemetics, another company that conducts hair drug testing, claims on its website that in 1985, the company's founder confirmed early 19th century poet John Keats' increasing opium use before his death through testing a 167-year-old sample of his hair. The shaky ground upon which the disputed science behind hair testing stands means that "repeat drug use," or being erroneously regarded as having a drug addiction, is a heightened risk for people with melanin-rich hair common in Black people.

17.     Despite hair drug testing's lack of efficacy and disproportionate false positive results for people with melanin-rich hair common in Black people, Defendant DISA conducts these tests and present the results as valid, and places Black employees with melanin-rich hair on inactive status on "DISA's Contractor's Consortium," or "DCC." DISA advertises DCC on its website as a platform for "nearly 250 industrial facilities" in the refining, chemical, and petrochemical industries to "reduce[] job-hopping" of employees who have positive drug tests, as all participating employers can view an employees' compliance status. An inactive status on DCC bars employees, even those Black employees with melanin-rich hair who received *false* positive hair drug test results, from jobs with hundreds of employers in the industry. Defendant DISA also controls the retesting process and substance abuse course, so employees with positive or false positive tests must pay Defendant DISA to take to regain active status on DCC. Defendants Timec/Ferrovial and Defendant Valero accept Defendant DISA's faulty methodology as valid and use hair testing to take adverse action against employees, even though they also use urine and saliva testing. Even if an employee's urine and/or saliva test come back negative, Defendants rely on false positive hair test results to take adverse action against Black employees with melanin-rich hair. Thus, an inactive status on DCC at the hands of Defendant DISA and other adverse employment actions such as a suspension or termination at Defendant

Timec/Ferrovial and Defendant Valero based on *false* positive hair drug tests are a proxy for adverse employment action because of race for Black employees with melanin-rich hair.

**Plaintiff Wilson**

18.     Plaintiff Wilson is a Black man. He worked for Defendant Timec/Ferrovial as a laborer and safety attendant from in or around 2016 to about Feb. 5, 2019.

19.     In or around late January 2019, Defendant Timec/Ferrovial notified Plaintiff Wilson that he was being assigned to work at Defendant Valero's site in Benicia, California, beginning in February.

20.     Defendant Timec/Ferrovial ordered Plaintiff Wilson to undergo urine and hair drug tests on January 31, 2019, at Defendant DISA, as its contract with Defendant Valero specifically required workers on its site to pass these tests through Defendant DISA. This was Plaintiff Wilson's first drug test at Defendant DISA. During his time at Defendant Timec/Ferrovial, Plaintiff Wilson had undergone previous urine tests at Occupational Safety Councils of America (OSCA) in Martinez for his dispatch assignments to other refineries, all of which came back negative. Plaintiff Wilson had also undergone hair tests at OSCA while he was with a previous employer, all of which came back negative.

21.     Plaintiff Wilson noticed the procedures Defendant DISA used to administer his hair drug test were unsanitary and could lead to external contamination: the scissors Defendant DISA's collector used to cut the hair sample from Plaintiff Wilson's head were not individually wrapped, and the collector placed the hair directly on a table without disinfecting the table before finally placing the hair in a sheet of tin foil and then into a bag.

22.     Pending the results of his drug tests, Defendant Valero gave Plaintiff Wilson his badge, clearing him to work at its Benicia site. Plaintiff Wilson worked the night shift at Defendant Valero from February 4 to the morning of February 5.

23.     After his shift on February 5, a representative from Defendant DISA, who identified himself as a doctor, informed Plaintiff Wilson that while his urine test came back negative for all drugs, his hair test came back positive for cocaine. Plaintiff Wilson has never used cocaine in his life.

24.     Shocked and distressed about the false positive hair test, Plaintiff Wilson asked Defendant DISA's representative if he had any options, and even offered to immediately undergo another test. But Defendant DISA's representative refused. To Plaintiff Wilson's dismay, he was given only two options. The first was to pay Defendant DISA a $175 fee for a retest of another portion of the same hair sample. This was concerning given that his sample might have falsely tested positive again and did not eliminate the possibility that the hair sample used for his test had been contaminated or belonged to another individual. The second option was pay between $600 and $800 for a substance abuse course through DISA. This was unacceptable to Plaintiff Wilson given that he had never used cocaine in his life. Plaintiff Wilson opted for the retest since he has never used cocaine. Upon its receipt of Plaintiff Wilson's initial hair test results, Defendant Timec/Ferrovial informed him that he was not to return to work until he completed the substance abuse course. Plaintiff Wilson was terminated from Defendant Valero, as it required a clean hair test to work at its site. Defendant Timec/Ferrovial claimed it could not do anything for Plaintiff Wilson and that it was up to him to resolve the issue with Defendant DISA.

25.     In the days following his false positive hair test from Defendant DISA, Plaintiff Wilson met with Willie Hicks, the then-President of his union, Laborers Local 324, to report the false positive hair test. The union President informed Plaintiff Wilson that he knew of at least two additional instances in which Black employees received false positive hair tests from Defendant DISA.

26.     In the meantime, on February 7, 2019, Plaintiff Wilson underwent a hair drug test at ARCpoint Labs of Martinez. The collector there used electronic scissors to cut hair from Plaintiff Wilson's leg. The collector held a piece of foil directly below, so the hair fell right on it without touching any unsanitary surfaces. That hair test came back negative on February 12, 2019.

27.     But the Defendant DISA retest came back positive on or about February 14, 2019. Plaintiff Wilson informed a Human Resources representative at Defendant Timec/Ferrovial, Heather (last name unknown), about his negative hair drug test at ARCpoint Labs of Martinez,

but Heather dismissed Plaintiff Wilson, telling him that Defendant Timec/Ferrovial did not accept independent drug tests.

28.     Defendant DISA classified Plaintiff Wilson as inactive on DCC until he completed its substance abuse class. Defendant DISA required Plaintiff Wilson to complete its class because it erroneously regarded Plaintiff Wilson as a "repeat drug use[r]", or addict, based on a false positive caused by his melanin-rich hair. Thus, Defendant DISA barred him from work with any employer-member of DCC based on his race and erroneously regarding him as a drug addict. Defendant Timec/Ferrovial and Defendant Valero likewise barred Plaintiff Wilson from working with them while he was inactive in DCC, adopting Defendant DISA's race-based and perceived disability-based reasons for taking adverse action against Plaintiff Wilson. Because Plaintiff Wilson had never used cocaine, he declined the class and did not return to work for Defendants.

29.     Plaintiff Wilson subsequently obtained a copy of his hair drug test records from Defendant DISA, which read, "Extremely curly or very unaligned hair submitted. This type of hair cannot be properly aligned and/or cut which may affect the time frame represented by the analysis." Plaintiff Wilson was concerned that DISA's collection procedures had resulted in a false positive test.

30.     Based on information and belief, Defendants continue to use hair testing, despite receipt of Plaintiff Wilson's negative urine drug test from Defendant DISA, negative hair drug test from ARCpoint Labs of Martinez, his report of a false positive hair test from Defendant DISA, and charge of discrimination in or around August and October 2019, which provide notice that such hair testing adversely impacts Black people.

31.     Plaintiff Wilson was out of work for about two months before he secured new employment, although the new positions have not been comparable in terms of job stability, salary, and benefits.

32.     Plaintiff Wilson has suffered from mental and emotional distress, including symptoms of depression, because of the discrimination he experienced at the hands of Defendants.

**Plaintiff Daniels**

33.     Plaintiff Daniels is a Black man. He worked for Defendant Timec/Ferrovial as a laborer from in or around 2001 until in or around 2015 or 2016 when he was promoted to the position of Safety Supervisor. Plaintiff Daniels was not assigned to jobs with employers participating in DCC, including Defendant Timec/Ferrovial, for over a year after a false positive hair drug test in 2019, as alleged below, and returned briefly for a dispatch job from in or around June 2022 to in or around August 2022. But the dispatch job in 2022 was to Chevron, which only required a urine test.

34.     In or around early January 2019, Defendant Timec/Ferrovial notified Plaintiff Daniels that he was being assigned to work at Defendant Valero's site in Benicia, California.

35.     Defendant Timec/Ferrovial personnel informed Plaintiff Daniels that its contract with Defendant Valero required urine, saliva, and hair drug tests from him to work at its site. Plaintiff Daniels underwent these tests at Defendant DISA on January 4, 2019.

36.     During the hair drug test, Defendant DISA's collector decided to collect the sample from Plaintiff Daniels' underarm as he did not have much hair on his head or arms. Because Plaintiff Daniels was wearing deodorant, he told Defendant DISA's collector that he should wash his underarm before the collection as he had done during a hair drug test he underwent, and passed, with a previous employer. Defendant DISA's collector ignored him and clipped a sample of his hair, claiming it would be washed later. The hair landed on a piece of paper that Defendant DISA's collector then placed in a plastic bag for testing.

37.     Defendant DISA contacted Plaintiff Daniels on January 13 and notified him that his hair sample came back positive for methamphetamines. Plaintiff Daniels has never used methamphetamines. Plaintiff Daniels' urine and saliva tests were negative. Defendant DISA offered a $175 retest, or a substance abuse course that cost about $850. At first, Plaintiff Daniels believed a retest would be futile, as the only way the original test came back positive would be if it was contaminated or if the result came from a sample that belonged to someone else. He did not want to take the substance abuse course either, as he does not use methamphetamines.

38.     Plaintiff Daniels informed Defendant Timec/Ferrovial that the hair test was a false positive, but its representative claimed Plaintiff Daniels was responsible for resolving the issue with Defendant DISA, which marked him inactive on DCC.

39.     Plaintiff Daniels then decided to get his sample retested, but he had to leave numerous messages with Defendant DISA. By the time Defendant DISA got back to him, it informed him that the deadline for retesting had passed. In the desperation that came from missing out on multiple jobs because of his inactive status on DCC, Plaintiff Daniels ultimately paid for, enrolled in, and completed the substance abuse course through Defendant DISA. Defendant DISA required Plaintiff Daniels to complete its class because it erroneously regarded Plaintiff Daniels as a "repeat drug use[r]", or addict, based on a false positive caused by his melanin-rich hair. Thus, Defendant DISA barred him from work with any employer-member of DCC based on his race and erroneously regarding him as a drug addict. Defendant Timec/Ferrovial and Defendant Valero likewise barred Plaintiff Wilson from working with them while he was inactive in DCC, adopting Defendant DISA's race-based and perceived disability-based reasons for taking adverse action against Plaintiff Daniels.

40.     Plaintiff Daniels felt blackballed because of the false negative hair test that resulted in Defendant DISA marking him as inactive on DCC, so he focused on finding work through his union. But, even when he found work, it was in lower-ranking positions at a lower pay grade.

41.     Plaintiff Daniels has suffered from mental and emotional distress, including symptoms of depression, stress, and embarrassment at having the stain of a positive drug test, even though it was a false positive.

## VI. CLASS ALLEGATIONS

### A.     Class Definition

42.     Plaintiff Wilson and Plaintiff Daniels bring this action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and on behalf of a class of all Black people who commonly have melanin-rich hair and who were indirectly employed by Defendant DISA and/or directly employed by Defendant Timec/Ferrovial, and/or jointly employed by Defendant Valero

who received false positive hair drug tests at any time from 2019 to present.

43. This action is brought, and may properly be maintained, as a class action because there is a well-defined community of interest in the litigation, and the proposed class is easily ascertainable.

**B. Numerosity and Impracticability of Joinder**

45. The proposed Class Members are sufficiently numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that the proposed class consists of more than 100 Black people with melanin-rich hair.

**C. Community of Interest**

46. There is a well-defined community of interest because common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.

47. The common questions of law include, *inter alia:* (a) whether hair drug testing has a disparate impact on people with melanin-rich hair common in Black people; (b) whether Defendants subjected Plaintiffs to disparate treatment based on their race; (c) whether Defendants discriminated against Plaintiffs based on perceived disability; and (d) whether Defendant DISA was negligent in its collection, maintenance, and storage of Plaintiffs' hair samples.

48. The common questions of fact would include, *inter alia:* (a) whether Plaintiffs received false positive hair tests from Defendant DISA; (b) whether Plaintiffs put Defendants on notice of their false positive hair tests; (c) whether there is a non-discriminatory drug testing procedure for employees with melanin-rich hair common in Black people; and (d) whether hair drug testing is a business necessity for Defendants.

49. The claims brought by Plaintiff Wilson and Plaintiff Daniels are typical of the claims of the proposed class. The relief sought by the Plaintiffs for race discrimination, discrimination based on perceived disability, and negligence complained of herein is also typical of the relief sought on behalf of the proposed class.

50.     Plaintiffs are, like the members of the proposed class, Black with melanin-rich hair and were indirectly employed by Defendant DISA, and/or directly employed by Defendant TIMEC/Ferrovial, and/or jointly employed by Defendant Valero during the Class Period.

51.     Plaintiff Wilson and Plaintiff Daniels put Defendants on notice, including by way of reporting the false positive hair tests to Defendant DISA and Defendant Timec/Ferrovial and by way of their administrative charges to all Defendants, of discrimination based on race and perceived disability. As named Plaintiffs, Plaintiff Wilson's and Plaintiff Daniel's administrative charges are sufficient to administratively exhaust on behalf of unnamed class members. Yet, Defendant DISA continues to conduct hair tests and to place Black employees with melanin-rich hair on inactive status on DCC based on false positive results. Defendants Timec/Ferrovial and Valero continue to rely on false positive results reported by Defendant DISA in taking adverse employment action against employees with melanin-rich hair common in Black people. Defendant DISA's choice to continue to collect hair samples and place employees on inactive status in DCC for false positive results, and Defendant Timec/Ferrovial and Defendant Valero's choice to continue relying on hair samples collected by Defendant DISA is not based on business necessity, as Defendant DISA could continue to conduct urine tests, and Defendant Timec/Ferrovial and Defendant Valero could simply rely on these urine samples, which can detect drug use sooner than can hair samples. In terms of detecting drug use over a longer period, Defendant Timec/Ferrovial and Defendant Valero could simply order their employees to undergo urine tests at Defendant DISA on a more frequent basis.

52.     Consequently, the claims alleged by Plaintiffs are typical of the claims of the class. Plaintiffs were indirectly employed by Defendant DISA, and/or directly employed by Defendant TIMEC/Ferrovial, and/or jointly employed by Defendant Valero during the Class Period and were subjected to the discriminatory and negligent policies or practices alleged herein. The relief sought by the Plaintiffs for race discrimination, discrimination based on perceived disability, and negligence is also typical of the relief which is sought on behalf of the proposed class.

**D.     Typicality of Claims and Relief Sought**

53.     The claims of Plaintiff Wilson and Plaintiff Daniels are typical of the claims of the proposed class. The relief sought by the Plaintiffs for race discrimination, discrimination based on perceived disability, and negligence complained of herein is also typical of the relief sought on behalf of the proposed class.

54.     Plaintiffs are, like the members of the proposed class, Black with melanin-rich hair and were indirectly employed by Defendant DISA, and/or directly employed by Defendant Timec/Ferrovial, and/or jointly employed by Defendant Valero during the Class Period.

55.     Plaintiff Wilson and Plaintiff Daniels put Defendants on notice, including by way of reporting the false positive hair tests to Defendant DISA and Defendant Timec/Ferrovial and by way of their administrative charges to all Defendants, of discrimination based on race and perceived disability. As named Plaintiffs, Plaintiff Wilson's and Plaintiff Daniel's administrative charges are sufficient to administratively exhaust on behalf of unnamed class members. Yet, Defendant DISA continues to conduct hair tests and to place Black employees with melanin-rich hair on inactive status on DCC based on false positive results. Defendants Timec/Ferrovial and Valero continue to rely on false positive results reported by Defendant DISA in taking adverse employment action against employees with melanin-rich hair common in Black people. Defendant DISA's choice to continue to collect hair samples and place employees on inactive status in DCC for false positive results, and Defendant Timec/Ferrovial and Defendant Valero's choice to continue relying on hair samples collected by Defendant DISA is not based on business necessity, as Defendant DISA could continue to conduct urine tests, and Defendant Timec/Ferrovial and Defendant Valero could simply rely on these urine samples, which can detect drug use sooner than can hair samples. In terms of detecting drug use over a longer period, Defendant Timec/Ferrovial and Defendant Valero could simply order their employees to undergo urine tests at Defendant DISA on a more frequent basis.

56.     Consequently, the claims alleged by the Plaintiffs are typical of the claims of the class. Plaintiffs were indirectly employed by Defendant DISA, and/or directly employed by Defendant Timec/Ferrovial, and/or jointly employed by Defendant Valero during the Class

Period and were subjected to the discriminatory and negligent policies or practices alleged herein. The relief sought by Plaintiffs for race discrimination, discrimination based on perceived disability, and negligence is also typical of the relief which is sought on behalf of the proposed class.

### E.    Adequacy of Representation

57.    Plaintiff Wilson's and Plaintiff Daniels' interests are co-extensive with those of the members of the proposed class they seek to represent, and Plaintiffs will fairly and adequately represent and protect the interests of the class, with no interests that conflict with those of the Class Members. Plaintiffs seek to remedy Defendants' discriminatory employment policies, practices and/or procedures so that people with melanin-rich hair common in Black people indirectly employed by Defendant DISA, and/or directly employed by Defendant Timec/Ferrovial, and/or jointly employed by Defendant Valero will not be subjected to discrimination based on race and perceived disability, and negligence. Plaintiffs are willing and able to represent the proposed class fairly and vigorously and have retained counsel experienced in class and race discrimination litigation.

### F.    Efficiency of Class Prosecution of Common Claims

58.    Certification of a class of Black employees with melanin-rich hair similarly situated to Plaintiffs is the most efficient and economical means of resolving the questions of law and fact which are common to the claims of Plaintiffs and the proposed class. The individual claims of Plaintiffs require the resolution of the common question of whether Defendants engaged in a systemic pattern and/or practice of race discrimination, discrimination based on perceived disability, and, on the part of Defendant DISA, negligence, against Black employees with melanin-rich hair. Plaintiffs seek remedies to eliminate the adverse effects of such discrimination in their own life, career and working conditions, and in the life, career and working conditions of the proposed Class Members, and to prevent continued race discrimination, discrimination based on perceived disability, and negligence in the future. Plaintiffs have standing to seek such relief because of the adverse effect that such discrimination has had on them individually and on Black people with melanin-rich hair indirectly employed by

Defendant DISA, and/or directly employed by Defendant Timec/Ferrovial, and/or jointly employed by Defendant Valero in general. To gain such relief for themselves, as well as for the proposed Class Members, Plaintiffs will first establish the existence of systemic race discrimination, discrimination based on disability, and negligence as the premise for the relief they seek. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits. Certification of the proposed class of Black people with melanin-rich hair and who have been affected by these common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the proposed class, and Defendants. Additionally, individual employees may lack the financial resources to vigorously prosecute separate lawsuits in court against large corporate defendants, and fear retaliation and blackballing in their industry.

### G. Nature of Notice to the Proposed Class

59. Plaintiffs intend to send notice to all Class Members to the extent required by Federal Rule of Civil Procedure 23. Plaintiffs are informed and believe that Defendant DISA's, Defendant Timec/Ferrovial's, and Defendant Valero's records contain a last known address for Class Members. Plaintiffs contemplate that individual notice be given to Class Members at such last known address by first class mail, informing them of the following:

(a) The nature of the action;

(b) The definition of the class certified;

(c) The class claims, issues, or defenses;

(d) That a class member may enter an appearance through an attorney if the member so desires;

(e) That the court will exclude from the class any member who requests exclusion;

(f) The time and manner for requesting exclusion; and

(g) The binding effect of a class judgment on members under Rule 23(c)(3).

## VII.   CAUSES OF ACTION

### FIRST CLAIM

**Race Discrimination in Violation of 42 U.S.C. § 2000e, et seq.-Disparate Impact;**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

60.    Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed class, allege and incorporate by reference the allegations in the preceding paragraphs.

61.    It is unlawful under 42 U.S.C. § 2000e-2(a)(1) "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."

62.    Discrimination may exist where an employment practice has a disproportionate adverse effect—i.e., disparate impact—based on race.

63.    Hair drug tests have a disparate impact on Black people because hair tests can detect lower levels of drugs in melanin-rich hair, which is more common in Black people, than is possible when testing melanin-sparse hair, and false positives occur when drugs bind to the melanin in melanin-rich hair in such a way that drug test collectors cannot distinguish whether the drug's presence is due to ingestion or external contamination.

64.    Plaintiffs, who are Black, as well as other Black employees received false positive results on their hair drug tests with Defendant DISA—Plaintiffs' indirect employer.

65.    Thus, by conducting hair testing on Plaintiffs and other Black employees as an indirect employer and placing these employees on inactive status in DCC, Defendant DISA caused a disparate impact on Plaintiffs by adversely affecting their access to the job market in the refinery industry, in which hundreds of employers participate in DCC, in comparison to non-Black employees with melanin-sparse hair, who are not as susceptible to false positive hair drug tests.

66.    By adopting Plaintiffs' false positive hair test results from Defendant DISA as valid and using the results to take adverse employment action such as removing Plaintiffs from job sites, Plaintiffs' direct employer, Defendant Timec/Ferrovial, and Plaintiffs' joint employer, Defendant Valero, likewise caused a disparate impact on Plaintiffs based on their race.

67.     Hair drug tests are not a business necessity for Defendant Timec/Ferrovial or Defendant Valero because these employers could simply use urine and/or saliva tests, which can detect recent drug use more quickly than hair tests can anyway. Even though hair testing can supposedly detect drug use that is more distant in time, Defendant Timec/Ferrovial and Defendant Valero could simply conduct more frequent urine and/or saliva tests, maintaining their ability to detect drug use throughout employment while eliminating the disparate impact hair testing causes. Moreover, some of Plaintiffs' refinery assignments did not require hair tests even when they worked for Defendant Timec/Ferrovial, further undermining any claim on the part of Defendant Timec/Ferrovial or Defendant Valero that hair testing is a business necessity.

68.     Likewise, hair testing is not a business necessity for Defendant DISA, which could simply conduct urine and/or saliva testing on behalf of other employers such as Defendant Timec/Ferrovial and Defendant Valero while eliminating the disparate impact hair testing causes for Black employees.

69.     Based on information and belief, to date, Defendant Timec/Ferrovial and Defendant Valero continue to use the results of hair tests to determine whether to take adverse action against employees, and Defendant DISA continues to conduct hair testing and place these employees on inactive status in DCC based on false positive hair drug test results.

70.     Defendants' violations of 42 U.S.C. § 2000e-2(a)(1) caused Plaintiffs harm as set forth above.

71.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

72.     By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

## SECOND CLAIM
**Race Discrimination in Violation of Gov. Code § 12940, et seq.-Disparate Impact**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

73.     Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed

class, allege and incorporate by reference the allegations in the preceding paragraphs.

74.     It is unlawful under Government Code § 12940(a) for an employer to discriminate against an employee based on the employee's race.

75.     Pursuant to Government Code § 12926(w), "'Race' is inclusive of traits historically associated with race, including, but not limited to, hair texture and protective hairstyles.

76.     Discrimination may exist where an employment practice has a disproportionate adverse effect—i.e., disparate impact—based on race.

77.     As alleged above, Black people are more susceptible than are other races to false positive hair drug tests due to higher levels of melanin in their hair. Plaintiffs, who are Black, received false positive hair tests from Defendant DISA, which entered Plaintiffs as inactive on DCC, preventing them from obtaining jobs from participating employers, and which Defendant Timec/Ferrovial and Defendant Valero adopted to take adverse employment action against Plaintiffs, despite Plaintiffs putting Defendant Timec/Ferrovial on notice through informing it that the hair tests were false almost immediately after receiving the faulty results, obtaining negative urine and/or saliva drug test results, and putting Defendant Timec/Ferrovial and Defendant Valero on notice through their administrative charges of discrimination.

78.     As also alleged above, hair testing is not a business necessity for any of the Defendants for the reasons described above, yet, based on information and belief, Defendant DISA continues to conduct hair tests and place employees on inactive status on DCC based on false positive results, and Defendant Timec/Ferrovial and Defendant Valero continue to rely on the results of hair tests to take adverse employment action against employees.

79.     Defendants' violations of Government Code §§ 12940(a); 12926(w) caused Plaintiffs harm as set forth above.

80.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

81.     By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable

attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

82.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

### THIRD CLAIM
**Race Discrimination in Violation of 42 U.S.C. § 2000e, et seq.-Disparate Treatment;**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

83.     Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed class, allege and incorporate by reference the allegations in the preceding paragraphs.

84.     It is unlawful under 42 U.S.C. § 2000e-2(a)(1) "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."

85.     Defendant DISA uses hair drug testing and presents the results as valid despite its knowledge that such tests disproportionately result in false positive results for Black employees, including Plaintiffs, with melanin-rich hair and places Black employees such as Plaintiffs on inactive status on DCC following false positive hair drug test results, barring these Black employees from jobs with hundreds of participating employers, as described above.

86.     Defendant DISA and Defendant Timec/Ferrovial were on notice of Black employees' false positive hair tests at least as of January 2019, if not sooner, when Plaintiff Daniels informed them that his hair test was a false positive. Plaintiff Wilson provided further notice in February 2019 when he reported to Defendant DISA and Defendant Timec/Ferrovial that his hair test was a false positive. Defendant Valero has been on notice of Black employees' false positive hair tests at least as of August of 2019, if not sooner, when Plaintiff Wilson and Plaintiff Daniels filed their administrative charges against it and Defendant Timec/Ferrovial. Plaintiff Wilson's charge from August 2019 also included Defendant DISA, while Plaintiff Daniels filed his charge against Defendant DISA in October 2019. Thus, Plaintiffs' EEOC charges provided notice to all Defendants of Black employees' false positive hair tests.

87.     Despite notice that Plaintiffs' hair tests were false positives, Defendant DISA entered an inactive status for Plaintiffs on DCC, barring them from jobs with hundreds of participating employers, and Defendant Timec/Ferrovial and Defendant Valero took adverse employment action against Plaintiffs based on the false positive tests, thus ratifying Defendant DISA's discriminatory treatment of Plaintiffs.

88.     Defendants' violations of 42 U.S.C. § 2000e-2(a)(1) caused Plaintiffs harm as set forth above.

89.     As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

90.     By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

91.     Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## FOURTH CLAIM
### Race Discrimination in Violation of Gov. Code § 12940, et seq.-Disparate Treatment
### (Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)

92.     Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed class, allege and incorporate by reference the allegations in the preceding paragraphs.

93.     It is unlawful under Government Code § 12940(a) for an employer to discriminate against an employee based on the employee's race.

94.     Pursuant to Government Code § 12926(w), "'Race' is inclusive of traits historically associated with race, including, but not limited to, hair texture and protective hairstyles.

95.     As alleged above, Defendant DISA uses hair drug testing and presents the results as valid to DCC participating employers despite its knowledge that such tests disproportionately result in false positive results for Black employees, including Plaintiffs, with melanin-rich hair

and places Black employees such as Plaintiffs on inactive status on DCC following false positive hair drug test results, barring these Black employees from jobs with hundreds of participating employers, as described above.

96.    As also alleged above, Defendant Timec/Ferrovial and Defendant Valero ratified Defendant DISA's discriminatory conduct by taking adverse employment action against Plaintiffs and the putative class even after Plaintiffs put them on notice that the hair test results were false positives.

97.    Defendants' violations of Government Code §§ 12940(a); 12926(w) caused Plaintiffs harm as set forth above.

98.    As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

99.    By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

100.    Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

**FIFTH CLAIM**
**Race Discrimination in Violation of 42 U.S.C. § 1981**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

101.    Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed class, allege and incorporate by reference the allegations in the preceding paragraphs.

102.    Plaintiffs are Black and are thus in a protected category based on their race pursuant to 42 U.S.C. § 1981. At all relevant times herein, Plaintiffs were in a contractual relationship pursuant to 42 U.S.C. § 1981 with Defendant DISA, including as an indirect employer who interfered with Plaintiffs employment opportunities and through payment for Defendant DISA's hair drug retest as to Plaintiff Wilson, and through payment for Defendant DISA's substance abuse course as to Plaintiff Daniels, and with Defendant Timec/Ferrovial as a

direct employer, and with Defendant Valero as a joint employer. Additionally, Plaintiffs are intended beneficiaries of the contract between Defendant Valero and Defendant Timec/Ferrovial as the contract was intended, in part, to benefit Defendant Timec/Ferrovial employees by providing employment to them at Defendant Valero's site.

103. During Plaintiffs' employment, Defendant DISA, Defendant Timec/Ferrovial, and Defendant Valero violated Plaintiff's rights under 42 U.S.C. § 1981 by depriving Plaintiffs of their right to enjoy all benefits, privileges, terms, and conditions of Plaintiffs' employment contracts "as is enjoyed by white citizens."

104. Defendants' violations of Plaintiffs' rights under 42 U.S.C. § 1981 were intentional. Defendant DISA, Plaintiffs' indirect employer, conducts hair testing on Black people with melanin-rich hair despite its lack of efficacy and presents the results as valid to DCC participating employers. Defendant DISA uses false positive results to place Black employees on inactive status in DCC, barring them from job opportunities with hundreds of participating employers. Defendant DISA then forces Black employees with melanin-rich hair on inactive status due to a false positive hair test result to pay it for a retest or pay for its substance abuse course to regain active status in DCC. Defendant Timec/Ferrovial, Plaintiffs' direct employer, and Defendant Valero, Plaintiffs' joint employer, knowingly ratified Defendant DISA's discriminatory conduct by taking adverse employment action against Plaintiffs after Plaintiffs put them on notice that the hair test results were false positives, including through negative urine tests for both, and a negative saliva test for Plaintiff Daniels, Plaintiffs' claims that they do not use the drugs for which they tested positive, and as to Plaintiff Wilson, a negative result from a hair test conducted at ARCpoint Labs of Martinez. Given the factors alleged above, Defendants' adverse employment actions against Plaintiffs based on *false* positive hair drug tests and adverse employment actions taken in response would not have occurred but for Plaintiffs' race, Black.

105. Defendants' violations of 42 U.S.C. § 1981 caused Plaintiffs harm as set forth above.

106. As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

107.   By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

108.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

### SIXTH CLAIM

**Discrimination Based on Perceived Disability in Violation of 42 U.S.C. § 12112(a)**
**(Against All Defendants; On Behalf of Plaintiff Wilson and Plaintiff Daniels and the Class)**

109.   Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed class, allege and incorporate by reference the allegations in the preceding paragraphs.

110.   It is unlawful under 42 U.S.C. § 12112(a) for an employer to discriminate against an employee based on the employee's disabilities. Pursuant to 42 U.S.C. § 12102(1)(a); (c), "disability" can include "being regarded as having" a disability "that substantially limits one or more major life activities."

111.   Here, Defendant DISA erroneously regarded Plaintiff Wilson as having a cocaine addiction and Plaintiff Daniels as having a methamphetamine addiction. It came to this conclusion given the supposed ability advertised on its own website of hair drug testing to "detect *repeat* drug use up to a 90-day window" (emphasis added). Defendant DISA also erroneously concluded that Plaintiffs were current drug users by the false positive hair tests. As a result, Defendant DISA marked Plaintiffs as inactive on DCC and required Plaintiffs to take a substance abuse course from Defendant DISA to regain active status in DCC because it erroneously regarded them as having a drug addiction.

112.   Defendant Timec/Ferrovial and Defendant Valero likewise erroneously regarded Plaintiff Wilson as having a cocaine addiction and Plaintiff Daniels as having a methamphetamine addiction, as it came to this conclusion by adopting and relying upon Defendant DISA's false positive results as valid.

113.   Based on their erroneous belief that Plaintiff Wilson had cocaine addiction and

Plaintiff Daniels had a methamphetamine addiction, Defendants took adverse employment action against Plaintiffs, as alleged above.

114.   Defendants' violations of 42 U.S.C. § 12112(a) caused Plaintiffs harm as set forth above.

115.   As a result of Defendants' unlawful acts, Plaintiffs are entitled to damages as set forth herein.

116.   By reason of Defendants' conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

117.   Defendants engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendants in an amount according to proof.

## SEVENTH CLAIM
### Negligence
**(Against Defendant DISA; On Behalf of Plaintiffs Wilson and Daniels and the Class)**

118.   Plaintiff Wilson and Plaintiff Daniels, on behalf of themselves and the proposed class, allege and incorporate by reference the allegations in the preceding paragraphs.

119.   Plaintiffs' negligence claim is subject to equitable tolling, as it arises out of the same factual allegations as the claims they administratively exhausted, thus putting Defendant DISA on timely notice of the claim and resulting in no prejudice to DISA.

120.   Defendant DISA has a duty to exercise due care in collecting, storing, and maintaining hair samples from employees undergoing hair drug tests. The risk of contamination or switching samples and conveying inaccurate results is reasonably foreseeable if due care is not exercised. It is further foreseeable that a false positive result due to negligent collection, storage, and maintenance of hair samples would cause harm to employees who undergo hair drug testing at Defendant DISA, as DISA places these employees on inactive status on DCC, barring these employees from jobs with hundreds of participating employers, causing them not only economic harm but mental anguish and emotional distress.

121.    Defendant DISA breached its duty by failing to properly collect, store, and maintain hair samples from Black employees as alleged above, risking external contamination, a heightened risk for melanin-rich hair, which is more commonly found in Black people, or switching samples and conveying results to the wrong employee.

122.    During its collection of Plaintiff Wilson's hair, which came back falsely positive for cocaine, the scissors Defendant DISA's collector used to cut the hair sample from Plaintiff Wilson's head were not individually wrapped, and the collector placed the hair on a table, which Plaintiff Wilson did not see the collector disinfect, before finally placing the hair in a sheet of tin foil and then into a bag. Defendant DISA also wrote of Plaintiff Wilson's supposed sample, "Extremely curly or very unaligned hair submitted. This type of hair cannot be properly aligned and/or cut which may affect the time frame represented by the analysis." Plaintiff Wilson suspects the sample may have come back falsely positive based on Defendant DISA's negligent procedures in collecting Black people's hair samples.

123.    During its collection of Plaintiff Daniels' hair, which came back falsely positive for methamphetamines, Defendant DISA's collector decided to collect the sample from Plaintiff Daniels' underarm as he did not have much hair on his head or arms. Because Plaintiff Daniels was wearing deodorant, he told Defendant DISA's collector that he should wash his underarm before the collection as he had done during a hair drug test he underwent, and passed, with a previous employer. Defendant DISA's collector ignored him and clipped a sample of his hair, claiming it would be washed later. The hair landed on a piece of paper which Defendant DISA's collector then placed in a plastic bag for testing.

124.    Defendant DISA's negligence risks external contamination, which is already a heightened risk for Black individuals, as hair tests can detect lower levels of drugs in melanin-rich hair, such as that of Black people, but are not able to distinguish whether the positive result came from ingestion or external contamination. Likewise, Defendant DISA's negligence poses a risk of switching samples and conveying results to the wrong person.

125.    Defendant DISA's breach of its duty to properly collect, store, and maintain hair samples from Black employees directly and proximately caused Plaintiffs to lose their

assignments at Defendant Valero and be placed on inactive status on DCC, adversely impacting their employment at Defendant Timec/Ferrovial, and their employment opportunities at hundreds of other DCC participating employers.

126.    As a direct result of Defendant DISA's actions, Plaintiffs have suffered damages, including but not limited to economic damages and emotional distress.

127.    By reason of Defendant DISA's conduct as set forth herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

128.    Defendant DISA engaged in the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs. Plaintiffs are thus entitled to recover punitive damages from Defendant DISA in an amount according to proof.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed class, request judgment and the following specific relief against Defendants:

A.    Certification of the Class as a class action under Federal Rule of Civil Procedure 23, and designation of Plaintiff Marvonte Wilson and Plaintiff Domonique Daniels as representatives of the Class and their counsel of record as Class Counsel;

B.    All damages which the Plaintiffs and the Class have sustained because of Defendants' conduct, including general damages for pain, suffering, emotional distress, and special damages for lost compensation, including back pay, front pay and job benefits that they would have received but for the discriminatory practices of Defendants;

C.    For an award of exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and to deter future conduct;

D.    A preliminary and permanent injunction against Defendants and its directors, officers, owners, agents, successors, employees, and representatives, and any and all persons acting in concert with them, from relying on hair tests to take adverse employment action against employees.

E.      Declaratory relief against Defendants finding their employment policies, practices and/or procedures challenged herein are illegal and in violation of the rights of Plaintiff and members of the Class under 42 U.S.C. § 2000 et seq.; California Government Code §§ 12940 et seq.; 12926(w); 42 U.S.C. § 1981; and 42 U.S.C. § 12112(a).

F.      For an award of reasonable attorneys' fees, expert witness fees, litigation expenses and costs incurred in the filing and prosecution of this action, pursuant to California Government Code § 12965(b) and any other applicable statute;

G.      For pre-judgment and post-judgment interest as provided by law; and

H.      For such other and further relief, in law or in equity, as this Court may deem proper and just.

## IX. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Wilson and Plaintiff Daniels individually and on behalf of others similarly situated demand a trial by jury.


Dated: February 24, 2023                   CALIFORNIA CIVIL RIGHTS LAW GROUP
                                           LAW OFFICES OF VERNON C. GOINS


                                               /s/ Julianne Stanford
                                           By:  Julianne K. Stanford

                                           Attorneys for MARVONTE WILSON and
                                           DOMINIQUE DANIELS and the Putative Class