1

**HUNTON ANDREWS KURTH LLP**
M. Brett Burns (State Bar No. 256965)
mbrettburns@HuntonAK.com

2

Holly Williamson (State Bar No. TX-21620100)
hwilliamson@HuntonAK.com

3

Karen Evans (State Bar No. 197046)
kevans@HuntonAK.com

4

50 California Street, Suite 1700
San Francisco, California 94111

5

Telephone: 415 • 975 • 3700
Facsimile: 415 • 975 • 3701

6

7

8

Attorneys for Defendant
DISA GLOBAL SOLUTIONS

9

10

UNITED STATES DISTRICT COURT

11

EASTERN DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13 MARVONTE WILSON and DOMONIQUE DANIELS, individually and on behalf of all others similarly situated,, | Case No.:  2:23-cv-00172-WBS-KJN |
| 14 | **DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, ALTERNATIVE MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292, AND SUPPORTING MEMORANDUM** |
| 15            Plaintiff, | |
| 16      v. | |
| 17 | |
| 18 TIMEC SERVICES COMPANY, INC.; FERROVIAL SERVICES INFRASTRUCTURE, INC.; VALERO REFINING COMPANY - CALIFORNIA; DISA GLOBAL SOLUTIONS; and DOES 1 THROUGH 50, INCLUSIVE,, | |
| 19 | Complaint Filed:      October 31, 2022 |
| 20 | Removal:                 January 27, 2023 |
| 21            Defendant. | FAC Filed:               February 24, 2023 |
| 22 | Date:  September 5, 2023 |
| 23 | Time:  1:30 p.m. |
| | Courtroom: 5, 14th Floor |

24

25

26

27

28

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 5, 2023 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable William B. Shubb, United States District Court Judge, located in Courtroom 5, 14th Floor in the Robert T. Matsui United States Courthouse, 501 I Street #4200, Sacramento, California 95814, Defendant DISA Global Solutions, Inc. ("DISA") will and hereby does move for an order granting judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the ground that Plaintiffs Marvonte Wilson's and Domonique Daniels' ("Plaintiffs") claims for racially discriminatory treatment and/or racially discriminatory impact under Title VII and FEHA fail as a matter of law.

Plaintiffs' race discrimination claims are premised on the alleged inaccuracy of hair drug tests on people with "melanin-rich" hair. (FAC ¶¶ 1, 104.) Plaintiffs assert people with "melanin-rich" hair (*e.g.*, black or brown hair) have an increased risk of "false positive" results when hair drug tests are conducted. (FAC ¶¶ 3, 4, 16, 121.) Plaintiffs then assert that "melanin-rich" black or brown hair is common in Black people. (FAC ¶¶ 3, 16, 121.) What Plaintiffs fail to plead, however, are *plausible facts* establishing that they – let alone any other Black employees with black or brown hair to whom hair drug tests were administered – were subjected to race discrimination or that the impact of the hair drug tests they were given resulted in Black employees being disproportionately harmed as compared to non-Black employees with black or brown hair who took hair drug tests.

This Court already found that "dark hair is a trait seen across people of all races, including White people," thus, "hair color alone is insufficient [to act as a proxy for race] because it is shared by many not of [plaintiffs'] race or belonging to any racial minority." May 12, 2023 Order at 15. This Court further found "Plaintiffs do not allege that Black employees with dark hair were treated differently than other [non-Black] employees with dark hair," and therefore, "assuming the truth of plaintiffs' allegations, it seems likely that White employees with dark hair were also subject to an increased rate of false positive drug test results." *Id.* at 16. Given these findings, the Court dismissed Plaintiffs' race discrimination claims under 42 U.S.C §1981.

The combination of (1) Plaintiffs' failure to plead sufficient facts plausibly to state claims for

1  racially disparate treatment or impact under Title VII and FEHA, and (2) the Court's prior findings

2  compel the dismissal with prejudice of Plaintiffs' remaining race discrimination claims. As to their

3  racially discriminatory treatment claim specifically, Plaintiffs make no allegation that DISA intended

4  to discriminate against them on the basis of race by administering hair drug tests, and, as the Court

5  found, "Plaintiffs do not allege that Black employees with dark hair were treated differently than

6  other [non-Black] employees with dark hair." As to their racially discriminatory impact claim

7  specifically, while Plaintiffs allude generally to "research" that allegedly suggests hair drug tests for

8  people with melanin-rich hair may trigger false-positive results, they do not cite to or describe the

9  "research," and they provide no other facts nor statistics to support their conclusory assertion that

10 Black employees are disproportionately harmed.

11      In sum, because Plaintiffs do not allege sufficient facts to plausibly state claims for racially

12 disparate treatment or impact, relying instead only on conclusory contentions concerning "melanin-

13 rich" hair that the Court has already found to be "a trait seen across people of all races, including

14 White people," as well as a trait "shared by many not of [Plaintiffs'] race or belonging to any racial

15 minority," their racial discrimination claims should be dismissed as a matter of law.

16      The motion for certification of interlocutory appeal, presented in the alternative, is based on

17 this Court's holding in its May 12, 2023 Order that Plaintiffs sufficiently pleaded that DISA was an

18 "indirect employer" for purposes of claims under Title VII and FEHA, a predicate finding upon

19 which Plaintiffs' Title VII and FEHA claims now rest. Should the Title VII and FEHA claims not be

20 dismissed, DISA seeks to certify this issue for interlocutory appeal because (1) the issue presented

21 involves a "controlling question of law;" (2) there is "substantial ground for difference of opinion"

22 as to that question; and (3) an immediate appeal "may materially advance the ultimate termination of

23 the litigation with respect to DISA.

24      ///

25      ///

26

27

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE
PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

1         This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points

2    and Authorities, and all the pleadings and papers on file herein.

3

4    DATED:  July 14, 2023                              HUNTON ANDREWS KURTH LLP

5                                              By:   */s/ M. Brett Burns*
                                        M. Brett Burns

6                                            Holly Williamson* (*pro hac vice*)

7                                            Karen Jennings Evans
                                        Attorneys for Defendant

8                                            DISA GLOBAL SOLUTIONS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE
PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................1

II.  RELEVANT BACKGROUND ...................................................................................2

III. ARGUMENT AND AUTHORITIES .........................................................................3

    A.   Standard of Review For Motion for Judgment on the Pleadings. ....................3

    B.   Plaintiffs Fail To Plead A Plausible Claim for Racially Disparate Treatment. ...........4

    C.   Plaintiffs Fail to Plead A Plausible Claim for Racially Disparate Impact. ...................7

    D.   In The Alternative, DISA Requests The Court To Certify For Appeal Its Recent Finding That DISA Indirectly Employed Plaintiffs. ...........................9

        1.   Whether DISA Is An Indirect Employer Is A Controlling Question of Law. ..................................................................................10

        2.   There Are Substantial Grounds for Difference Of Opinion As to Whether Non-Employers Could Be Held Liable for Title VII and FEHA Claims. ...........................................................................10

        3.   Interlocutory Appeal Will Materially Advance Ultimate Termination Of This Litigation. ...........................................................12

IV.  CONCLUSION .........................................................................................................13

**Hunton Andrews Kurth LLP**
50 California Street, Suite 1700
San Francisco, California 94111

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alozie v. Arizona Board of Regents*
No. CV-16-03944-PHX-ROS, 2017 WL 11537899 (D. Ariz. Sept. 21, 2017) ............................15

*Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*
770 F.2d 1401 (9th Cir.1985) ....................................................................................................14

*Ambat v. City and County of San Francisco*
757 F.3d 1017 (9th Cir. 2014) ...................................................................................................12

*Anderson v. Pac. Mar. Ass'n*
336 F.3d 924 (9th Cir. 2003) ......................................................................................................19

*APCC Serv., Inc. v. ESH AT&T Corp.*
297 F. Supp. 2d 101 (D.D.C. 2003) ............................................................................................20

*Arthur Young & Co. v. U.S. Dist. Ct.*
549 F.2d 686 (9th Cir. 1977) ......................................................................................................20

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................................................................................................................12

*Ass'n of Irritated Residents v. Fred Schakel Dairy*
634 F. Supp. 2d 1081 (E.D. Cal. 2008).......................................................................................20

*Ass'n of Mexican-Am. Educators v. State of California*
231 F.3d 572 (9th Cir. 2000) ......................................................................................................19

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)....................................................................................................................12

*Bloom v. Bexar County*
Tex., 130 F.3d 722,724- 725 (5th Cir. 1997)...............................................................................20

*Couch v. Telescope, Inc.*
611 F.3d 629 (9th Cir. 2010) ......................................................................................................18

*Darensburg v. Metropolitan Transp. Com'n*
636 F.3d 511 (9th Cir. 2011) ......................................................................................................17

*Filho v. Gansen*
No. 4:18-cv-00337-KAW, 2018 WL 5291986 (N.D. Cal. Oct. 19, 2018) ...................................15

*Fleming v. Pickard*
581 F.3d 922 (9th Cir. 2009) ......................................................................................................11

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

ii

*Gomez v. Quicken Loans, Inc.*
  629 Fed. Appx. 799 (9th Cir. 2015)..................................................................................13

*Guz v. Bechtel National, Inc.*
  24 Cal.4th 317 (2000) ......................................................................................................12

*Hazen Paper Co. v. Biggins*
  507 U.S. 604 (1993) .........................................................................................................13

*In re Cement Antitrust Litig.*
  673 F.2d 1020 (9th Cir. 1982) ..............................................................................17, 18, 20

*In re The Duplan Corp.*
  591 F.2d 139 (2d Cir. 1978) .............................................................................................18

*In re Syntex Corp. Sec. Litig.*
  95 F.3d 922 (9th Cir. 1996) ..............................................................................................12

*International Brotherhood of Teamsters v. United States*
  431 U.S. 324 (1977) .........................................................................................................14

*Kuehner v. Dickinson & Co.*
  84 F.3d 316 (9th Cir. 1996) ........................................................................................18, 20

*Lazy Y Ranch LTD v. Behrens*
  546 F.3d 580 (9th Cir. 2008) ...........................................................................................11

*Liu v. Uber Technologies*
  551 F.Supp.3d 988 (N.D. Cal. 2021) ..........................................................................15, 16

*Liu v. Uber Technologies, Inc.*
  No. 20-CV-07499-VC, 2021 WL 800903 (N.D. Cal. Mar. 3, 2021)...........................16

*Liu v. Uber Technologies, Inc.*
  No. 20-CV-07499-VC, 2022 WL 1613285 (N.D. Cal. May 23, 2022) ........................17

*Panache Broad. of Penn., Inc. v. Richardson Elecs., Ltd.*
  No. 90 C 6400, 1999 U.S. Dist. LEXIS 17529 (N.D. Ill. Oct. 29, 1999) ....................18

*Reese v. BP Exploration (Alaska) Inc.*
  643 F.3d 681 (9th Cir. 2011) ...........................................................................................19

*Ricci v. DeStefano*
  557 U.S. 557 (2009).............................................................................................12, 13, 15

*Satterfield v. Tennessee*
  295 F.3d 611 (6th Cir. 2002) ...........................................................................................20

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) ...........................................................................................12

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

iii

*Sullivan v. Aramark Uniform & Career Apparel*
   No. C11-02973 HRL, 2011 WL 5827220 (N.D. Cal. Nov. 18, 2011)............................................12

*U.S. v. Woodbury*
   263 F.2d 784 (9th Cir. 1959) ....................................................................................................20

*Vernon v. State of California*
   116 Cal.App.4th 114 (2004) .......................................................................................................19

*Watson v. Fort Worth Bank & Trust*
   487 U.S. 977 (1988) ...................................................................................................................15

*Wells Fargo Bank v. Bourns, Inc.*
   860 F. Supp. 709 (N.D. Cal. 1994) ...........................................................................................18

*Wood v. City of San Diego*
   678 F.3d 1075 (9th Cir. 2012) ...................................................................................................14

*Wynn v. National Broadcasting Co., Inc.*
   234 F.Supp.2d 1067 (C.D. Cal 2002) .......................................................................................19

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) ........................................................................................................17, 20, 21

42 U.S.C § 1981 ............................................................................................................................2, 9

Federal Rule of Civil Procedure Rule 12(b)(6)............................................................................11

Federal Rule of Civil Procedure Rule 12(c) ...............................................................................11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hunton Andrews Kurth LLP**
**50 California Street, Suite 1700**
**San Francisco, California 94111**

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE
PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiffs' race discrimination claims are premised on the alleged inaccuracy of hair drug tests on people with "melanin-rich" hair.[1] (FAC ¶¶ 1, 104.) Plaintiffs assert people with "melanin-rich" hair (*e.g.*, black or brown hair) have an increased risk of "false positive" results when hair drug tests are conducted. (FAC ¶¶ 3, 4, 16, 121.) Plaintiffs then assert that "melanin-rich" black or brown hair is common in Black people. (FAC ¶¶ 3, 16, 121.) What Plaintiffs fail to plead, however, are plausible facts establishing that they – let alone any other Black employees with black or brown hair to whom hair drug tests were administered – were subjected to race discrimination or that the impact of the hair drug tests they were given resulted in Black employees being disproportionately harmed as compared to non-Black employees with black or brown hair who took hair drug tests.

This Court already found that "dark hair is a trait seen across people of all races, including White people," thus, "hair color alone is insufficient [to act as a proxy for race] because it is shared by many not of [plaintiffs'] race or belonging to any racial minority." May 12, 2023 Order (Dkt.14) at 15. This Court further found "Plaintiffs do not allege that Black employees with dark hair were treated differently than other [non-Black] employees with dark hair," and therefore, "assuming the truth of plaintiffs' allegations, it seems likely that White employees with dark hair were also subject to an increased rate of false positive drug test results." *Id.* at 16. Given these findings, the Court dismissed Plaintiffs' race discrimination claims under 42 U.S.C §1981.

The combination of (1) Plaintiffs' failure to plead sufficient facts plausibly to state claims for racially disparate treatment or impact under Title VII and FEHA, and (2) the Court's prior findings

---

[1] The phrase "melanin-rich hair" is ambiguous. According to readily-available sources, the presence of "eumelanin" yields black and brown hair, and the presence of "pheomelanin" yields red hair. *See* Request for Judicial Notice in Support of Motion for Judgment on the Pleadings ("RJN") Ex. A, https://my.clevelandclinic.org/health/body/22615-melanin. Moreover, melanin undergoes significant pigmentation changes throughout a person's life (which is why some children with hair that is naturally blonde in color may change to naturally brown as they get older), and melanin production slows as a person ages (which is why most adults with brown or black hair grow gray or white hair as they age). *See* RJN Ex. 2, https://www.healthline.com/health/melanin-in-hair#its-role. Thus, individuals (regardless of race) lose pigmentation as part of the aging process. The vague, fact-deficient allegations driving Plaintiffs' "melanin-rich hair" legal theory do not account these issues, which do not concern race, which cast further doubt on Plaintiffs' race discrimination claims.

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

compel the dismissal with prejudice of Plaintiffs' remaining race discrimination claims. As to their racially discriminatory treatment claim specifically, Plaintiffs make no allegation that DISA intended to discriminate against them on the basis of race by administering hair drug tests, and, as the Court found, found "Plaintiffs do not allege that Black employees with dark hair were treated differently than other [non-Black] employees with dark hair." As to their racially discriminatory impact claim specifically, while Plaintiffs allude generally to "research" that allegedly suggests hair drug tests for people with melanin-rich hair may trigger false-positive results, they do not cite to or describe the "research," and they provide no other facts nor statistics to support their conclusory assertion that Black employees are disproportionately harmed.

In sum, because Plaintiffs do not allege sufficient facts to plausibly state claims for racially disparate treatment or impact, relying instead only on conclusory contentions concerning "melanin-rich" hair that the Court has already found to be "a trait seen across people of all races, including White people," as well as a trait "shared by many not of [Plaintiffs'] race or belonging to any racial minority," their racial discrimination claims should be dismissed as a matter of law.

## II.   RELEVANT BACKGROUND

On February 24, 2023, Plaintiffs filed their Amended Class Action Complaint. They assert claims based on two theories *unrelated* to race: (1) hair drug tests on persons with "melanin-rich" black or brown hair have an increased risk of "false positive" results (FAC ¶¶ 1, 3, 16, 104, 121), and (2) DISA negligently tested hair samples that were contaminated and / or belonged to other individuals (FAC ¶¶ 21, 24, 37). For example, Plaintiffs allege:

- "[F]alse positive hair tests disproportionately affect people with melanin-rich hair." FAC ¶ 1.

- "[Plaintiffs] received false positive hair drug tests, an increased risk for people with melanin-rich hair, which is common in Black people." FAC ¶ 3.

- "[F]alse positives occur when drugs bind to the melanin in melanin-rich hair in such a way that drug test collectors cannot distinguish whether the drug's presence is due to ingestion or external contamination." FAC ¶ 63.

- "Plaintiff Wilson noticed the procedures Defendant DISA used to administer his hair drug test were unsanitary and could lead to external contamination: the scissors Defendant DISA's collector used to cut the hair sample from Plaintiff Wilson's head were not individually wrapped, and the collector placed the hair directly on a table without disinfecting the table

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

2

1  before finally placing the hair in a sheet of tin foil and then into a bag." FAC ¶ 21.

2
3  - It is possible "that the hair sample used for his test had been contaminated or belonged to another individual." FAC ¶ 24.

4      Plaintiffs do not (and cannot) allege that only Black people have "melanin-rich" black or

5  brown hair, that all Black people have "melanin-rich" black or brown hair, or that hair drug tests

6  were only administered to Black employees. Plaintiffs do not (and cannot) allege that only Black

7  individuals were administered hair drug tests using samples that were allegedly either contaminated

8  and / or belonged to other individuals..

9      On May 12, 2023, the Court granted Defendants' Motion to Dismiss Plaintiffs' claim under

10  Section 1981and the ADA, stating:

11      Plaintiffs' § 1981 claim is premised on the inaccuracy of hair drug tests on "melanin-rich hair." (*See* Opp'n at 25; FAC ¶¶ 1, 104.) While black people tend to have hair
12      with more melanin, dark hair is a trait seen across people of all races, including white people. Although physical traits can act as a proxy for race, hair color alone is
13      insufficient because it is "shared by many not of [plaintiffs'] race or belonging to any racial minority." Further, plaintiffs do not allege that black employees with dark hair
14      were treated differently than other employees with dark hair. And assuming the truth of plaintiffs' allegations, it seems likely that white employees with dark hair were
15      also subject to an increased rate of false positive drug test results. The court therefore concludes that plaintiffs have not adequately pled that race was a but-for cause of the
16      false positive test results or any resulting actions, including DISA listing them as inactive on DCC, Timec/Ferrovial suspending their job site placements, or Valero
17      terminating their employment.

18  May 12, 2023 Order at 15-17 (citations omitted).

19  **III.    ARGUMENT AND AUTHORITIES**

20      **A.    Standard of Review For Motion for Judgment on the Pleadings.**

21      Under Federal Rule of Civil Procedure Rule 12(c), "[a]fter the pleadings are closed – but

22  early enough not to delay trial – a party may move for judgment on the pleadings." A motion for

23  judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing

24  party's pleadings. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

25      A motion for judgment on the pleadings is treated the same as a motion to dismiss under

26  Rule 12(b)(6). *Id.* The allegations in the complaint are "accepted as true and construed in the light

27  most favorable to the plaintiff*." Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

3

1  But the court is not "required to accept as true allegations that are merely conclusory, unwarranted

2  deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979,

3  988 (9th Cir. 2001); *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) ("[C]onclusory

4  allegations are insufficient to defeat a motion for judgment on the pleadings.").

5        The key inquiry is for the Court to determine whether the plaintiff has alleged "enough facts

6  to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);

7  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

8  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

9  defendant is liable for the misconduct alleged." *Id*. "[C]onclusory statements do not suffice." *Id*.

10       Courts follow a two-step approach when applying the plausibility standard. First, all

11 conclusory statements and allegations – including legal conclusions – must be pared from the

12 complaint. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Second, the court reviews the

13 complaint's remaining contents to determine whether they "plausibly" entitle the plaintiff to relief.

14 For a claim to be "plausible," it is insufficient that the facts alleged are "'consistent with' a

15 defendant's liability," or that a violation is "conceivable." *Iqbal*, 556 U.S. at 678-80. Further, facts

16 that raise a "mere possibility of misconduct" are insufficient – they must actually "show," in a

17 plausible way, that the plaintiff is entitled to relief. *Id*. at 679.[2]

18   **B.    Plaintiffs Fail To Plead A Plausible Claim for Racially Disparate Treatment.**

19       Disparate treatment occurs "where an employer has treated a particular person less favorably

20 than others because of a protected trait." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).[3] A disparate-

21 treatment plaintiff must establish that the defendant "explicitly classified or distinguished among

22

23 [2] As noted by multiple courts, "[a]fter *Twombly* and *Iqbal*, "an employment discrimination plaintiff
   must get closer to a *prima facie* case than was necessary a few years ago" to survive a motion to
24 dismiss. *See, e.g.*, *Sullivan v. Aramark Uniform & Career Apparel*, No. C11-02973 HRL, 2011 WL
   5827220, at *4 (N.D. Cal. Nov. 18, 2011), *quoting Sablan v. A.G. Won Pat Internt'l Airport,* Civil
25 No. 10-00013, 2010 WL 5148202, at *4 (D. Guam Dec. 9, 2010).

26 [3] California courts look to federal precedent when assessing the plausibility of FEHA claims. *Guz v.
   Bechtel National, Inc.*, 24 Cal.4th 317, 354 (2000). Plaintiffs' FEHA claims in this case will thus rise
27 or fall with their corresponding Title VII claims. *See Ambat v. City and County of San Francisco*,
   757 F.3d 1017, 1023, n. 2 (9th Cir. 2014) (*citing Guz v. Bechtel National Inc.*, 24 Cal.4th 317, 100
28 Cal.Rptr.2d 352, 8 P.3d 1089 (2000).

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

4

persons by reference to criteria ... which have been determined improper bases for differentiation" (*Gomez v. Quicken Loans, Inc.*, 629 Fed. Appx. 799, 801-802 (9th Cir. 2015)), such as race, and had a discriminatory motive for taking a job-related action." *Ricci*, 557 U.S. at 577. A discriminatory motive may be established by the employer's informal decision making or "a formal, facially discriminatory policy," but "liability depends on whether the protected trait ... actually motivated the employer's decision." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

Plaintiff's racially disparate treatment claim does not meet these criteria. Their claim is based on the alleged inaccuracy of administering hair drug tests on people with "melanin-rich" hair. But even setting aside the common-sense observations that Black people may have natural hair colors that are not "melanin-rich" (*e.g.*, red, blonde, or light-brown) or that was once "melanin-rich" but are now gray or white due to the loss of melanin due to aging, the fundamental problem with Plaintiffs' legal theory is that individuals who are not Black have black or brown hair too. This Court already has recognized that "dark hair is a trait seen across people of all races," and thus, "hair color alone is insufficient [to act as a proxy for race] because it is "shared by many not of [plaintiffs'] race or belonging to any racial minority." May 12, 2023 Order at 15. This Court further recognized that "Plaintiffs do not allege that Black employees with dark hair were treated differently than other [non-Black] employees with dark hair," and accordingly, "assuming the truth of plaintiffs' allegations, it seems likely that White employees with dark hair were also subject to an increased rate of false positive drug test results." *Id.* at 16.

In light of Plaintiffs' pleading deficiencies, this same reasoning compels the dismissal with prejudice of Plaintiffs' racially disparate treatment) claims under Title VII and FEHA. Plaintiffs do not assert a *plausible* claim that administering hair drug tests are racially discriminatory against Black employees, rather than due to an objective, facially-neutral policy or practice. Plaintiffs make no allegation that DISA intends to discriminate against Black employees by administering hair drug tests. Moreover, Plaintiffs do not allege that DISA made them pay for a retest or take a substance abuse class because they were Black, but rather because they failed the same hair drug test all employees were administered. Where a plaintiff is challenging a facially neutral policy, there must

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

be a specific allegation of discriminatory intent. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 (1977) (proof of discriminatory motive is critical to establish a prima facie case of discrimination in a treatment case). Here, no racially discriminatory allegation exists.

Moreover, there is no competent, non-conclusory allegation that DISA was aware of any adverse consequences to Plaintiffs because of race when their hair drug tests were administered. Plaintiffs repeatedly assert that DISA "continues to use [drug] hair testing" despite "notice" that hair drug testing adversely impacts people with "melanin-rich" hair. But the "notice" to which Plaintiffs point arises from allegations that, *after hair drug tests were administered to Plaintiffs and positive test results were reported to them*, they challenged the positive test results and filed EEOC charges. FAC ¶¶ 30, 51, 55, 77, 86. Thus, contrary to Plaintiffs' conclusory (and frankly illogical) assertions, these allegations do not provide "notice" sufficient to plausibly establish racially discriminatory motive. Rather, at most, these assertions show that Plaintiffs informed DISA that they disagreed with the results of the hair drug test *after-the-fact*. This is a far cry from alleging that DISA somehow *knew* that administering hair drug tests to Plaintiffs would result in racially disparate treatment, as Plaintiffs contend. In any event, even if Plaintiff could connect "melanin-rich" hair to a protected group, which it has not done, it is well-established that "[i]t is insufficient for a plaintiff alleging discrimination under a disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group." *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir.1985); *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).[4]

---

[4] The *Wood* decision is instructive, as the court found that a plaintiff who challenged a "surviving spouse" pension benefits policy by alleging that it was adopted "with knowledge of discriminatory effects against single women" failed to competently allege discriminatory treatment, as she did not claim that the defendant adopted the policy *because* it would benefit men more often than women. *See Wood*, 678 F.3d at 1082. Similarly, in the present case, while Plaintiffs allege that DISA conducts hair drug tests "despite its knowledge that such tests disproportionately result in false positive results for employees with melanin-rich hair" (FAC ¶¶ 85, 95), Plaintiffs do not (and cannot) allege that DISA conducts hair drug tests *because* it would create false positives for Black employees.

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

**C.     Plaintiffs Fail to Plead A Plausible Claim for Racially Disparate Impact.**

To state a claim for disparate impact discrimination under Title VII, a plaintiff must plausibly allege (1) a significant disparity with respect to employment for the protected group, (2) the existence of a specific employment practice or set of practices, and (3) a causal relationship between the identified practice and the disparity. *Liu v. Uber Technologies*, 551 F.Supp.3d 988, 990 (N.D. Cal. 2021) (*citing Freyd v. University of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021); *accord, Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988).

To plausibly allege these elements, Plaintiffs must allege *facts* showing a challenged employment practice has a disparate impact – a "threshold showing of a significant statistical disparity" on a protected group (*e.g.*, a disparity disproportionately affecting Black employees as compared to non-Black employees). *See Watson*, 487 U.S. at 994 ("the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs because of their membership in a protected group"); *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009); *Filho v. Gansen*, No. 4:18-cv-00337-KAW, 2018 WL 5291986, at *4 (N.D. Cal. Oct. 19, 2018) ("On balance, the Court finds that Plaintiff has not sufficiently plead disparate impact primarily because…Plaintiff has not provided any statistical data that shows a disproportionate impact on persons of a particular type…produced by Defendant's facially neutral acts or practices."); *Alozie v. Arizona Board of Regents*, No. CV-16-03944-PHX-ROS, 2017 WL 11537899, at *7-8 (D. Ariz. Sept. 21, 2017) (plaintiff's failure to allege the number of relevant African-Americans allegedly impacted made it impossible to determine if a statistically significant disparity supporting a disparate impact claim could be established).

In the present case, Plaintiffs fail to plead any statistics, calculations, scientific study, or basic facts that plausibly show any disparity against Black employees whatsoever. The only allegations they make in support of their conclusory racially discriminatory impact theory are (1) they received positive hair drug test results with which they disagreed, (2) some unidentified "research" allegedly "shows" that conducting hair drug tests on "melanin-rich" black or brown hair presents an increased

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

risk of "false positive" results, and (3) "melanin-rich" black or brown hair allegedly is common in Black people. These vague, fact-deficient allegations simply do not meet the plausibility threshold.

First, allegations that "merely describe a plaintiff's own experiences" – in this case, that Plaintiffs received hair drug test results with which they disagreed – are insufficient. *See Liu*, 551 F.Supp.3d at 990 (stating "[plaintiff] must make a more sophisticated effort at the front end to develop a plausible factual basis in support of his assertion that terminations at [defendant] occur on a racially disparate basis. He has not yet done this legwork (or if he has, he has not described it in the complaint). Ultimately, all that [plaintiff] has alleged so far is that he himself was terminated, and the Court cannot draw an inference of disparity from a single data point.").

Second, allegations that do not identify a significant disparity with respect to a protected group (*e.g.*, all Black employees) are insufficient. In the present case, Plaintiffs allege they were subjected to a heightened risk of false-positive hair drug test results because they have "melanin-rich" black or brown hair. But "employees with dark hair" are not a protected group. And Plaintiffs do not allege that non-Black employees experienced fewer false-positive hair drug test results than Black employees, nor could they, since their legal theory is predicated on the race-neutral criterion of hair color, as this Court has already found. *See* May 12, 2023 Order at 15 ("dark hair is a trait seen across people of all races, including White people," thus "hair color alone is insufficient [to act as a proxy for race] because it is "shared by many not of [plaintiffs'] race or belonging to any racial minority."

Third, Plaintiffs fail to allege any statistics, calculations, scientific study, or non-conclusory facts to plausibly assert that Black employees experience a statistically-significant higher percentage of false-positive hair drug test results as compared to non-Black employees. They do not even try to do so. Their allegations focus on "melanin-rich" hair, not race, as illustrated by the unsupported statement "research has shown" that hair drug tests disproportionately result in false positives for people with melanin-rich hair, a conclusory allegation that should be disregarded. *See Liu v. Uber Technologies, Inc.*, No. 20-CV-07499-VC, 2021 WL 800903, at *1 (N.D. Cal. Mar. 3, 2021) (finding pleadings asserting a racially disparate impact claim to be insufficient, noting that "while

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

alluding generally to 'social science research,' the complaint does not actually cite to or describe any research findings or other facts supporting the assertion that drivers of color are disproportionately harmed"). Moreover, even assuming for purposes of argument that this lone "research has shown" allegation was considered by the Court, it is immaterial. This is a race discrimination case. The issue is not whether research shows that "melanin rich" hair is susceptible to false-positive hair drug tests, but whether Black employees are susceptible to false positive hair drug tests to a statistically-significant degree as compared to non-Black employees. It is fundamental that "an appropriate statistical measure must ... take into account the correct population base and its racial makeup." *Darensburg v. Metropolitan Transp. Com'n,* 636 F.3d 511, 520 (9th Cir. 2011); accord *Liu v. Uber Technologies, Inc.,* No. 20-CV-07499-VC, 2022 WL 1613285, at *2 (N.D. Cal. May 23, 2022) (granting motion to dismiss, noting "a survey must provide at least some information from which racial disparity can be plausibly inferred," and observing "[t]he survey described in this complaint is essentially meaningless").

### D.    In The Alternative, DISA Requests The Court To Certify For Appeal Its Recent Finding That DISA Indirectly Employed Plaintiffs.

If the Court does not grant the above motion for judgment on the pleadings, DISA respectfully requests that the Court amend its May 12, 2023 Order to certify for interlocutory appeal its ruling that DISA is Plaintiffs' indirect employer and subject to present Title VII and FEHA claims.

Certification pursuant to 28 U.S.C. § 1292(b) is appropriate where, as here, a district court decision involves (1) an order involves a "controlling question of law;" (2) there is "substantial ground for difference of opinion" as to that question; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1026 (9th Cir. 1982). This Court's May 12, 2023 Order meets this standard.[5]

---

[5] The Court held that DISA was Plaintiffs indirect employer under Title VII, the FEHA, and the ADA. Dkt. 40 at 6:19-9:16. The Court found that Plaintiffs allege that DISA created a set of policies that employees who received positive drug test results were required to follow in order to maintain "active" standing on DISA's online platform, and that DISA's policies required Plaintiffs to pay DISA for a retest or a substance abuse course. Dkt. 40 at 8:1-12. The Court cited to paragraphs 24

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

1

2

### 1. Whether DISA Is An Indirect Employer Is A Controlling Question of Law.

"[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in district court." *Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (1981). An order may be found to involve a controlling question of law even though "reversal of the district court's order [will] not terminate the litigation." *See Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (order staying district court proceedings pending arbitration involves controlling question of law); *In re The Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (a "controlling question of law" includes procedural determination affecting the conduct of an action).

The question of whether DISA is an indirect employer subject to Plaintiffs' claims under Title VII and FEHA is "controlling" as appellate review would determine if Plaintiffs can continue to pursue their employment claims against DISA. If DISA is correct in its interpretation, then a Ninth Circuit decision on this issue would dispose of all employment discrimination claims against DISA. The answer to this question will control the extent to which DISA may be exposed to liability for employment discrimination claims. Thus, the resolution of the issue on appeal could materially affect the outcome of the litigation, and the issue is dispositive for purposes of interlocutory review.

### 2. There Are Substantial Grounds for Difference Of Opinion As to Whether Non-Employers Could Be Held Liable for Title VII and FEHA Claims.

Substantial ground for difference of opinion exists where "novel and difficult questions of first impression are presented." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)); *see also Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709, 717 (N.D. Cal. 1994) (a "substantial ground for difference of opinion" will be found where there is no controlling precedent, such as where an issue has "not been squarely addressed by the Ninth Circuit."). Similarly, this element is met where there are "strong arguments on both sides" of a disputed issue. *Panache Broad. of Penn.*,

---

and 37 in the FAC for this finding. However, the FAC refers to Defendants' "policies" collectively, but do not specify that the policies were DISA's. Otherwise, the FAC merely alleges that individuals at DISA told Wilson he had to pay for a retest or take a course, and that Timec / Ferrovial told Daniels he was responsible for resolving the issue with DISA.  *See* FAC (Dkt. 14) ¶¶ 24 and 37.

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

*Inc. v. Richardson Elecs., Ltd.*, No. 90 C 6400, 1999 U.S. Dist. LEXIS 17529, at *15 (N.D. Ill. Oct. 29, 1999). The Ninth Circuit has held that "[w]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese v. BP Exploration (Alaska) Inc.,* 643 F.3d 681, 688 (9th Cir. 2011).

Here, the issue of whether a drug test administer could be considered an indirect employer under Title VII and the FEHA is a novel issue, and one that courts have reached contradictory conclusions.

First, while the Ninth Circuit held in *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 581 (9th Cir. 2000) that Title VII applies to the State of California when it interfered with minority educators' employment opportunities with local school districts in California by requiring, implementing, and administering credentialing tests, it qualified that its conclusion was dictated by the peculiar degree of control the State exercised over the day-to-day operations of local school districts. *Id.* ("Indeed, the state is so entangled with the operation of California's local school districts that individual districts are treated as "state agencies" for purposes of the Eleventh Amendment."). In addition, Plaintiffs have been unable to cite any case post-1983 that concluded a business entity, not a government entity, union or staffing agency, was an indirect employer subject to Title VII or FEHA.

Second, as demonstrated in DISA's motion to dismiss briefing, courts have reasonably reached different conclusions in the issue. *See Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 930-931 (9th Cir. 2003) (finding the union defendant was not an indirect employer of plaintiff longshore workers even though the union participated in grievance process because the employer allowed the allegedly hostile work environment at the sites controlled by employer, not the union); *Wynn v. National Broadcasting Co., Inc*. 234 F.Supp.2d 1067, 1109 (C.D. Cal 2002); *Vernon v. State of California*, 116 Cal.App.4th 114, 128 (2004) (holding that the State was not an indirect employer even though it adopted and enforced safety regulations, because it did not actively engage in the hiring or rejection of prospective employees).

1 | In addition, the Fifth and Sixth Circuits have declined to hold third-party administrators like

2 | DISA as covered entities. *See Satterfield v. Tennessee*, 295 F.3d 611, 618 n.7 (6th Cir. 2002)

3 | (holding that such an administrator is not a covered entity under the ADA); *Bloom v. Bexar County*,

4 | Tex., 130 F.3d 722,724- 725 (5th Cir. 1997) (examining Sixth and Seventh Circuit precedent and

5 | determining that much of the authority allowing indirect parties to be held liable under the ADA is

6 | "questionable," some of it overruled, and that the main  focus should be the element of control).

7 | **3.    Interlocutory Appeal Will Materially Advance Ultimate Termination Of**

8 | **This Litigation.**

9 | The final factor under § 1292(b) is whether the proposed appeal may materially advance the

10 | ultimate termination of the litigation by "appreciably shorten[ing] the time, effort, or expense of

11 | conducting the lawsuit." *Cement Antitrust*, 673 F.2d at 1027; *see Ass'n of Irritated Residents v. Fred*

12 | *Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) ("the Court should consider the effect

13 | of a reversal by the court of appeals" on case management); *see also U.S. v. Woodbury*, 263 F.2d

14 | 784, 787 (9th Cir. 1959).

15 | Section 1292(b) provides "a means by which, in appropriate circumstances and to further

16 | economy of litigation, full appellate review of important questions can be had prior to final

17 | judgment." *Arthur Young & Co. v. U.S. Dist. Ct.*, 549 F.2d 686, 697 (9th Cir. 1977). Certification is

18 | properly used to prevent "needless expense and delay." *Kuehner v. Dickinson & Co.*, 84 F.3d 316,

19 | 319 (9th Cir. 1996) (using "expense and delay" of district court proceedings as factors rendering a

20 | question of law "controlling"). "Section 1292(b) was intended primarily as a means of expediting

21 | litigation by permitting appellate consideration during the early stages of litigation of legal questions

22 | which, if decided in favor of appellant, would end the lawsuit." *United States v. Woodbury*, 263 F.2d

23 | 784, 787 (9th Cir. 1959). "Where proceedings that threaten to endure for several years depend on an

24 | initial question of jurisdiction . . . or the like,' certification may be justified even if there is a

25 | relatively low level of uncertainty." *APCC Serv., Inc. v. ESH AT&T Corp.*, 297 F. Supp. 2d 101, 107

26 | (D.D.C. 2003).

27 |

28 |

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE
PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

1       The question of whether DISA can be found an indirect employer subject to Title VII and

2   FEHA is exactly the type of legal question for which Section 1292(b) was intended. A determination

3   that DISA was not an indirect employer would end all discrimination class claims against DISA.

4   Such a determination would substantially lessen the time, cost and resources the parties and the

5   Court would have to expend litigating a case that ultimately could be reversed on appeal after trial.

6   Discovery and any attempted trial of the claims against DISA would be lengthy and require a

7   substantial expenditure of the Court's and the parties' resources. Extensive motion practice as it

8   relates to discovery, class procedural issues, and substantive issues on the claims is anticipated. A

9   determination of the key issues identified in this motion could eliminate the lengthy, unnecessary,

10  and expensive litigation of the discrimination claims against DISA.

**IV.   CONCLUSION**

12      For the foregoing reasons, DISA respectfully requests that the Court grant its Motion for

13  Judgment on the Pleadings, or in the alternative, pursuant to 28 U.S.C. § 1292(b), certify for

14  interlocutory appeal Section III.A.1 of the Court's May 12, 2023 Order holding that plaintiffs

15  sufficiently pleaded that DISA was Plaintiffs' indirect employer of purposes of subjecting DISA to

16  liability under Title VII and FEHA.

17  DATED:  July 14, 2023                              HUNTON ANDREWS KURTH LLP

19                                          By:    _s/ M, Brett Burns_____
20                                                 M. Brett Burns
                                                   Holly Williamson
21                                                 Karen Evans

22                                                 Attorneys for Defendant
                                                   DISA GLOBAL SOLUTIONS

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111