Lawrence A. Organ (SBN 175503)
Julianne K. Stanford (SBN 290001)
Cimone A. Nunley (SBN 326915)
**CALIFORNIA CIVIL RIGHTS LAW GROUP**
332 San Anselmo Ave.
San Anselmo, CA 94960
Tel. (415) 453-4740
Fax (415) 785-7352
Email: larry@civilrightsca.com
          julianne@civilrightsca.com
          cimone@civilrightsca.com

Vernon C. Goins II (SBN 195461)
William W. Castillo Guardado (SBN 294159)
**LAW OFFICES OF VERNON C. GOINS**
1970 Broadway, Ste. 450
Oakland, CA 94612
Tel. (510) 663-3700
Fax (510) 663-3710
Email: vgoins@goinslawfirm.com
          wcastillo@goinslawfirm.com

Attorneys for Plaintiffs
MARVONTE WILSON,
DOMONIQUE DANIELS,
and the Putative Class

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVONTE WILSON and DOMONIQUE DANIELS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TIMEC SERVICES COMPANY, INC.; FERROVIAL SERVICES INFRASTRUCTURE, INC.; VALERO REFINING COMPANY – CALIFORNIA; DISA GLOBAL SOLUTIONS; and DOES 1 THROUGH 50, INCLUSIVE, <br><br> Defendants. | Case No. 2:23-CV-00172-WBS-KJN <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANT DISA GLOBAL SOLUTIONS' MOTION FOR JUDGMENT ON THE PLEADINGS AND ALTERNATIVE MOTION FOR CERTIFIACTION FOR INTERLOCUTORY APPEAL <br><br> Complaint Filed:  October 31, 2022 <br> Removal:           January 27, 2023 <br> FAC Filed:         February 24, 2023 <br><br> Date: September 5, 2023 <br> Time: 1:30 p.m. <br> Courtroom: 5, 14th Floor |

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     FACTUAL BACKGROUND ..................................................................................... 1

III.    LEGAL ARGUMENT ................................................................................................ 2

A.      GOVERNING STANDARD .................................................................................... 2

B.      DISA'S MOTION INAPPROPRIATELY ASKS THE COURT TO DRAW
INFERENCES IN ITS FAVOR AND OFFERS FACTS OUTSIDE THE BOUNDS OF THE
COMPLAINT—WHICH THE COURT CANNOT CONSIDER IN MAKING ITS RULING. 3

C.      PLAINTIFFS HAVE PLED A PLAUSIBLE CLAIM FOR RACIALLY DISPARATE
TREATMENT ..................................................................................................................... 7

D.      PLAINTIFFS HAVE PLED A PLAUSIBLE CLAIM FOR RACIALLY DISPARATE
IMPACT. ........................................................................................................................... 10

E.      DISA'S REQUEST FOR CERTIFICATION OF THE INDIRECT-EMPLOYER ISSUE
DOES NOT MEET THE STANDARD FOR INTERLOCUTORY APPEAL ......................... 13

1.      The Question of Whether DISA Is an Indirect Employer Is a Controlling Question of
Fact, Not Law ................................................................................................................... 14

2.      DISA Fails to Identify a Substantial Ground for Difference of Opinion. ...................... 15

IV.     CONCLUSION ......................................................................................................... 17

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alozie v. Arizona Bd. of Regents*,
   No. CV-16-03944-PHX-ROS, 2017 WL 11537899 (D. Ariz. Sept. 21, 2017) ................10, 12

*Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*,
   770 F.2d 1401 (9th Cir.1985) ................................................................................10

*Anderson v. Pac. Mar. Ass'n*,
   336 F.3d 924 (9th Cir. 2003) ................................................................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................2

*Ass'n of Mexican-Am. Educators v. State of California*,
   231 F.3d 572 (9th Cir. 2000) ................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................2, 3

*In re Cement Antitrust Litigation (MDL No. 296)*,
   673 F.2d 1020 (9th Cir. 1981) ................................................................13, 14, 15

*Couch v. Telescope, Inc.*,
   611 F.3d 629 (9th Cir. 2010) ................................................................................16

*Darensburg v. Metropolitan Transp. Com'n*,
   636 F.3d 511 (9th Cir. 2011) ................................................................................12

*Elvig v. Calvin Presbyterian Church*,
   375 F.3d 951 (9th Cir. 2004) ................................................................................3

*Filho v. Gansen*,
   No. 4:18-cv-00337-KAW, 2018 WL 5291986 (N.D. Cal. Oct. 19, 2018) ......................11, 12

*Fleming v. Pickard*,
   581 F.3d 922 (9th Cir. 2009) ................................................................................2

*Foster v. Edmonds*,
   No. C 07–05445 WHA, 2008 WL 4415316 (N.D. Cal. Sept. 26, 2008) ..................................2

*Gomez v. Alexian Bros. Hosp. of San Jose*,
   698 F.2d 1019 (9th Cir. 1983) ................................................................................16

*Haymon v. Metra*,
    No. 18 C 848, 2020 WL 1548953 (N.D. Ill. Mar. 31, 2020) ........................................5

*Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*,
    538 F.2d 164 (7th Cir. 1976) ........................................................................5, 11

*Jenkins v. New York Transit Authority*.
    646 F. Supp. 2d 464 (S.D.N.Y. 2009)........................................................10, 11

*Jones v. City of Boston*,
    752 F.3d 38 (1st Cir. 2014)........................................................9, 10, 11, 13

*Liu v. Uber Technologies, Inc.*,
    No. 22-16507 (9th Cir. Oct. 3, 2022)........................................................12

*Liu v. Uber Technologies*,
    No. 20-cv-07499-VC, 2021 WL 800903 (N.D. Cal. Mar. 3, 2021) ........................12

*Liu v. Uber Technologies*,
    No. 20-cv-07499-VC, 2022 WL 1613285 (N.D. Cal. May 23, 2022)........................13

*Liu v. Uber Techs. Inc.*,
    No. 20-CV-07499-VC, 2022 WL 4494149 (N.D. Cal. Sept. 28, 2022) ...............11, 12, 13

*Lutcher v. Musicians Union Local 47*,
    633 F.2d 880 ........................................................................................16

*McFarlin v. Conseco Svcs.*,
    LLC, 381 F.3d 1251 (11th Cir. 2004) ........................................................14

*McGary v. City of Portland*,
    386 F.3d 1259 (9th Cir. 2004) ..................................................................6

*Ricci v. DeStafano*,
    557 U.S. 557 (2009)................................................................................12

*Simmons v. Akanno*,
    No. 1:09–cv–00659–GBC (PC), 2011 WL 1566583 (E.D. Cal. Apr. 22, 2011) ...........14, 15

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)........................................................................2, 3, 9, 10

*Watson v. Fort Worth Bank and Trust*,
    487 U.S. 977 (1988)................................................................................12

*Wells Fargo Bank v. Bourns, Inc.*,
    860 F. Supp. 709 (N.D. Cal. 1994) ........................................................16, 17

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

*Wood v. City of San Diego*,
  678 F.3d 1075 (9th Cir. 2012) ..............................................................10

*Wright v. State of North Carolina*,
  787 F.3d 256 (4th Cir. 2015) ...................................................................6

*Wynn v. National Broadcasting Co., Inc.*
  234 F.Supp.2d 1067 (C.D. Cal 2002) ....................................................16

**California Cases**

*Guz v. Bechtel Nat. Inc.*,
  24 Cal.4th 317 (2000) ..............................................................................7

*Vernon v. State of California*,
  116 Cal.App.4th 114 (2004) ...................................................................16

**Other State Cases**

*In re Cement Antitrust Litigation*
  (MDL No. 296) ........................................................................................14

**Federal Statutes**

28 U.S.C. § 1292(b) ..........................................................................1, 13, 14, 15

Fair Housing Act ........................................................................................11

**California Statutes**

Cal. Gov. Code 12926(w) .............................................................................5

**Other Authorities**

Rule 8 .........................................................................................................12

Rule 8(a) .......................................................................................................2

Rule 12 .........................................................................................................6

Rule 12(b)(6) ..............................................................................................2, 6

Rule 12(c) .............................................................................................. *passim*

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

## I.  **INTRODUCTION**

Via its most recent Motion, Defendant DISA Global Solutions ("DISA") seeks yet again to dismiss Plaintiffs' complaint. The Motion should be rejected because (1) DISA's motion is replete with facts outside the pleadings, which the Court may not properly consider; (2) Plaintiffs have pled a claim for racially disparate treatment; (3) Plaintiffs have pled a claim for racially disparate impact; and (4) DISA fails to identify a controlling question of law where there is substantial grounds for difference of opinion, as required for interlocutory appeal pursuant to 28 U.S.C. 1292(b).

## II.  **FACTUAL BACKGROUND**

In their complaint, Plaintiffs assert three claims of racial discrimination against Defendant DISA:

1) Hair drug tests conducted on individuals with melanin-rich hair return a disproportionate number of false positives, which disproportionately affect Black individuals, who typically have black or brown hair that is rich in melanin (FAC ¶ 14);

2) Despite knowing of the disparate rate of false positives on Black individuals, Defendant DISA continues to utilize hair testing in reckless disregard of Black employees' rights under Title VII (FAC ¶ 17); and

3) Despite knowing that melanin-rich hair, a common feature shared by many Black individuals, is particularly prone to environmental contamination in the drug-testing process, Defendant DISA negligently collected Black employees' hair for testing in unsanitary conditions that could lead to environmental contamination and false positives in drug testing (FAC ¶¶ 118-128).

Plaintiffs also allege that, through their union representative, they are aware of at least two additional Black employees who received false positive drug tests prior to their own. (FAC ¶ 25) Plaintiffs are not aware of any non-Black employees who received false positive drug tests.

\\

\\

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

### III. <u>LEGAL ARGUMENT</u>

#### A.  Governing Standard

Defendants bear a heavy burden in bringing a motion under Rule 12(c): a motion for judgment on the pleadings is only "properly granted where there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). The court must draw all inferences in favor of the non-moving party and accept all facts in the complaint as true, even if the court does not believe the factual allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance… dismissals based on a judge's disbelief of factual allegations.) The Rule 8(a) pleading standard does not consider the likelihood of the plaintiff's success on the merits, and so long as a complaint meets the Rule's standard, it should survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). "This standard [of accepting all facts as true] is applied with particular strictness when the claim is for an alleged civil rights violation." *Foster v. Edmonds*, No. C 07–05445 WHA, 2008 WL 4415316 (N.D. Cal. Sept. 26, 2008), citing *Shecter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir. 1996).

A court need not accept a complaint that merely offers "a formulaic recitation of the causes of action" or "naked assertions" without "further factual enhancement" as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555-557 (2007). However, this is reserved for situations where a plaintiff merely offers "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements". *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the employment context, the Supreme Court has held a complaint is sufficient to survive a motion to dismiss where the plaintiff "detail[s] the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination. [citation]. These allegations give [the defendant] fair notice of what [the plaintiff's] claims are and the grounds upon which they rest," satisfying the purpose of Rule 8(a). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Contrary to DISA's assertions, the Supreme Court holds that "the Federal Rules do not contain a heightened pleading standard for employment

discrimination suits," and "an employment discrimination plaintiff *need not plead a prima facia case of discrimination*" to survive a motion to dismiss. *Id*. at 514-5 (emphasis added). DISA's Motion essentially asks the Court to disregard the clearly-established governing standards in service of its desired result, and should be rejected in its entirety.

### B.   DISA's Motion Inappropriately Asks the Court to Draw Inferences in Its Favor and Offers Facts Outside the Bounds of the Complaint—Which the Court Cannot Consider in Making its Ruling.

A court's review of a 12(c) motion "is generally limited to the contents of the complaint." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 fn. 1 (9th Cir. 2004), citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Even if the Court is skeptical of the plaintiff's factual allegations, the court must accept those allegations as true and draw all inferences in favor of the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Despite this clear admonition, DISA asks the Court to consider numerous "facts" (alleged with no factual or legal support) outside of the bounds of the complaint, and improperly asks the Court to draw numerous inferences in DISA's favor. The Court may not consider the following facts in ruling on DISA's motion:

    1.   "…Black people may have natural hair colors that are not 'melanin rich' (*e.g.* red, blonde, or light-brown) or that [*sic* original] was once 'melanin-rich' but are now grey or white due to the loss of melanin due to aging" (Mtn. 5:9-11):

This "fact" appears nowhere on the face of Plaintiff's complaint and Defendant offers no judicially noticed facts in support; thus, the Court may not consider it. Moreover, visual inspection of hair colors cannot accurately determine the melanin content of that hair, and Black men's hair binds more readily to cocaine than even Caucasian men's dark hair. (Plaintiff's Request for Judicial Notice ("RJN"), Exh. A p. 6)

    2.   "…individuals who are not Black have black or brown hair too." (Mtn. 5:12):

This "fact" appears nowhere on the face of Plaintiff's complaint and Defendant offers no judicially noticed facts in support. Moreover, studies have demonstrated that visual inspection of

dark hair cannot be used to accurately or effectively determine the melanin content of dark hair, and dark hair of Black men absorbs stimulants like cocaine at many times the rate of dark hair from Caucasian men. (RJN, Exh. A p. 6)

        3.   "'Plaintiffs do not allege that Black employees with dark hair were treated differently than other [non-Black] employees with dark hair…'" (Mtn. 5:16-17):

This "fact" appears nowhere on the face of Plaintiff's complaint and Defendant offers no judicially noticed facts in support. Additionally, the two Black Plaintiffs allege in their complaint that two other Black employees—but no white employees—received false positive drug tests. (FAC ¶ 25) This requires the Court to draw the reasonable inference in Plaintiffs' favor that only Black employees received false positive drug tests, and the Court is not permitted to draw this inference in DISA's favor as DISA urges. And, as noted above, dark Caucasian hair absorbs drugs at lower rates than dark Black hair. (RJN, Exh. A p. 6)

        4.   "'..assuming the truth of plaintiffs' allegations, it seems likely that White employees with dark hair were also subject to an increased rate of false positive drug test results." (Mtn. 5:17-19):

This "fact" appears nowhere on the face of Plaintiff's complaint and Defendant offers no judicially noticed facts in support. Additionally, DISA is again requesting the Court draw this inference in DISA's favor, which is impermissible in the context of a Rule 12(c) motion. The Court is required to draw this inference in Plaintiffs' favor as Plaintiffs have alleged that only known employees who received false positive drug tests are Black. Moreover, scientific studies demonstrate that Black men's hair absorbs cocaine at higher rates than even dark hair of Caucasian men. (RJN, Exh. A p. 6)

        5.   "Rather, at most, [Plaintiffs'] assertions show that Plaintiffs informed DISA that they disagreed with the results of the hair drug test *after the fact*." (Mtn. 6:13-14):

Here, DISA simply asks the Court to ignore the plain text of Plaintiffs' complaint. According to a union representative, at least two Black employees received false positive drug

tests prior to Plaintiffs. (FAC ¶ 25) This requires the Court to draw the reasonable inference in Plaintiffs' favor that either the two Black employees or the union representative placed DISA on notice of the possibility of false drug tests.

6. "And Plaintiffs do not allege that non-Black employees experienced fewer false-positive hair drug test results than Black employees, nor could they, since their legal theory is predicated on the race-neutral criterion of hair color…" (Mtn. 8:13-16):

DISA is asking this Court to find that melanin-rich hair is not a trait associated with Black people, which improperly contravenes the contention in the complaint that "hair drug tests disproportionately result in false positives when processing the type of hair common in Black people." (FAC ¶ 14) For the purposes of ruling on DISA's Rule 12(c) motion, the Court must disregard DISA's contention, which does not appear on the face of the complaint, and accept Plaintiffs' contention. Plaintiffs' assertions in the complaint, that Plaintiffs and two other Black employees (and by implicit extension, no white employees) received false positive hair drug tests, require the Court to draw the inference in Plaintiffs' favor that fewer white employees than Black employees received false positive drug tests. Moreover, the thrust of Plaintiff's complaint is *not* that dark hair, generally, is more prone to false positive drug tests. Rather, the melanin content of Black hair (which cannot be evaluated with the naked eye) is materially different from the melanin content of dark hair of other races. (RJN, Exh. A p. 6) Other immutable traits inherent to Black hair, such as hair texture, have long been understood as appropriate proxies for race. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976) (overturning denial of class certification where Plaintiff was told she "'could never represent Blue Cross with [her] Afro'"), *Haymon v. Metra*, No. 18 C 848, 2020 WL 1548953 (N.D. Ill. Mar. 31, 2020) ("…there is no question that racial discrimination claims by Black women on the basis of their hair texture or natural hairstyles are viable, and have been for a long time."), Cal. Gov. Code 12926(w) (California Fair Employment and Housing Act) ("'Race' is inclusive of traits historically associated with race, including, but not limited to, hair texture and protective hairstyles."). If some immutable characteristics of Black hair, like texture, are appropriate

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

proxies for race, it stands to reason that other immutable characteristics, like melanin content, should also be used as appropriate proxies for race. Plaintiffs' theory that the melanin content of hair is certainly a novel one not squarely addressed by prior case law. But this cuts against DISA's motion: Rule 12 motions are "'are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development.'" *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004), citing *Baker v. Cuomo*, 58 F.3d 814, 818-9 (2d Cir. 1995); accord *Wright v. State of North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) ("To the extent Plaintiffs' claims do 'not fall within the fourt corners of our prior case law,' this 'does not justify dismissal under Rule 12(b)(6).... [Such] plaintiffs should be given 'an opportunity to develop evidence before the merits are resolved.' [citation].").[1]

  DISA also asks the Court to disregard a number of the facts in the complaint, which the Court must accept as true.

    1. "The only allegations Plaintiffs make in support of their conclusory racially discriminatory impact theory are (1) they received positive hair drug test results with which they disagreed, (2) some unidentified 'research' allegedly 'shows' that conducting hair drug tests on 'melanin-rich' black or brown hair presents an increased risk of 'false positive' results, and (3) 'melanin rich' black or brown hair allegedly is common in Black people." (Mtn. 7:23-8:2):

  DISA conclusorily dismisses these allegations as "fact-deficient" and implausible. But however implausible the Court might personally find these allegations, it is bound to accept them as true in ruling on DISA's Rule 12(c) motion.

    2. "Their allegations focus on 'melanin-rich' hair, not race, as illustrated by the unsupported statement 'research has shown' that hair drug tests disproportionately result in false positives for people with melanin-rich hair, a conclusory allegation that should be disregarded." (Mtn. 8:23-25):

---

1 Although these cases address the standard for a Rule 12(b)(6) motion, the rules are virtually identical and apply the same standard of review. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 fn. 4 (9th Cir. 2011).

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

DISA offers no justification to support its entreaty that the Court disregard this fact, and om the context of a 12(c) motion, the Court must accept it as true. Moreover, scientific research demonstrates that Black men's hair absorbs drugs like cocaine significantly more readily than even black or brown Caucasian hair. (RJN, Exh. A p. 6) As noted above (*infra* 6:16-7:10), the thrust of Plaintiffs' complaint is not about hair color—it is about the fact that Black hair is melanin-rich in a manner that is distinct from dark hair of other races. Given this distinction between black or brown Caucasian hair and black or brown Black hair, Plaintiffs should be permitted to use this as a proxy for race, and the Court may not disregard this allegation.

After setting aside the improper inferences and facts DISA urges the Court to adopt, the Court must deny DISA's motion.

**C. Plaintiffs Have Pled a Plausible Claim for Racially Disparate Treatment**

At the pleading stage, to state a claim for intentional discrimination, a plaintiff must show "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action..., and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 355 (2000). DISA does not challenge the second or third elements.

As noted above (*infra* 4:5-8:10), DISA's challenge to the first element (that Plaintiffs are members of a protected class because they have melanin-rich hair) is based only on DISA's speculative assertion that, in essence, white individuals with dark hair would be subjected to the same rate of false positives as Black individuals with dark hair. DISA offers no support for this proposition and it contradicts the facts on the face of the complaint (FAC ¶ 14), so the court may not consider it. Rather, the Court must accept Plaintiffs' contentions that Black people have melanin-rich hair distinct from white individuals' dark-colored hair.

The only challenge the Court may properly consider is to the fourth element: that some other circumstances related to the adverse employment action suggest a discriminatory motive. DISA claims that Plaintiffs' complaint fails on this element because Plaintiffs "make no allegation that DISA intends to discriminate against Black employees by administering hair drug tests" (Mtn. at 5:23-25), and Plaintiffs do not allege "that DISA was aware of any adverse

consequences to Plaintiffs because of race when their drug tests were administered" because Plaintiffs only provided notice to DISA after they received false positives on their drug tests. (Mtn. at 6:5-11) But this misstates and ignores the facts alleged in the complaint. Plaintiff Wilson's union representative informed Plaintiff Wilson that at least two other Black employees received false positive tests from DISA prior to Plaintiff Wilson's false positive test. (FAC ¶ 25) Plaintiff Wilson also obtained an independent test from another laboratory, which came back negative. (FAC ¶ 26) Both plaintiffs also had negative urine tests and Plaintiff Daniels had a negative saliva tests. (FAC ¶¶ 30, 37)

As noted in the complaint, studies on the efficacy of hair drug testing indicate that Black men's hair tests positive for cocaine and other stimulants at rates ranging from five to *fifty-five fold* higher than the hair of blonde Caucasian women. (RJN Exh. A at 4) While melanin is "the primary hair constituent responsible for both nonspecific and specific binding" of amphetamines like cocaine, studies have demonstrated that "visual inspection of hair color is not a sensitive indicator of melanin content in dark hair specimens." (RJN Exh. A at 6) In other words, even visual comparison of two visually similarly colored hair samples cannot provide an accurate comparison as to their relative melanin content. Other studies of police department employees indicate that Black police officers tested positive for cocaine in hair tests at a rate 4.7 times higher than white officers. (RJN Exh. B at 3) Ethnic hair care products used by Black people can further increase the disparity in testing, as they may "enhance cocaine and methamphetamine uptakes by up to 100 fold over" other styling products from such minor contact as touching the same surface as a drug user at an airport, or having ones' hair styled by a barber who uses drugs. (RJN Exh. B at 6-8)

This statistical disparity is borne out in discovery in the one other case that has directly tackled this issue, previously cited by the Court in its May 13, 2023 Order. In a case involving hair drug testing for Boston police officers and police department applicants, the statistics showed that, over a 7-year period, the distribution of positive tests between Black and white

workers and applicants differed by over seven standard deviations[2]. *Jones v. City of Boston*, 752 F.3d 38, 44-45 (1st Cir. 2014) (vacating summary judgment of disparate impact claim and reversing denial of summary judgment on the question of whether plaintiffs proved a prima facie case of disparate impact).

In other words, DISA's claim that Black people with dark hair experience a similar rate of false positive drug tests to non-Black people with dark hair is both contrary to the facts in the complaint, which the Court must accept as true, and finds no basis in the scientific literature or other cases.

Taken together, these circumstances "suggest discriminatory motive" as required for a *prima facie* case of intentional discrimination. Plaintiffs allege that DISA knew of at least two Black employees prior to Plaintiffs who received false positive hair tests (FAC ¶ 25); and knew that Plaintiffs received false positives on their hair drug tests (FAC ¶¶ 23-24, 37), despite receiving negative urine tests (FAC ¶¶ 23, 37), a negative saliva test (FAC ¶ 37), and a negative hair test from another laboratory (FAC ¶ 26). Plaintiffs also allege that Defendant DISA was aware of the science, stretching back for nearly 30 years, that demonstrates that melanin-rich hair of the type that Black people commonly have can bind to cocaine at rates up to *fifty-five fold higher* than other types of hair. (RJN Exh. A at p. 4) Given the availability of numerous other types of drug testing, this leads to the reasonable inference (which the Court must draw in the context of a Rule 12(c) motion) that DISA intentionally selected these policies with a discriminatory intent towards Black individuals. And most notably for a motion pursuant to Rule 12(c), Plaintiffs *need not prove a prima facie case at the pleading stage. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-5 (2002). Plaintiffs need only allege facts sufficient to state a plausible *prima facie* case, which they have done.

The cases upon which DISA relies for the prospect that a plaintiff must show more than mere awareness of adverse consequences on a protected group are inapposite. The first concerns a case on appeal following a bifurcated trial—after both parties had an opportunity to develop

---

[2] When reviewing statistical differences between outcomes between races, a deviation of two standard deviations or higher between groups indicates that a differential is attributable to some difference between the racial groups, rather

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

the factual record and adduce evidence of intentional discrimination. *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1403 (9th Cir.1985). The second concerned an appeal following a motion to dismiss and motions for summary judgment from both parties. *Wood v. City of San Diego*, 678 F.3d 1075, 1079-80 (9th Cir. 2012). It is, simply put, not appropriate to compare Plaintiffs' case, which is at the early pleading stages, to cases where the parties had an opportunity to develop the factual predicates for their claims via full discovery. Neither case supports DISA's position that this case should be dismissed based on the pleadings. To the extent DISA cites these cases for the proposition that racial discrimination plaintiffs must plead a *prima facie* case of discrimination in the complaint, they conflict with Supreme Court precedent and must be disregarded. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-5 (2002).

### D.  Plaintiffs Have Pled a Plausible Claim for Racially Disparate Impact.

To state a claim of racially disparate impact, a plaintiff must identify a challenged employment practice, and must then show the practice causes a racially disparate impact. *Jones v. City of Boston*, 752 F.3d 38, 46 (1st Cir. 2014). As one of the cases DISA cites explicitly notes, "the pleading standard for a disparate impact claim is not meant to be 'onerous.'" *Alozie v. Arizona Bd. of Regents*, No. CV-16-03944-PHX-ROS, 2017 WL 11537899 at *8 (D. Ariz. Sept. 21, 2017). The *Alozie* court specifically observed that the employment plaintiff's claim in that case "need not be supported by statistical proof at the pleading stage." Id. at *8.

Another case DISA relies on further outlines the situations in which a plaintiff need not introduce statistical evidence at the pleading stage to continue a claim of disparate impact:

"Lest there be any misunderstanding, this is not to suggest that a plaintiff must always include information about the effect of an employment practice on the defendant's workplace to plead the first element of disparate impact claim. Sometimes the disparate impact created by an employment practice will be self-evident, potentially obviating the need for further allegations about the resulting disparity. Take, for example, *Jenkins v. New York Transit Authority*. 646 F. Supp. 2d 464 (S.D.N.Y. 2009). There, the plaintiff's religion required her to only wear skirts, and she brought a disparate impact claim after

than random chance. *Jones*, 752 F.3d 38, 46-47 (1st Cir. 2014).

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

she was fired from her job as a bus operator for refusing to wear pants instead. *Id.* at 467–68. The defendants argued that the plaintiff, notwithstanding her personal experience, had not stated a disparate impact claim because such a claim "requires an allegation that an employer's policy has had a statistically significant, disproportionate, and negative effect on one protected group as compared to others." *Id*. at 469. The court rejected this argument. Because it was "plain" that the policy would disparately affect women of the plaintiff's religion, there was no need for statistical or other evidence about the results of that practice in the workplace. *Id.* at 470. One can imagine other policies that would, on their face, disparately affect a protected class, and a plaintiff would not need to point to any facts showing the resulting disparate impact to challenge those policies." *Liu v. Uber Techs. Inc.*, No. 20-CV-07499-VC, 2022 WL 4494149, at *2 (N.D. Cal. Sept. 28, 2022)

Plaintiff's case is analogous to the circumstances the *Liu* court describes. The disparities in positive hair drug tests between Black and white workers vary by as much as *seven standard deviations* (*Jones v. City of Boston*, 752 F.3d 38, 44-45 (1st Cir. 2014)), Black hair binds to cocaine at rates varying from *five to fifty-five fold* higher than blonde Caucasian hair (RJN Exh. A at 6), Black workers test positive for drug use at rates 4.7 times higher than their white coworkers (RJN Exh B at 3), and ethnic styling products cause Black hair to test positive for amphetamines and cocaine with minor contact such as with a barber who uses drugs or with a shared airport surface (RJN Exh. B at 6-8). These statistics, though not specific to DISA, make it plain that Black individuals who receive false positive hair drug tests are disparately impacted by hair drug tests. Like the *Jenkins* case, it is self-evident that Black employees will suffer racially disparate, and inferior, access to the job market where their employment is premised on hair drug testing.

The cases DISA cites in support of its claim either do not say what DISA claims they say, or apply in different contexts. For instance, the case which DISA claims adds a requirement that plaintiffs pleading disparate impact demonstrate some statistical difference in outcomes between similarly situated individuals arises under the Fair Housing Act ("FHA"). *Filho v. Gansen*, No. 4:18-cv-00337-KAW, 2018 WL 5291986 (N.D. Cal. Oct. 19, 2018). An FHA plaintiff "must

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

show both a statistical disparity and a policy or policies that caused the disparity." *Filho v. Gansen*, No. 4:18-cv-00337-KAW, 2018 WL 5291986 at *3 (N.D. Cal. Oct. 19, 2018). But in a disparate impact employment case, a plaintiff's claims "need not be supported by statistical proof at the pleading stage." *Alozie*, 2017 WL 11537899 at *8.[3]

Other cases arose in a different procedural posture. For example, one disparate impact case went to the Supreme Court after the district court certified two classes of employees and conducted a trial. *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 983 (1988). Another arose after both parties filed motions for summary judgment, after the conclusion of discovery. *Ricci v. DeStafano*, 557 U.S. 557, 563 (2009). A third case came to the Ninth Circuit after some claims were dismissed following summary judgment and other claims failed at trial. *Darensburg v. Metropolitan Transp. Com'n*, 636 F.3d 511, 514 (9th Cir. 2011). As noted above (*infra* 10:24-11:10), it does not make sense to compare the requirements of Rule 8 to the requirements applied to cases after the parties have had a complete opportunity to develop the factual record.

Still other cases simply involve a different set of facts. The *Liu* case concerned allegations that Uber drivers of color were disproportionately terminated for low customer reviews in Uber's customer rating system. *Liu v. Uber Technologies*, No. 20-cv-07499-VC, 2021 WL 800903, at *1 (N.D. Cal. Mar. 3, 2021).[4] The initial complaint was dismissed for being "too sparse and poorly drafted," because the complaint "allud[ed] generally to 'social science research'" but did "not actually cite to or describe any research findings or other facts supporting the assertion that drivers of color are disproportionately harmed by the customer ratings system." *Id.* The second *Liu* decision that DISA cites concerned an amended complaint that included a statistical survey of drivers, but the district court dismissed the survey because it only included

---

[3] The *Alozie* court dismissed the plaintiff's claim, because the plaintiff made just two allegations: that all of the challenged positions were filled via a non-competitive application process, and that no Black individual held one of the challenged positions. *Alozie*, 2017 WL 11537899 at *8. The court observed these two facts were insufficient to support liability at the pleading stage, because the plaintiff failed to include any facts about the number of positions available, making it impossible for the Court to evaluate the plaintiff's claims. *Id.* But here, Plaintiffs have alleged specific research and evidence in their complaint demonstrating the outsized disparate impact hair drug testing has on Black individuals with melanin-rich hair.

[4] Moreover, the *Liu* decision is not citable because a Ninth Circuit appeal is presently pending. The decision was appealed to the Ninth Circuit on October 3, 2022. *Liu v. Uber Technologies, Inc.*, No. 22-16507 (9th Cir. Oct. 3,

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

"drivers who identify as being terminated and not... a sample of Uber's total driver population." *Liu v. Uber Technologies*, No. 20-cv-07499-VC, 2022 WL 1613285 at *1 (N.D. Cal. May 23, 2022).

In contrast to the *Liu* decisions (which are not citeable based on the pending appeal), Plaintiffs detailed specific research findings in the complaint demonstrating a disparate impact: hair drug tests disproportionately result in false positives for Black people due to the chemical and physical characteristics of melanin-rich hair, hair tests can detect lower levels of drugs in melanin-rich hair, and that false positives occur because melanin-rich hair more readily binds to drugs and thus can more readily result in external contamination. (FAC ¶ 14) This case can be distinguished from *Liu* because Plaintiffs actually placed DISA on fair notice of their claims by describing the challenged practice and the research supporting their claims. It is also readily distinguishable from *Liu* because the challenged practice of terminating drivers for low customer reviews in Liu was not self-evidently connected to the drivers' race. In contrast, it is a commonly accepted fact that Black people more often have dark, melanin-rich hair when compared to non-Black individuals—and thus it is not only self-evident (but borne out by the research that Plaintiffs specifically describe in the complaint) that Black individuals with melanin-rich hair experience higher rates of false positives on hair drug tests than non-Black individuals. And this statistical disparity is actually borne out by the findings of the one court that has tackled the issue to date. *Jones v. City of Boston*, 752 F.3d 38, 44-45 (1st Cir. 2014).

Because Plaintiffs have described ample statistical evidence to raise a plausible claim of disparate impact, their disparate impact claim should survive.

### E.  DISA's Request for Certification of the Indirect-Employer Issue Does Not Meet the Standard for Interlocutory Appeal

Generally, a district court has broad discretion to certify or deny a request for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), so long as the court's order underlying the request meets three criteria. *In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d 1020,

---

2022). According to the PACER docket, the plaintiff has until August 14, 2023 to file his reply brief and no decision has been issued to date.

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS

1026 (9th Cir. 1981). First, the order at issue must involve a controlling question of law; second, the order must concern an issue where there is "substantial grounds for difference of opinion"; and third, the interlocutory appeal should "materially advance the ultimate termination of litigation." *Id*. Interlocutory appeals pursuant to Section 1292(b) should be granted "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.* Plaintiff concedes that resolution of the indirect-employer issue would advance the termination of this litigation, satisfying the third criteria. Nevertheless, the Court's May 12, 2023 Order fails to meet the first two criteria, and the Court must deny DISA's request as a result.

      1. <u>The Question of Whether DISA Is an Indirect Employer Is a Controlling Question of Fact, Not Law.</u>

    To qualify for interlocutory appeal, an order must concern a controlling question *of law*. A question is a controlling question of law where "'the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts'". *Simmons v. Akanno*, No. 1:09–cv–00659–GBC (PC),  2011 WL 1566583 at *3 (E.D. Cal. Apr. 22, 2011), citing *McFarlin v. Conseco Svcs.*, LLC, 381 F.3d 1251, 1259 (11th Cir. 2004). To merit certification for interlocutory review under Section 1292(b), the "legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *McFarlin*, 381 F.3d 1251, 1259 (11th Cir. 2004).

    DISA's motion materially misrepresents this first criterion. DISA correctly notes that its status as an indirect employer is "controlling," in the sense that resolution of this question would "materially affect the outcome of the litigation in district court" (Mtn. at 10), but its motion notably sidesteps the second portion of the criteria—that the controlling question must be one *of law*. In a case DISA itself cites, the Ninth Circuit specifically rejected DISA's approach. *In re Cement Antitrust Litigation* (MDL No. 296), 673 F.2d 1020, 1027 (9th Cir. 1981). In that case, the Ninth Circuit observed that some courts consider a question controlling where its resolution

"may appreciably shorten the time, effort, or expense of conducting a lawsuit, [citations], thus essentially reading the 'controlling question of law' requirement out of Section 1292(b). We reject this approach. Congress could easily have chosen only to require that a question materially advance the litigation in order for it to be immediately reviewable. Since Congress chose to add the additional requirement that the issue for which review is sought must be a 'controlling question of law,' it would be improper for us to construe the statute as though these two requirements were interchangeable." *Id*.

DISA likely sidesteps this essential requirement of Section 1292(b) because the Court's May 12, 2023 Order was premised on facts specific to this case, not any controlling question of law. In its Order, the Court devoted two full pages to assessing the factual specifics of Plaintiffs' claims and applying settled law to those case-specific facts. (Dkt. 40 7:13-9:16) The Court explained that DISA was an indirect employer because it "reached out into an entire industry to convey plaintiffs' inactive status, thereby interfering with plaintiffs' employment opportunities with hundreds of potential employers." (Dkt. 40 9:4-7) DISA's motion does nothing more than quibble over the Court's application of the law to the specific facts of this case. This fact-specific analysis would require an appellate court to "delve beyond the surface of the record in order to determine the facts," meaning the question is inappropriate for interlocutory review under Section 1292(b). *Simmons v. Akanno*, No. 1:09–cv–00659–GBC (PC), 2011 WL 1566583 at *3 (E.D. Cal. Apr. 22, 2011), citing *McFarlin v. Conseco Svcs.*, LLC, 381 F.3d 1251, 1259 (11th Cir. 2004). Because DISA's request for interlocutory appeal does not meet this first criterion, it must be denied.

## 2. DISA Fails to Identify a Substantial Ground for Difference of Opinion.

The second criterion a party must meet when seeking certification for interlocutory appeal is demonstrating a "substantial ground for difference of opinion." *In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981). As DISA correctly notes, this criterion is met where a case introduces "novel and difficult questions of first impression", or where "there is no controlling precedent" because an issue has not been "squarely addressed by

the Ninth Circuit." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010), *Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709, 717 (N.D. Cal. 1994).

This is not the case presented here. Ninth Circuit precedent going back to the 1980s has held that an indirect employer can be liable "where a defendant subject to Title VII interferes with an individual's employment opportunities with another employer. [citations]." *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 833 fn. 3 (collecting cases from other circuits dating back to 1970s). This is so because "it would contravene Congress's intent in Title VII '[t]o permit a covered employer to exploit circumstances peculiarly affording it the capability of discriminatorily interfering with an individual's employment opportunities with another employer, while it could not do so with respect to employment in its own service...'." *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (9th Cir. 1983).

The cases DISA cites do not support the proposition that a "substantial grounds for difference of opinion" exists. Rather, they highlight the uniquely fact-specific nature of the indirect-employer inquiry, further cutting against DISA's argument that its question is a controlling question of law. DISA cites cases where a state was found to be an indirect employer of minority educators that it licensed (*Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 581 (9th Cir. 2000).), a union was not an indirect employer of longshore workers (*Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 930-931 (9th Cir. 2003).), talent agencies were found not to be indirect employers of television writers (*Wynn v. National Broadcasting Co., Inc.* 234 F.Supp.2d 1067, 1109 (C.D. Cal 2002).), and a state was not found to be an indirect employer of firefighters where the state only promulgated safety regulations (*Vernon v. State of California*, 116 Cal.App.4th 114, 128 (2004).). These cases largely agree on the governing law, which is immediately apparent from the fact that they cite virtually identical 9th Circuit precedent. *Vernon v. State of California*, 116 Cal. App. 4th 114, 123 (1st Dist. 2004) (citing *Lutcher*); *Id.* 129 fn. 9 (citing *Gomez*); *Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 930 (9th Cir. 2003) (citing *Lutcher* and *Gomez*); *Wynn v. National Broadcasting Co., Inc.* 234 F.Supp.2d 1067, 1109 (C.D. Cal 2002) (citing *Gomez)*; *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 580 (9th Cir. 2000) (citing *Lutcher* and *Gomez*). There is no grounds

for a substantial difference of opinion where the case law not only relies on "controlling precedent" that has been "squarely addressed by the Ninth Circuit", but consistently cites to the same well-settled controlling law. *Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709, 717 (N.D. Cal. 1994). Because there can be no grounds for a substantial difference of opinion where all controlling cases cite identical case law—thus implicitly approving of that case law—DISA's request for interlocutory appeal fails on this criterion and its request must be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request the Court deny DISA's Motion in its entirety. In the alternative, Plaintiffs respectfully request that the Court grant them leave to amend their complaint, as Plaintiffs have clearly laid out facts in this Motion which would support the claims DISA challenges.


Dated: August 4, 2023                    CALIFORNIA CIVIL RIGHTS LAW GROUP


                                          /s/ Cimone A. Nunley
                                    By: Larry A. Organ
                                        Julianne K. Stanford
                                        Cimone A. Nunley
                                        Attorneys for MARVONTE WILSON and
                                        DOMONIQUE DANIELS and the Putative Class

PLAINTIFFS' OPPOSITION TO DISA'S MOTION FOR JUDGMENT ON THE PLEADINGS