**HUNTON ANDREWS KURTH LLP**
M. Brett Burns (State Bar No. 256965)
mbrettburns@HuntonAK.com
Holly Williamson (State Bar No. TX-21620100)
hwilliamson@HuntonAK.com
Karen Evans (State Bar No. 197046)
kevans@HuntonAK.com
50 California Street, Suite 1700
San Francisco, California 94111
Telephone: 415 • 975 • 3700
Facsimile: 415 • 975 • 3701

Attorneys for Defendant
DISA GLOBAL SOLUTIONS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVONTE WILSON and DOMONIQUE DANIELS, individually and on behalf of all others similarly situated,,<br><br>Plaintiff,<br><br>v.<br><br>TIMEC SERVICES COMPANY, INC.; FERROVIAL SERVICES INFRASTRUCTURE, INC.; VALERO REFINING COMPANY - CALIFORNIA; DISA GLOBAL SOLUTIONS; and DOES 1 THROUGH 50, INCLUSIVE,,<br><br>Defendant. | Case No.: 2:23-cv-00172-EBS-KJN<br><br>**DEFENDANT DISA GLOBAL SOLUTIONS REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS, ALTERNATIVE MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292**<br><br>Complaint Filed:   October 31, 2022<br>Removal:             January 27, 2023<br>FAC Filed:            February 24, 2023<br><br>Date:  September 5, 2023<br>Time:  1:30 p.m.<br>Courtroom: 5, 14th Floor |

## I. INTRODUCTION

In its Motion for Judgment on the Pleadings, DISA Global Solutions ("DISA") established that Plaintiffs' racially disparate treatment and racially disparate impact claims, each predicated on conclusory contentions concerning the alleged inaccuracy of hair drug tests conducted on people with "melanin-rich" hair, are deficient as a matter of law. Noting that the Court already deemed "melanin-rich hair" as "a trait seen across people of all races, including White people," and "shared by many not of [Plaintiffs'] race or belonging to any racial minority" when previously dismissing Plaintiffs' Section 1981 race discrimination claims, DISA asserted that this same logic applies to Plaintiffs' remaining race discrimination claims and compels the same conclusion – *Plaintiffs do not allege sufficient facts to plausibly state claims for racially disparate treatment or impact because conclusory allegations concerning "melanin-rich" hair – "a trait seen across people of all races," not exclusive to African-Americans – is insufficient to anchor Plaintiffs' race discrimination claims as a matter of law.* DISA further established that Plaintiffs' racially disparate treatment claim fails for an additional reason – Plaintiffs make no allegation that DISA intended to discriminate against them on the basis of race by administering hair drug tests – noting the Court previously found that "Plaintiffs do not allege that Black employees with dark hair were treated differently than other [non-Black] employees with dark hair." And DISA established that Plaintiffs' racially discriminatory impact claim fails for an additional reason, too – Plaintiffs allege no facts or statistics to support the conclusory assertion that African-American employees are disproportionately harmed by the hair drug tests that DISA administers. In sum, because Plaintiffs do not allege sufficient facts, relying instead on conclusory contentions concerning "melanin-rich" hair that the Court already found to be insufficient to support a race discrimination claim, the remaining race discrimination claims should also be dismissed as a matter of law.

Plaintiffs make no competent arguments to the contrary. Most of Plaintiffs' Opposition is devoted to arguments that (1) the FAC says certain things (that it does not say), (2) the FAC warrants sweeping inferences (that are neither warranted nor reasonable), (3) DISA's positions depend on accepting certain "facts" outside of the record (when they do not), and (4) Plaintiffs need

not plead additional facts to state viable claims (notwithstanding the many on-point cases cited by DISA that hold otherwise, and notwithstanding that Plaintiffs cite no cases in which similar fact-deficient allegations survived a facial pleadings challenge such as this). For a few examples:

- Plaintiffs argue the Court may not consider DISA's assertion that "individuals who are not Black have black or brown hair too," stating "this 'fact' appears nowhere on the face of [the FAC]." But this assertion is common sense. Moreover, the Court already found "dark hair is a trait seen across people of all races." May 12, 2023 Order at 15.

- Plaintiffs argue the Court may not consider DISA's assertion that "Plaintiffs do not allege that Black employees with dark hair were treated differently than other [non-Black] employees with dark hair," stating "this 'fact' appears nowhere on the face of [the FAC]." But pointing out what Plaintiffs do not allege is not asking the Court to consider an out-of-record fact. Moreover, the statement to which they object is a quote from the Court's May 12, 2023 Order.

- Plaintiffs argue that the allegations in the FAC "require" the Court to draw inferences in Plaintiffs' favor that "only Black employees receive false positive drug tests," and an "implicit extension" of this inference is that "no white employees received false positive drug tests." But these allegations were not pleaded in the FAC. And there is no factual, logical, or lawful basis to extrapolate these unreasonable inferences from allegations concerning the individualized experiences of two applicants.

- Plaintiffs argue the Court may not consider DISA's position that a race-discrimination theory predicated on "melanin-rich hair" is legally deficient, arguing "the thrust of [the FAC] is about the fact that *Black hair is melanin-rich in a manner that is different from dark hair of other races*," and Plaintiffs should therefore "be permitted to use [melanin-rich hair] as a *proxy for race*." But the Court already found that a race-discrimination theory predicated on melanin-rich hair is legally deficient to support a race discrimination claim under Section 1981. Moreover, Plaintiffs did not plead in the FAC that "Black hair is melanin-rich in a manner that is different from dark hair of other races;" that is a completely new allegation outside of the pleadings. And the Court already found that while "physical traits can act as a proxy for race, hair color alone is insufficient because it is shared by many not of [Plaintiffs'] race or belonging to any racial minority" in its May 12, 2023 Order.

These and similar arguments Plaintiffs assert throughout their Opposition cannot salvage their deficient claims for racially disparate treatment and racially disparate impact. The bottom line is that Plaintiffs failed to plead facts plausibly establishing that DISA intended to discriminate against them due to their African-American race by administering hair drug tests, or that such testing resulted in African-American employees being disproportionately harmed as compared to others.

With respect to DISA's Petition for Certification of Interlocutory Appeal, Plaintiffs concede that one of the three criteria under Section 1292(b) is met. Their arguments that the other two criteria are not met lack merit. The Court should certify its Order for Interlocutory Appeal because (1) the

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

order involves a "controlling question of law;" (2) there is "substantial ground for difference of opinion" as to that question; and (3) as Plaintiffs concede, an immediate appeal "may materially advance the ultimate termination of the litigation."

## II. ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Arguments That DISA Inappropriately Asks The Court To Consider Out-Of-Record Facts And Draw Adverse Inferences Lack Merit, And Plaintiffs' Attempts To Rewrite The FAC To Secure Unreasonable Inferences Are Inappropriate.

Plaintiffs' arguments that DISA asks the Court to consider out-of-record facts and draw adverse inferences lack merit and should be rejected. DISA need not and does not do these things. As discussed below, most of the "facts" to which Plaintiffs object are either common-sense observations, or commentary about what Plaintiffs fail to allege, or both. It is well-established that a complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "infer[s] more than the mere possibility of misconduct," which the Court must evaluate based upon "*its judicial experience and common sense*." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009 (emphasis added); *In re Lawrence*, 55 Cal. App. 2d 491, 497 (1942) ("Judges cannot pretend to be ignorant of what is within the knowledge of most men of their jurisdictions.").

In DISA's Motion, DISA asserted "*But even setting aside the common-sense observations that* Black people may have natural hair colors that are not 'melanin-rich' (*e.g.*, red, blonde, or light-brown) or that was once 'melanin-rich' but are now gray or white due to the loss of melanin due to aging, *the fundamental problem with Plaintiffs' legal theory is that individuals who are not Black have black or brown hair too*." DISA Motion at 5. Plaintiffs argue the Court "may not consider" the assertions that (1) Black individuals may have natural hair colors that are not 'melanin-rich' or that hair may lose melanin due to aging, and (2) that individuals who are not Black have black or brown hair too, stating "these facts appears nowhere on the face of [the FAC]." But the first assertion is both a common-sense observation and a fact supported by judicial notice to which Plaintiffs neither disputes nor objected. *See* DISA's RJN at 2 (Dkt. No. 50). And, in any event, this common-sense

observation is not essential to DISA's argument, as DISA noted by stating that it could be "set aside." DISA Motion at 5. As to the second assertion (that individuals who are not Black have black or brown hair too), the Court already found "dark hair is a trait seen across people of all races." May 12, 2023 Order at 15.[1]

Plaintiffs argue the Court "may not consider" DISA's assertions that (1) "Plaintiffs do not allege that Black employees with dark hair were treated differently than other [non-Black] employees with dark hair," and (2) "assuming the truth of plaintiffs' allegations, it seems likely that White employees with dark hair were also subject to an increased rate of false positive drug test results," stating "these 'facts' appears nowhere on the face of [the FAC]." But pointing out what Plaintiffs "do not allege" is not asking the Court to consider an out-of-record fact. Moreover, the statements to which they object are quotes from the Court's May 12, 2023 Order. And citing to the Plaintiffs' objectionable RJN filing do not salvage Plaintiffs' argument. *See supra* at n.1.

Plaintiffs argue the Court "may not consider" DISA's assertion that "at most, [Plaintiffs'] assertions show that Plaintiffs informed DISA that they disagreed with the results of the hair drug test *after the fact*." To place DISA's assertion in context, this is what DISA wrote:

> Plaintiffs repeatedly assert that DISA "continues to use [drug] hair testing" despite "notice" that hair drug testing adversely impacts people with "melanin-rich" hair. But the "notice" to which Plaintiffs point arises from allegations that, *after hair drug tests were administered to Plaintiffs and positive test results were reported to them*, they challenged the positive test results and filed EEOC charges. FAC ¶¶ 30, 51, 55, 77, 86. Thus, contrary to Plaintiffs' conclusory (and frankly illogical) assertions, these allegations do not provide "notice" sufficient to plausibly establish racially discriminatory motive. Rather, at most, these assertions show that Plaintiffs informed DISA that they disagreed with the results of the hair drug test *after-the-fact*. This is a far cry from alleging that DISA somehow *knew* that administering hair drug tests to Plaintiffs would result in racially disparate treatment, as Plaintiffs contend.

*See* DISA's Motion at 6 (emphasis in original). Read in context, it is obvious that, contrary to Plaintiffs' argument, the assertion to which Plaintiffs object is a common-sense argument, not an

---

[1] To the extent that Plaintiffs argue "visual inspection of hair colors cannot accurately determine the melanin content of that hair," and "Black men's hair binds more readily to cocaine than even Caucasian men's dark hair," citing to a 27-year-old research paper attached to Plaintiffs' RJN filing, they do not salvage their argument. DISA has filed multiple evidentiary objections to the RJN filing (hearsay, double-hearsay, irrelevant). Moreover, the study is disputed, is not well-known, is not authoritatively attested, is reasonably doubted, and is not a proper subject for judicial notice. *See* DISA's Opposition to Plaintiffs' RJN, filed contemporaneously.

out-of-record fact. Moreover, referencing a lone hearsay allegation in the FAC ("[a]ccording to a union representative, at least two Black employees received false positive drug tests prior to Plaintiffs") does not salvage Plaintiffs' argument, as (1) Plaintiffs failed to disclose to the Court that FAC ¶ 25 also says Plaintiffs had this conversation with the union representative "*[i]n the days following* his false positive hair test from DISA," and, in any event, (2) alleging that the union representative discussed false-positive drug tests *with Plaintiffs* is irrelevant to whether DISA had knowledge of the alleged false-positive drug tests. Accordingly, contrary to Plaintiffs' argument, it is neither warranted nor reasonable to infer DISA had knowledge of the alleged false-positive drug tests prior to the date drug tests were administered to Plaintiffs.

Plaintiffs argue the Court "may not consider" DISA's assertion that "Plaintiffs do not allege that non-Black employees experienced fewer false-positive hair drug test results than Black employees, nor could they, since their legal theory is predicated on the race-neutral criterion of hair color." But, again, pointing out what Plaintiffs "do not allege" is not asking the Court to consider an out-of-record fact. Moreover, to the extent Plaintiffs now seek to distance from their own FAC by asserting new arguments that "melanin-rich hair" is an "immutable trait inherent to Black hair," that allegation is not made in the FAC, and in any event directly conflicts with the Court's prior Order. *See* May 12, 2023 Order at 15 ("[w]hile black people tend to have hair with more melanin, dark hair is a trait seen across people of all races, including White people," thus "hair color alone is insufficient [to act as a proxy for race] because it is "shared by many not of [plaintiffs'] race or belonging to any racial minority"). And, again, citing to the Plaintiffs' objectionable RJN filing do not salvage Plaintiffs' argument. *See supra* at n.1.[2]

Plaintiffs argue the Court "may not consider" DISA's position that a race-discrimination theory predicated on "melanin-rich hair" is legally deficient, arguing "the thrust of [the FAC] is about the fact that *Black hair is melanin-rich in a manner that is different from dark hair of other*

---

[2] Even setting aside the fact that Plaintiffs did not make this allegation in the FAC, as a matter of common-sense, "melanin-rich hair" is not an "immutable trait inherent to Black hair," as hair melanin amounts do change over time and can and do vary from person to person. *See* DISA's RJN at 2 (Dkt. No. 50). The cases Plaintiffs cite recognizing that hair *texture* and hair *styles* are different and factually distinguishable from the present case, as the Court inherently recognized when it correctly noted that certain "physical traits can act as a proxy for race," but "hair color cannot."

*races*," and Plaintiffs should therefore "be permitted to use ["melanin-rich hair"] as a *proxy for race*." But the Court already found that a race-discrimination theory predicated on "melanin-rich hair" is legally deficient to support a race discrimination claim under Section 1981. Moreover, Plaintiffs did not plead in the FAC that "Black hair is melanin-rich in a manner that is different from dark hair of other races" – that is a completely new allegation outside of the pleadings. And the Court already found that while "physical traits can act as a proxy for race, hair color alone is insufficient because it is shared by many not of [Plaintiffs'] race or belonging to any racial minority" in its May 12, 2023 Order.

Lastly, Plaintiffs argue that the allegations in the FAC "require" the Court "to draw the inference in Plaintiffs' favor that only Black employees receive false positive drug tests," and this warrants an "implicit extension" that "no white employees received false positive drug tests." But, again, these allegations were not pleaded in the FAC, nor are they reasonable inferences drawn from the facts asserted in the FAC. And there is no factual, logical, or lawful basis to extrapolate these unreasonable inferences from allegations concerning the individualized experiences of two applicants.

**B.  Plaintiffs Fail To Plead A Plausible Claim for Racially Disparate Treatment.**

In DISA's Motion, DISA established that Plaintiff's claim for racially disparate treatment fails for three independent reasons. One, a racially disparate treatment claim based on the alleged inaccuracy of administering hair drug tests on people with "melanin-rich" hair cannot be reconciled with the Court's prior findings in this case that, "[w]hile black people tend to have hair with more melanin, dark hair is a trait seen across people of all races, including white people," "hair color alone is insufficient [to act as a proxy for race]" because it is "shared by many not of [plaintiffs'] race or belonging to any racial minority," and "Plaintiffs do not allege that black employees with dark hair were treated differently than other employees with dark hair." May 12, 2023 Order at 15-16. Two, noting that Plaintiffs allege that DISA conducted hair drug tests on them despite alleged "notice" that hair drug testing adversely impacts people with "melanin-rich" hair who are African-American, DISA pointed out that the "notice" to which Plaintiffs point arises from allegations that, *after hair*

6

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

*drug tests were administered to Plaintiffs and positive test results were reported to them*, they challenged the positive test results, thus there is no competent, non-conclusory allegation that DISA was aware of any adverse consequences to Plaintiffs when their hair drug tests were administered. Three, even if Plaintiff could connect "melanin-rich" hair to a protected group, which it has not done, it is well-established that "[i]t is insufficient for a plaintiff alleging discrimination under a disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group."

As to DISA's position that a racially disparate treatment claim based on the alleged inaccuracy of administering hair drug tests on people with "melanin-rich" hair cannot be reconciled with the Court's prior findings in this case, Plaintiffs do not respond. At most, Plaintiffs appear to simply disagree with the Court, arguing "the thrust of [the FAC] is about the fact that *Black hair is melanin-rich in a manner that is different from dark hair of other races*," and Plaintiffs should therefore "be permitted to use ["melanin-rich hair"] as a *proxy for race.*" But, again, Plaintiffs did not plead that and it is a completely new allegation outside of the pleadings. Moreover, the Court foreclosed Plaintiffs' "proxy" argument already by finding that while "physical traits can act as a proxy for race, hair color alone is insufficient because it is shared by many not of [Plaintiffs'] race or belonging to any racial minority" in its May 12, 2023 Order. Also, the Court already found that a race-discrimination theory predicated on "melanin-rich hair" is legally deficient to support a race discrimination claim under Section 1981, and Plaintiffs make no attempt to explain why a race discrimination claim under Title VII should fare differently.

As to DISA's position that there are no competent, non-conclusory allegations that DISA was aware of any adverse consequences to Plaintiffs because of race when their hair drug tests were administered (since Plaintiffs merely allege that they disagreed with DISA's hair drug test results *after the fact*), Plaintiffs respond by twisting the facts, seeking unreasonable inferences, and pointing to an objectionable judicial notice filing. Plaintiffs argue that DISA had notice that "melanin-rich" hair may yield false-positive results by pointing to allegations in the FAC concerning an independent re-test from another laboratory that was negative, urine re-tests that were negative, and a saliva re-test that was

negative, but these all post-dated the Plaintiffs' negative hair drug tests and none can logically provide notice to DISA before the hair drug tests were administered. Plaintiffs again point to hearsay in the FAC about the union representative allegedly telling them "at least two Black employees received false positive drug tests prior to Plaintiffs," but again, (1) Plaintiffs fail to disclose to the Court this conversation occurred "*[i]n the days following* the false positive hair test from DISA," and, in any event, (2) alleging that the union representative discussed false-positive drug tests with Plaintiffs is irrelevant to whether DISA had knowledge of the alleged false-positive drug tests. Plaintiffs point to a study they attached to their RJN filing, but again, it is objectionable for multiple reasons, and cannot salvage Plaintiffs' argument. *See supra* at n.1. Moreover, the fact that other types of drug testing existed provides no basis whatsoever to infer that DISA intentionally selected hair drug testing with a discriminatory intent towards Black applicants. Plaintiffs cite no case law supporting this absurdly unreasonable inference.

      As to DISA's position that, even if Plaintiff could connect "melanin-rich" hair to a protected group, which Plaintiffs have not done, it is well-established that "[i]t is insufficient for a plaintiff alleging discrimination under a disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group," Plaintiffs now respond by pointing out that the cases DISA cites for this basic proposition were not decided on motions filed "at the early pleading stages," and thus do not support DISA's position that this case should be dismissed based on the pleadings. This is a distinction without a difference. In any event, Plaintiffs miss the point, which is that even assuming for purposes of argument that DISA could somehow divine that Plaintiffs would seek to contest negative hair drug test results by submitting positive hair, urine, and saliva re-test results, this would still be insufficient as a matter of law to establish a viable claim for racially disparate treatment, as it is not enough for Plaintiffs to merely show that an employer was aware of possible adverse consequences on a protected group. *Am. Fed'n of State, Cnty., & Mun. Emps. v. Washington*, 770 F.2d 1401, 1405 (9th Cir.1985); *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012). Rather, Plaintiffs must allege that DISA adopted a

disputed policy *because* it would benefit non-African-Americans more often than African-Americans. They have not (and cannot in good faith) do so here.

Plaintiffs do not assert a *plausible* claim that administering hair drug tests are racially discriminatory against Black employees, rather than due to an objective, facially-neutral policy or practice. Plaintiffs make no allegation that DISA intends to discriminate against Black employees by administering hair drug tests. Plaintiffs do not allege that DISA made them pay for a retest or take a substance abuse class because they were Black, but rather because they failed the same hair drug test all employees were administered. Where a plaintiff is challenging a facially neutral policy, there must be a specific allegation of discriminatory intent (*see International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 (1977)), and here, no such allegation exists.

### C.    Plaintiffs Fail to Plead A Plausible Claim for Racially Disparate Impact.

In DISA's Motion, DISA established that Plaintiff's claim for racially disparate impact fails to allege plausible facts sufficient to show that hair drug testing has a disparate impact – a "threshold showing of a significant statistical disparity" on a protected group (*e.g.*, a disproportionate effect on Black employees as compared to non-Black employees). *See* DISA's Motion at 7 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 997, 994 (1988) ("the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs because of their membership in a protected group"); *Filho v. Gansen*, No. 4:18-cv-00337-KAW, 2018 WL 5291986, at *4 (N.D. Cal. Oct. 19, 2018) ("On balance, the Court finds that Plaintiff has not sufficiently plead disparate impact primarily because…Plaintiff has not provided any statistical data that shows a disproportionate impact on persons of a particular type…produced by Defendant's facially neutral acts or practices."); *Alozie v. Arizona Board of Regents*, No. CV-16-03944-PHX-ROS, 2017 WL 11537899, at *7-8 (D. Ariz. Sept. 21, 2017) ("more than a basic allegation regarding the makeup of the workforce" is required).

DISA noted first that Plaintiffs fail to plead any statistics, calculations, scientific study, or basic facts that plausibly show any disparity against Black employees whatsoever. Rather, their allegations "merely describe [their] own experiences" – that they received hair drug test results with

9

DEFENDANT DISA GLOBAL SOLUTIONS NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS, AND ALTERNATIVE MOTION FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292

1  which they disagreed – which are insufficient to plead a viable claim for racially disparate impact as
2  a matter of law. *See Liu v. Uber Technologies*, 551 F.Supp.3d 988, 990 (N.D. Cal. 2021) (stating
3  "[plaintiff] must make a more sophisticated effort at the front end to develop a plausible factual basis
4  in support of his assertion that terminations at [defendant] occur on a racially disparate basis").
5  DISA noted second that, while Plaintiffs allege they were subjected to a heightened risk of false-
6  positive hair drug test results because they have "melanin-rich" hair, applicants with such hair are
7  not a protected group, as the Court already found. DISA noted third that Plaintiffs fail to allege any
8  statistics, calculations, scientific study, or non-conclusory facts to plausibly assert that Black
9  employees experience a statistically-significant higher percentage of false-positive hair drug test
10 results as compared to non-Black employees. *See Liu v. Uber Technologies, Inc.*, No. 20-CV-07499-
11 VC, 2021 WL 800903, at *1 (N.D. Cal. Mar. 3, 2021) (finding pleadings asserting a racially
12 disparate impact claim to be insufficient, noting that "while alluding generally to 'social science
13 research,' the complaint does not actually cite to or describe any research findings or other facts
14 supporting the assertion that drivers of color are disproportionately harmed").

15      Plaintiffs' Opposition is largely non-responsive. Plaintiffs begin by arguing that the pleading
16 standard for disparate impact claims is not meant to be "onerous," but in the case the Plaintiffs cite
17 for this proposition, the court dismissed a disparate impact claim for failure to allege sufficient facts
18 to state a claim. *See Alozie*, 2017 WL 11537899, at *7-8 (recognizing that merely alleging "a
19 bottom-line disparity is not enough to plausibly point to disparate impact liability" and "allegations
20 providing the number of [disputed events] at issue are necessary to assess the plausibility of [the
21 disparate impact] claim," as "[t]o hold otherwise would mean any individual could assert a disparate
22 impact claim"). As in *Alozie*, applying this basic criteria, Plaintiffs' racially disparate impact claim
23 should be dismissed.

24      Plaintiffs next argue that they need not allege plausible facts sufficient to show that hair drug
25 testing has a disparate impact on African-American applicants because their theory is "self-evident,"
26 likening it to Judge Chabbria's discussion in *Liu v. Uber* of a case in which a plaintiff wore skirts for
27 religious reasons, was fired for wearing skirts instead of pants, and the district court found that
28

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111

because it was "plain" that the challenged policy would disparately affect women of the plaintiff's religion, there was no need for statistical or other evidence about the results of that practice in the workplace. *See* Pls.' Opp'n at 11 ("Plaintiff's case is analogous to the circumstances the *Liu* court describes."). But the Court has already found that the theory Plaintiffs pleaded is that hair drug testing has a disparate impact on applicants with "melanin-rich" hair, not African-American applicants. And unlike female employees at the New York Transit Authority, applicants at DISA who have "melanin-rich" hair are not a protected class. *See* May 12, 2023 Order at 15 ("dark hair is a trait seen across people of all races, including White people," thus "hair color alone is insufficient [to act as a proxy for race] because it is "shared by many not of [plaintiffs'] race or belonging to any racial minority").

Even assuming for purposes of argument that Plaintiffs had pleaded a theory that hair drug testing has a disparate impact on African-American applicants, the new theory would not be self-evident, either. It is axiomatic that a statistically-significant population of the New York Transit Authority's workforce who are subject to termination for insisting on wearing skirts would be female. It is neither obvious nor factually accurate to allege that the statistically-significant population of DISA's workforce who are subject to false-positive drug tests due to having "melanin-rich" hair would be African-American. The Court already found "hair color alone is insufficient [to act as a proxy for race] because it is shared by many not of [plaintiffs'] race or belonging to any racial minority" and, therefore, "assuming the truth of plaintiffs' allegations, it seems likely that White employees with dark hair were also subject to an increased rate of false positive drug test results." May 12, 2023 Order at 15-16. Moreover, Plaintiffs make no argument whatsoever about DISA, the composition of DISA's applicant pool, or statistical data showing a disproportionate impact on African-American applicants at DISA. Rather, Plaintiffs point to a statistics finding based on "several years of discovery" involving more than 15,000 drug tests in a case involving a different employer – the Boston Police Force, not DISA, and again cite to their own objectionable RJN filing (purporting to compare "Black hair" to "blonde Caucasian hair"). The requisite showing *as to DISA* is not even attempted.

Plaintiffs fail to weaken DISA's extensive of authority demonstrating the need for Plaintiffs to allege a "threshold showing of a significant statistical disparity" on a protected group to plausibly state a claim. Without truly distinguishing DISA's case law, Plaintiffs argue that the procedural postures and facts were different in these cases from the present case. These arguments should be rejected. The breadth of case law supporting of the proposition that Plaintiffs should allege a statistically significant disparity to state a disparate impact claim is substantial. *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988) ("the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs because of their membership in a protected group"); *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009); *Liu v. Uber Technologies*, *Inc.*, No. 20-CV-07499-VC, 2021 WL 800903, at *1 (N.D. Cal. Mar. 3, 2021) (finding pleadings asserting a racially disparate impact claim to be insufficient, noting that "while alluding generally to 'social science research,' the complaint does not actually cite to or describe any research findings or other facts supporting the assertion that drivers of color are disproportionately harmed"); *Darensburg v. Metropolitan Transp. Com'n,* 636 F.3d 511, 520 (9th Cir. 2011) ("an appropriate statistical measure must ... take into account the correct population base and its racial makeup."); *Liu v. Uber Technologies*, *Inc.,* No. 20-CV-07499-VC, 2022 WL 1613285, at *2 (N.D. Cal. May 23, 2022) (granting motion to dismiss, noting "a survey must provide at least some information from which racial disparity can be plausibly inferred," and observing "[t]he survey described in this complaint is essentially meaningless").

Plaintiffs' failure to plead any statistics, calculations, scientific study, or basic facts that plausibly show any disparity against Black employees is fatal to their disparate impact claim, and the claim should be dismissed in accordance with the many authorities cited in DISA's Motion.

### D. DISA's Alternative Request For The Court To Certify For Appeal Its Finding That DISA Indirectly Employed Plaintiffs Meets the Criteria for Certification.

Plaintiffs concede that DISA's petition to certify for interlocutory appeal the Court's decision that DISA could be subject to Title VII and FEHA as an indirect employer satisfies one of the three criteria to determine if the petition is appropriate. Specifically, Plaintiffs agree that a determination

1  that DISA did not indirectly employ Plaintiffs would advance the termination of the litigation. (Opp.
2  14:6-7). Plaintiffs' Opposition only attempts to cast doubt on the two remaining criteria: (1) that the
3  order involves a controlling question of law and (2) there is a substantial ground for difference of
4  opinion that indirect employer. Plaintiffs' arguments should be rejected. The Court's ruling that
5  DISA could be Plaintiffs' indirect employer and thus, subject to Title VII and FEHA satisfies these
6  two criteria.

### 1. Whether DISA Is An Indirect Employer Is A Controlling Question of Law.

As noted in case law cited by both Plaintiffs and DISA, "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of the litigation in district court." *Simmons v. Akanno*, No. 1:09-cv-00659-GBC (PC), 2011 WL 1566583 at *3 (E.D. Cal. Apr. 22, 2011) (*citing Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (1981). Plaintiffs argue that DISA cannot meet the proposition cited in *Simmons* that "Section 1292(b) appeals should be reserved for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." Yet, given that the Court's Order is on DISA's Motion to Dismiss, which was limited to the pleadings, it stands to reason that if the Court grants the petition for interlocutory appeal, the Court of Appeals would not need to delve beyond the surface of the record and could decide the issue as a question of law. In addition, the court *In re Cement Antitrust Litig.*, did not add any criteria with respect to the "controlling issue of law" that DISA did not already address in its Motion. Unlike the question of a Judge's recusal in *In re Cement* which the court found "could not be more separable from and collateral to the merits" of the lawsuit, the issue of whether DISA is an indirect employer is at the heart of this litigation. *Cf.* 673 F.2d at 1027. As noted in the Motion, the resolution of whether DISA, a third-party drug test administrator is an indirect employer on appeal would materially affect the outcome of the litigation, and could would be decided on the pleadings. Therefore the issue is a controlling issue of law and meets the first criterion of Section 1292(b).

### 2. Substantial Grounds for Difference Of Opinion Exist As to Whether Third-Party Drug Administrators Could Be Held Liable Under Title VII and FEHA as Indirect Employers.

Plaintiffs argue that there is not a difference of opinion as to whether a third-party drug test administrator could be an indirect employer because two Ninth Circuit cases from more than 40 years ago found that a non-employer could be subject to Title VII, but Plaintiff neglects to discuss the limited holdings of those cases. Neither *Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (1983) nor *Lutcher v. Musicians Union Local* 47, 633 F.2d 880 (1980) held that a third-party drug test administrator is an indirect employer. *Lutcher* addressed the liability of a *labor union* that prevented the plaintiff from performing in a symphony orchestra because he refused to pay union dues. As a result, the Ninth Circuit merely found that "Title VII imposes the same duty prohibiting discrimination on a *union* as it does on an employer." *Id*. at 882, 885 (emphasis added) (citing 42 U.S.C. 2000e-2(a), (c)). The court in *Gomez* focused on whether liability associated with the hiring of independent contractors could exist when there was no other employer to hold liable, which is not at issue here, as Plaintiffs' actual employers are defendants in this action. *Gomez*, 698 F.2d at 1021.

Moreover, Plaintiffs failed to address that other Circuits have specifically declined to hold third-party administrators like DISA as covered entities. *See Satterfield v. Tennessee*, 295 F.3d 611, 618 n.7 (6th Cir. 2002) (holding that such an administrator is not a covered entity under the ADA); *Bloom v. Bexar County*, Tex., 130 F.3d 722,724- 725 (5th Cir. 1997) (examining Sixth and Seventh Circuit precedent and determining that much of the authority allowing indirect parties to be held liable under the ADA is "questionable," some of it overruled, and that the main focus should be the element of control).

DISA's case law demonstrates that a substantial ground for difference of opinion exists. The Ninth Circuit has not squarely addressed that third-party drug tests administrators are indirect employers. *See Wells Fargo Bank v. Bourns, Inc*., 860 F. Supp. 709, 717 (N.D. Cal. 1994) (a

1 "substantial ground for difference of opinion" will be found where there is no controlling precedent, such as where an issue has "not been squarely addressed by the Ninth Circuit.").

The Court should certify its Order finding that DISA, a drug test administrator, could be deemed an indirect employer under Title VII and the FEHA given that (1) it is novel issue, and (2) courts have reached contradictory conclusions on the issue of holding other non-employers as indirect employers.

## III.   CONCLUSION

For the foregoing reasons, DISA respectfully requests that the Court grant its Motion for Judgment on the Pleadings, or in the alternative, pursuant to 28 U.S.C. § 1292(b), certify for interlocutory appeal Section III.A.1 of the Court's May 12, 2023 Order holding that plaintiffs sufficiently pleaded that DISA was Plaintiffs' indirect employer of purposes of subjecting DISA to liability under Title VII and FEHA.

DATED: August 21, 2023

HUNTON ANDREWS KURTH LLP

By:   *s/ M. Brett Burns*
     M. Brett Burns
     Holly Williamson
     Karen Evans

     Attorneys for Defendant
     DISA GLOBAL SOLUTIONS

Hunton Andrews Kurth LLP
50 California Street, Suite 1700
San Francisco, California 94111