UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| MARVONTE WILSON and DOMONIQUE DANIELS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TIMEC SERVICES COMPANY, INC.; FERROVIAL SERVICES INFRASTRUCTURE, INC.; VALERO REFINING COMPANY-CALIFORNIA; DISA GLOBAL SOLUTIONS; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:23-cv-00172 WBS KJN<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS, OR IN THE ALTERNATIVE, FOR CERTIFICATION OF INTERLOCUTORY APPEAL |

----oo0oo----

Plaintiffs Marvonte Wilson and Domonique Daniels brought this putative class action against Timec Services Company, Inc. ("Timec"); Ferrovial Services Infrastructure, Inc. ("Ferrovial"); Valero Refining Company-California ("Valero"); and DISA Global Solutions ("DISA"). The court previously dismissed the First Amended Complaint's § 1981 and ADA claims. (See Docket

1

1  No. 40.)  Because plaintiffs did not amend the complaint
2  following the court's partial dismissal, the First Amended
3  Complaint remains the operative complaint.  The remaining claims
4  allege employment discrimination based on race in violation of
5  Title VII of the Civil Rights Act of 1964 ("Title VII"), 42
6  U.S.C. § 2000e, and the California Fair Employment and Housing
7  Act ("FEHA"), Cal. Gov. Code § 12940; and negligence under
8  California law.  (See First Am. Compl. ("FAC") (Docket No. 14).)
9       Defendant DISA now moves for partial judgment on the
10 pleadings, or in the alternative, for certification of an
11 interlocutory appeal of this court's previous order denying
12 dismissal in part, pursuant to 28 U.S.C. § 1292.  (Docket No.
13 49.)  Defendants Timec, Valero, and Ferrovial join in the motion.
14 (Docket Nos. 57-59.)[1]

15 II.  Legal Standard

16       The court considers defendants' motion for judgment on
17 the pleadings as it would a motion to dismiss.  See Sprint
18 Telephony PCS, L.P. v. County of San Diego, 311 F. Supp. 2d 898,
19 902 (S.D. Cal. 2004) ("A Rule 12(c) motion for judgment on the
20 pleadings and a Rule 12(b)(6) motion to dismiss are virtually
21 interchangeable.").  Because no evidence is currently before the

---

[1] Plaintiffs argue that the joinders were untimely filed and should be rejected by the court.  Even if the joinders were not timely filed, there has been no prejudice to the plaintiffs because the motion -- and consequently plaintiffs' opposition -- focus exclusively on the broad allegations of the complaint without distinguishing between the defendants.  The court will therefore consider the motion as having been filed by all defendants.  See Hash v. Rallos, No. 2:20-cv-1272 TLN ACP, 2021 WL 4476829, at *1 (E.D. Cal. Sept. 30, 2021) (accepting untimely filed motion due to "the lack of any apparent prejudice").

1  court, the court declines to consider granting judgment at this
2  stage and will instead consider whether the challenged claim
3  merits dismissal.  See Sprint, 311 F. Supp. 2d at 903.[2]  The
4  inquiry before the court is thus whether, accepting the
5  allegations in the complaint as true and drawing all reasonable
6  inferences in the plaintiff's favor, the complaint has alleged
7  "sufficient facts . . . to support a cognizable legal theory,"
8  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001), and thereby
9  stated "a claim to relief that is plausible on its face," Bell
10 Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[2]    Both parties filed requests for judicial notice of a small amount of scientific evidence (defendants from a website and plaintiffs from scientific journals) pertaining to hair melanin and drug testing.  (Docket Nos. 50, 56.)  A court may take judicial notice of a fact that is "not subject to reasonable dispute," either "because it is generally known within the court's territorial jurisdiction," or because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The disputed materials provided by the parties -- which the parties ask the court to consider for the truth of the matters asserted -- plainly fail to satisfy this standard.  See Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.") (internal quotation marks omitted); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (when review is limited to the pleadings, "a court may take judicial notice of matters of public record" but not of facts that are "subject to reasonable dispute") (internal quotation marks omitted).

     Further, it is improper to present this type of extrinsic evidence on a Rule 12(c) motion.  If the court had considered the evidence presented by the parties, it would have been obligated to treat the motion as one for summary judgment under Rule 56.  See Fed. R. Civ. P. 12(d).

     Accordingly, the court DENIES both parties' requests for judicial notice.

III. Discussion[3]

Defendants seek judgment on plaintiffs' remaining employment discrimination claims, which are the first claim for disparate impact under Title VII; the second claim for disparate impact under FEHA; the third claim for disparate treatment under Title VII; and the fourth claim for disparate treatment under FEHA. (See FAC at 16-21.)

Title VII provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." Ricci v. DeStefano, 557 U.S. 557, 577 (2009).

FEHA makes it an "unlawful employment practice" to "discriminate against [an individual] in compensation or in terms, conditions, or privileges of employment" based on, inter alia, race, color, or national origin. See Cal. Gov't Code § 12940(a). Because "FEHA uses largely the same language and promotes the same objective as Title VII . . . the Title VII framework is applied to claims brought under FEHA." Pinder v. Emp. Dev. Dep't, 227 F. Supp. 3d 1123, 1136 (E.D. Cal. 2017)

---

[3] The court does not recite the allegations of the First Amended Complaint as it has done so in its prior order. (See Docket No. 40 at 2-4.)

4

(Nunley, J.) (citing, inter alia, Metoyer v. Chassman, 504 F.3d 919, 941 (9th Cir. 2007); Guz v. Bechtel Nat. Inc., 24 Cal. 4th 317, 354 (2000)).  See also Kohler v. Inter-Tel Techs., 244 F.3d 1167, 1172 (9th Cir. 2001) ("The California courts consistently look to Title VII for guidance in interpreting FEHA.")

        A.    Disparate Impact Under Title VII and FEHA

Plaintiffs' first and second claims allege disparate impact under Title VII and FEHA.  To state a disparate impact claim, plaintiffs must plausibly allege that an employment disparity exists with respect to the protected group.  Liu v. Uber Techs. Inc., 551 F. Supp. 3d 988, 990 (N.D. Cal. 2021) (citing Freyd v. Univ. of Or., 990 F.3d 1211, 1224 (9th Cir. 2021)).  See also Guz, 24 Cal. 4th at 354 (a disparate impact claim alleges that an employment practice "in fact had a disproportionate adverse effect on members of the protected class").

The complaint alleges that because black employees often have "melanin-rich" hair, they were subject to adverse employment actions based on inaccurate drug test results.  In their opposition, plaintiffs for the first time present multiple allegations concerning the difference in the melanin content of dark hair in people of different races, the disparity in drug test outcomes between black and white employees, the difference in how drugs interact with the hair of black and white individuals, and the increased risk of false positive test results due to hair products used by black individuals.  (See Opp'n at 10-13.)  None of these allegations appear in the operative complaint.  Rather, the complaint merely states that

1 drug tests are less effective on melanin-rich hair, which is
2 "common in Black people." (FAC ¶ 14.)  The complaint does not
3 even allege that melanin-rich hair is <u>more</u> common in black people
4 than people of other races, only that it is common.  Plaintiffs
5 do not allege that there is anything unique about the melanin
6 content of black people's hair that might give rise to an
7 employment disparity.  Because the complaint provides no means
8 for the court to understand how defendants' conduct might
9 disproportionately affect black employees, plaintiffs have failed
10 to "state a claim to relief that is plausible on its face."  <u>See</u>
11 <u>Twombly</u>, 550 U.S. at 570.[4]

12       Plaintiffs argue that the complaint's discussion of the
13 two named plaintiffs, along with a mention of "at least two
14 additional instances in which Black employees received false
15 positive hair tests," is sufficient to indicate that black
16 employees were subject to a disparate impact.  The court
17 disagrees.  Given that the operative complaint fails to establish
18 a connection between race and the challenged employment practice,
19 the court cannot reasonably draw an inference concerning a
20 disparity suffered by black employees <u>solely</u> from such limited
21 allegations.  <u>See</u> <u>Kurdi v. Cal. Dep't of Transp.</u>, No. 1:22-cv-
22 00729 JLT EPG, 2023 WL 267538, at *16 (E.D. Cal. Jan. 18, 2023)

---

[4]       Defendants argue that the court's reasoning in its prior order dismissing plaintiffs' § 1981 claim applies here as well.  However, a claim under § 1981 requires that a plaintiff allege sufficient facts to support a finding of both intentional discrimination and but-for causation.  <u>See</u> <u>Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media</u>, 140 S. Ct. 1009, 1019 (2020); <u>Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania</u>, 458 U.S. 375, 376 (1982).  These requirements are not applicable to disparate impact claims.

1  ("Because the complaint is devoid of any factual support that
2  [defendant's] policies or practices had [a disparate] effect on a
3  protected class, . . . [plaintiff] fails to state a claim for
4  disparate impact under Title VII."); Liu, 551 F. Supp. 3d at 991
5  (the court "cannot draw an inference of disparity" solely from
6  allegation that named plaintiff suffered an adverse employment
7  action).
8       Accordingly, the court will dismiss the first claim for
9  disparate impact under Title VII and the second claim for
10 disparate impact under FEHA.
11     B.   Disparate Treatment Under Title VII and FEHA
12      Plaintiffs' third and fourth claims allege disparate
13 treatment under Title VII and FEHA.  Disparate treatment occurs
14 "where an employer has treated a particular person less favorably
15 than others because of a protected trait."  Ricci, 557 U.S. at
16 577 (internal quotation marks and alterations omitted).  "A
17 disparate-treatment plaintiff must establish that the defendant
18 had a discriminatory intent or motive for taking a job-related
19 action."  Id. (internal quotation marks omitted).  "A
20 discriminatory motive may be established by the employer's
21 informal decisionmaking or 'a formal, facially discriminatory
22 policy,' but 'liability depends on whether the protected trait .
23 . . actually motivated the employer's decision.'"  Wood v. City
24 of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012) (citing Hazen
25 Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).  See also Guz,
26 24 Cal. 4th at 354 n.20 (disparate treatment under FEHA is
27 "*intentional* discrimination against one or more persons on
28 prohibited grounds") (emphasis in original).  Thus, a plaintiff

1 bringing a disparate treatment claim "must allege facts that
2 plausibly indicate defendant was 'motivated by a discriminatory
3 animus.'" Anderson v. Yolo County, No. 2:16-cv-2466 WBS DB, 2017
4 WL 590246, at *3 (E.D. Cal. Feb. 14, 2017) (quoting Gay v.
5 Waiters' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531,
6 538 (9th Cir. 1982)).

7 Plaintiffs allege that they informed defendants of
8 their false positive test results.  (FAC ¶¶ 30, 38, 51.)  They
9 also allege that they made charges of discrimination that put
10 defendants on notice of the adverse effect of defendants'
11 policies on black employees.  (Id. ¶¶ 30, 51.)  However, "'[i]t
12 is insufficient for a plaintiff alleging discrimination under the
13 disparate treatment theory to show the employer was merely aware
14 of the adverse consequences the policy would have on a protected
15 group.'"  Wood, 678 F.3d at 1081 (quoting Am. Fed'n of State,
16 Cnty., & Mun. Emps. v. Washington, 770 F.2d 1401, 1405 (9th Cir.
17 1985)).  Further, "[w]here, as here, a plaintiff is challenging a
18 facially neutral policy," the complaint must contain "a specific
19 allegation of discriminatory intent."  Wood, 678 F.3d at 1081.
20 Plaintiffs challenge defendants' facially neutral drug-testing
21 policies yet have made no allegation that defendants had
22 discriminatory intent.

23 Accordingly, the court will dismiss the third claim for
24 disparate treatment under Title VII and the fourth claim for
25 disparate treatment under FEHA.

26 IT IS THEREFORE ORDERED that defendant's motion for
27 judgment on the pleadings (Docket No. 49), construed as a motion
28 to dismiss, be, and the same hereby is, GRANTED, and plaintiffs'

first, second, third, and fourth claims under Title VII and FEHA are hereby DISMISSED.[5]  Plaintiffs have twenty days from the date of this Order to file an amended complaint, if they can do so consistent with this Order.

Dated:  September 6, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[5] Because the court grants defendants' motion, it need not address defendants' alternative motion for certification of interlocutory appeal.